FILED

OCT 28 1996

U.S. DISTRICT COURT
ELKINS WV 26241

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.                                          CASE NUMBER 1:96M26-01

FLOYD RAYMOND LOOKER a/k/a Ray
         Defendant.


UNITED STATES OF AMERICA

v.                                          CASE NUMBER 1:96M27-01

FLOYD RAYMOND LOOKER a/k/a Ray
         Defendant.


UNITED STATES OF AMERICA

v.                                          CASE NUMBER 1:96M28-01

FLOYD RAYMOND LOOKER a/k/a Ray
         Defendant.


UNITED STATES OF AMERICA

v.                                          CASE NUMBER 1:96M33-01

FLOYD RAYMOND LOOKER a/k/a Ray
         Defendant.


## ORDER OF DETENTION PENDING TRIAL

The above-named criminal defendant was charged in these four criminal complaints with the following offenses: (1) knowingly, unlawfully, and without authority, causing explosive materials to be transported in interstate commerce from the State of Pennsylva-

nia to the State of West Virginia, in violation of 18 U.S.C. §§ 842(a)(3)(A) and 2; (2) conspiracy to engage in the business of manufacturing and dealing in explosive materials in violation of 18 U.S.C. § 842(a)(1), in violation of 18 U.S.C. § 371; (3) knowingly, unlawfully, and without authority, transporting and causing to be transported explosive materials in interstate commerce from the State of Ohio to the State of West Virginia, in violation of 18 U.S.C. § 842(a)(3)(A) and 2; (4) conspiracy to provide material support and resources knowing and intending that said material support and resource were to be used in preparation for, or in the carrying out of the offense of willfully injuring or committing a depredation against the Federal Bureau of Investigation's Criminal Justice Information Services facility, the property of an agency of the United States, in violation of 18 U.S.C. § 2339A, in violation of 18 U.S.C. § 371.

This defendant was arrested on warrants issued on those complaints on October 11, 1996, and had his initial appearance on that date, at which time the attorney for the government moved for a detention hearing pursuant to 18 U.S.C. § 3142(f). Attorney David A. Jividen was appointed to represent this defendant, and a preliminary examination/detention was scheduled at 1:30 p.m. on October 17, 1996. Immediately prior to that hearing this defendant requested that Mr. Jividen be relieved as his attorney and that new counsel be appointed. Due to difficulties in obtaining counsel who would be willing to and capable of undertaking representation of this defendant, substitute counsel, Stephen D. Herndon, was not

appointed until October 21, 1996. The case agent was not available on October on October 23, 1996, and the preliminary examination/detention hearing was rescheduled for 9:30 a.m. on October 24, 1996.

The government's only witness at the hearing was the case agent, Special Agent J.C. Raffety of the FBI. In nearly two hours of direct testimony, he summarized the intensive sixteen-month investigation which culminated in the filing of these criminal complaints. The key figure in the investigation was O. Marshall Richards, a so-called "cooperative witness" ("CW"), who had been recruited by this defendant, the Commanding General of the West Virginia Mountaineer Militia, to serve as that organization's security and intelligence officer. The CW was in regular and frequent contact with Special Agent Raffety and was the source of nearly two hundred audiotapes relating to various aspects of the investigation. Certain activities relevant to the investigation were also videotaped and/or were personally surveilled by FBI agents. In short, much of the information provided to Special Agent Raffety by the CW was corroborated by the audiotapes and also by physical evidence (including the explosive materials provided by defendant Coon which is referred to in Case Number 1:96M26 and the improvised explosive devices obtained from defendants Johnson and Lewis which is the subject of Case Number 1:96M28) obtained by the CW and turned over to Raffety.

Based upon Special Agent Raffety's testimony, I found that there is probable cause to believe that this defendant committed

3

the offenses with which he is charged in each of the four complaints.

Special Agent Raffety was recalled to testify briefly as to the circumstances of this defendant's arrest and as to his review of the transcripts of certain audiotapes which the attorney for the government contended was relevant to the issue of this defendant's dangerousness to the community.

Counsel for the defendant then made a proffer as to certain matters which he contended were relevant to both the risk of flight and danger to the community issues. In essence, he acknowledged the accuracy of the factual information in the pretrial services report, but contested the pretrial officer's assessments of his client's risk of nonappearance and danger to the community.

18 U.S.C. § 3142 sets forth the factors that are to be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person or the community and I will address these below:

I find that the charges in Case Numbers 1:96M26, 1:96M27 and 1:96M28 constitute crimes of violence within the meaning of 18 U.S.C. § 3156(a)(4)(B). See <u>United States v. Dodge</u>, 846 F. Supp. 181 (D. Conn. 1994). In addition, I am of opinion that the offense charged in Case Number 1:96M33 is a crime of violence as defined in 18 U.S.C. § 3156(a)(4)(A).

For the reasons discussed above, I am of opinion that the weight of the evidence against this defendant is very substantial.

From the pretrial services report, it appears that this defendant has no physical ills other than a partial hearing loss. He is receiving psychiatric treatment, including medication, for depression and related disorders. His only family tie is his wife of three years, with whom he was residing in rental property in Stonewood, which is just outside Clarksburg. His current residence in this jurisdiction is of only 17 months' duration, although his attorney proffered that it was his intent to make West Virginia his domicile. He is unemployed other than in his position with the militia, and has no income other than the $91 month he receives for a service-connected disability. He has no history of drug or alcohol abuse and no criminal history.

Although the defendant has run for public office, he has not been successful in that endeavor, and that and the presence of his wife represent essentially the extent of his family and community ties. He is reported to have traveled to militia meetings in Montana and Texas and to keep in regular contact with other militia organizations in other parts of the country. These factors, in my estimation, outweigh the positive factors of absence of drug or alcohol abuse and of any criminal record, and when coupled with the serious nature of the charges, satisfy the government's burden of proving by a preponderance of the evidence that no conditions of release would reasonably assure his appearance as required.*

---

*While there is no Fourth Circuit decision of which I am aware on the standard of proof as to flight risk, every other federal appellate court which has decided this issue has held that the preponderance of the evidence standard is applicable.

5

18 U.S.C. § 3142(f) specifies that "The facts. . . to support a finding. . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." I am of opinion that the evidence presented as to this defendant meets that burden.

The evidence demonstrated that this defendant actively and eagerly sought to obtain explosives and explosive related materials from out-of-state sources (defendants Coon, Johnson and Lewis) both to store for use in the event of a confrontation with the federal government or other perceived enemies and for sale or resale to generate revenue. It was also shown by evidence of that magnitude that other individuals (defendants Phillips and Moore) were enlisted to manufacture explosives including C-4 and nitroglycerin, as well as detonation devices, for similar purposes. Finally, the "package" of materials provided by defendant Rogers relative to the FBI facility were sold by Looker to the FBI undercover agent posing as an arms broker with the foreknowledge that this information was purportedly to the resold to an unnamed Middle East terrorist organization. Transcripts of audiotapes made by the CW wherein he (the CW) expressed concerns over the use that would be made of this information demonstrate this defendant's scorn for those concerns.

I cannot conceive how one who demonstrates such an utter disregard for the potential consequences of the actions alluded to herein can be viewed as anything other than a danger to the

community, and I fail to see how any condition or combination of conditions of release would alter that attitude.

For the reasons herein stated, it is

ORDERED that:

The defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

The Clerk shall direct copies of this order to counsel for the United States, to counsel for the defendants, to the United States Marshal, and to the United States Probation Officer.

DATED this 25th of October , 1996.

_____
UNITED STATES MAGISTRATE JUDGE

7