Floyd Raymond, Looker, *Sui Juris*
c/o HC 63, Box 12-AA
Nettie [zip code exempt]
WEST VIRGINIA

*In Propria Persona*

Under Protest, Necessity, and
by Special Visitation Only

U.S. DISTRICT COURT
RECEIVED AT WHEELING, WV
DEC 18 1996
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

U.S. DISTRICT COURT
FILED AT WHEELING, WV
JAN 21 1997
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, [sic] ) | Criminal No. 1:96-CR-43-01 |
| Plaintiff, [sic] ) | **AFFIDAVIT OF PROBABLE CAUSE** |
|  ) | **AND NOTICE OF INTENT** |
| v. ) | **TO FILE CRIMINAL COMPLAINTS:** |
|  ) | 28 U.S.C. 1746(1); |
| FLOYD RAYMOND LOOKER, a/k/a RAY, ) | Rule 201(d), Federal Rules |
| JAMES R. ROGERS, a/k/a RICH, [sic]) | of Evidence |
|  ) | |
| Defendants. [sic]  ) | |

COMES NOW Floyd Raymond, Looker, *Sui Juris*, Citizen of West Virginia state and Defendant in the above entitled matter (hereinafter "Defendant"), to record this, His verified AFFIDAVIT OF PROBABLE CAUSE as evidence of criminal misconduct by government officers, employees, and agents who have heretofore come in contact with the above entitled case; and to provide formal Notice of same to all interested party(s), and of His intent to file formal criminal complaints against those who are responsible for committing said misconduct. Defendant also demands mandatory judicial notice of this AFFIDAVIT and NOTICE OF INTENT, pursuant to Rule 201(d) of the Federal Rules of Evidence.

[Please see next page *et seq.*]

1                           **VERIFICATION**

2      I, Floyd Raymond, Looker, *Sui Juris*, hereby verify, under
3  penalty of perjury, under the laws of the United States of
4  America, without the "United States", that the following
5  Statement is true and correct, to the best of My current
6  information, knowledge, and belief, so help Me God, pursuant to
7  28 U.S.C. 1746(1), to wit:

8                    **AFFIDAVIT OF PROBABLE CAUSE**

9      The wife of My first court-appointed counsel was a United
10 States Attorney, and My opponent is the UNITED STATES OF AMERICA
11 [*sic*]. I did not feel comfortable with that appointment, and I
12 requested that another counsel be appointed. I expressed My
13 interest in a particular attorney, but the Magistrate Judge saw
14 fit to appoint Mr. Stephen D. Herndon, "Attorney at Law" [*sic*].

15     Mr. Herndon was appointed to represent Me on Monday, October
16 21, 1996. Mr. Herndon then waited to see Me until <u>the day before</u>
17 My bail setting and preliminary hearing.

18     At the time we met in the Buckhannon, Upshur County Jail, we
19 had to sit in the visitors' booth and talk through the glass
20 divider. Hearing was difficult for Me, and we had to speak
21 rather loudly. Mr. Herndon felt that his side of the enclosure
22 was too hot, so he "cracked" the door a little, in order to let
23 cooler air flow in. This further allowed everyone in the waiting
24 room to hear everything that was being said between Me and Mr.
25 Herndon.

26     One individual who overheard the conversation then went to
27 the U.S. Marshals office to be a witness against Me. Although
28 the court refused to use any testimony of what he overheard

1  between Mr. Herndon and Me, he embellished his story with a few
2  "facts" of his own (read "lies"). This same individual later
3  said that he had overheard our conversation, and that I had
4  "confessed" to everything.

5  At court the next day, Mr. Herndon indicated that we would
6  be able to talk with each other the following Thursday, October
7  31, 1996. At that meeting on October 31, 1996, Mr. Herndon
8  talked about his strategy for winning the case. His opinion was
9  that his strategy was the only way it could be won.

10  I wasn't entirely happy with the strategy he proposed,
11  because it was a passive submission to whatever might develop at
12  the trial. I had proposed a more active and aggressive role with
13  which he did not feel comfortable. We discussed several possible
14  attorneys who might be interested in helping with My cases.

15  It was My understanding that Mr. Herndon was "open" to
16  outside assistance -- if that were available. I had given him
17  the name of an attorney in North Carolina state who is well
18  experienced in entrapment cases, and who had already expressed an
19  interest in My cases. Mr. Herndon indicated that he had tried to
20  contact these individuals, but had been unsuccessful.

21  While Mr. Herndon was on a three-week vacation in Europe, I
22  had received information from My Pastor, Butch Paugh, that Mr.
23  Paul Andrew Mitchell, B.A., M.S., from Tucson, Arizona state, had
24  developed a particularly good strategy which fit well with the
25  strategy which I had somewhat outlined to Mr. Herndon.

26  I then wrote several letters to Mr. Herndon in which I
27  expressed My uneasiness with the strategy he had suggested, and

in which I requested that he contact Mr. Mitchell to discuss the merits of the strategy, and how it could be applied to My cases.

Mr. Herndon chose to ignore My requests and, upon his return from Europe, he chose <u>not</u> to contact Me prior to the day of the arraignment, and he chose instead to contact Me in person approximately <u>three and one-half hours</u> before the arraignment.

I had previously requested from My Pastor, Butch Paugh, living in Nettie, West Virginia state, to please contact Mr. Paul Mitchell, and that I needed more information about Mr. Mitchell's plan(s). When I received a copy of that plan and strategy, I knew at once that I had found the strategy that would stand the best chance of winning.

What I really liked about the strategy which Mr. Mitchell presented was that it was primarily "pre-trial," while Mr. Herndon's strategy was "during trial." I felt that there was room enough to implement <u>both</u> plans, if need be. If Mr. Mitchell's plan worked, then there would be no trial. It if did not work, then Mr. Herndon still had plenty of time to prepare for trial.

Upon his return from Europe, Mr. Herndon chose <u>not</u> to contact Me about any of the letters which I had written. He also chose <u>not</u> to contact Mr. Paul Mitchell, as I had requested of him.

I had attempted to contact Mr. Herndon many times in the week immediately prior to the arraignment, but I was unable to do so, because Mr. Herndon had requested the Northern Regional Jail and Correctional Center ("NRJ") to put a restrictive block on the telephone, <u>so that I could not contact him by telephone</u>.

1   I called Mr. Paul Mitchell and requested that he prepare a
2   Plea in Abatement and a Motion to Stay Proceedings for filing in
3   the United States District Court prior to the arraignment, if at
4   all possible.

5   Mr. Mitchell did so, and immediately shipped the pleadings
6   via Express U.S. Mail, with a fax transmittal letter, to
7   Magistrate Judge Seibert, to the Clerk of Court, and to other
8   individuals as well, including but not limited to Mr. Stephen D.
9   Herndon.

10   In a fax to Mr. Mitchell dated Sunday, December 1, 1996, Mr.
11   Herndon acknowledged that he had received the Express U.S. Mail
12   package with My pleadings on Saturday, November 30, 1996. In
13   that fax letter to Mr. Mitchell, Mr. Herndon indicated his
14   unwillingness to cooperate in the delivery and filing of these
15   pleadings, because he had decided, by himself, that they had no
16   legal basis and that they were "frivolous" [sic]. He further
17   indicated that he would not cooperate in any way with the written
18   directions which Mr. Mitchell had given him, according to My
19   explicit verbal instructions.

20   On Monday, December 2, 1996, Mr. Herndon arrived at the NRJ
21   to talk with Me about the arraignment, and about some of the
22   things which he proposed to do at that arraignment.

23   With regard to Mr. Mitchell's request that Mr. Herndon
24   assist with the filing of these pleadings, Mr. Herndon refused to
25   cooperate; he refused to deliver them. Although he said that he
26   had them in his possession, he indicated that he would not give
27   them to Me, as instructed to do so by Mr. Mitchell. He said that
28   he would give them to Me in the courtroom; this he <u>never</u> did.

1    Fortunately, the Express U.S. Mail that Mr. Mitchell had
2    sent to Me on Friday, November 29, 1996, did arrive at the NRJ at
3    exactly 11:00 a.m. on Monday, December 2, 1996, just minutes
4    before the U.S. Marshals office arrived to pick Me up and escort
5    Me to the courtroom.

6    In the courtroom, Mr. Herndon gave Me a copy of the fax he
7    had sent to Mr. Mitchell, which expressed his unwillingness to
8    cooperate in the filing of these pleadings.

9    Because I had received from the U.S. Postal Service copies
10   of the Plea in Abatement and of the Motion to Stay Proceedings
11   prepared by Mr. Mitchell, I was able to execute same, and I was
12   able to file them in open court.  Mr. Herndon expressed his
13   unwillingness to participate or to cooperate in any way with the
14   filing of these pleadings, because he felt that they were
15   "frivolous" [sic].

16   I informed the court that I personally took offense at Mr.
17   Herndon's calling these pleadings "frivolous", because it was My
18   life on the line, and because anything that was filed
19   specifically on My behalf, I did not consider frivolous at all.

20   Because of Mr. Herndon's unwillingness to cooperate with the
21   Me, I requested that he be removed, and that a new court-
22   appointed attorney be assigned to My cases.  That request was
23   ignored by the court.

24   When Magistrate Seibert entered a plea of "Not Guilty" on My
25   behalf, Mr. Herndon offered no objections, even though I had
26   stated to the court that I objected to the entering of any plea
27   on My behalf, either by My attorney or by the Magistrate.  I
28   suffer from a hearing loss in both ears, sustained during Vietnam

combat, and I never actually knew that the Magistrate did, indeed, enter a plea on My behalf. I eventually discovered this while watching the evening news only later that day.

When the Magistrate continued to proceed with court scheduling, Mr. Herndon offered no protests on My behalf, even though a proper Plea in Abatement and a proper Motion to Stay Proceedings had already been entered in open court. When My subsequent protest was summarily ignored by the Court, Mr. Herndon never offered to speak up for Me.

Although Mr. Herndon had indicated that he would have nothing to do with My pleadings, once they were entered into the court record, he had an obligation to protest all obvious procedural errors *and* any judicial misconduct. He never did.

I have subsequently learned from Mr. Mitchell that the Magistrate's act of entering a Plea of "Not Guilty" *after* I had previously filed a proper Plea in Abatement, constitutes grounds for charging the Magistrate with practicing law from the bench, in direct violation of 28 U.S.C. 454. I believe this is tantamount to entering a plea of "Guilty" immediately after a defendant enters a plea of "Not Guilty"; this is a high misdemeanor, pursuant to 28 U.S.C. 454.

There was a question from the court as to the status of Mr. Mitchell in these cases, and I replied that Mr. Paul Andrew Mitchell of Tucson, Arizona state, was a Counselor at Law, and was retained by Me as a paralegal for a specific purpose, in accordance with contract law, and with the Sixth Amendment to the Constitution for the United States of America.

1   The court then proceeded deliberately to ignore My requests
2   that all proceedings be stayed, pending a ruling by a higher
3   judge who was competent and qualified to hear the matter now
4   placed before the court by My Pleas in Abatement and My Motions
5   to Stay Proceedings.
6   Mr. Herndon had given Me a letter in the courtroom which I
7   read much later. This letter indicated that he was not going to
8   file a motion -- <u>as I had requested</u> him not to file -- on
9   preventing the FBI from destroying evidence.
10   Yet, at the arraignment, Mr. Herndon, from what I could
11   understand, filed the Motion anyway. I am not sure what that was
12   all about, and I remain confused by this action of his. While I
13   had expressed some reservations about the value of that Motion, I
14   had <u>never</u> instructed Mr. Herndon <u>not</u> to file the Motion. It
15   seemed strange that, in spite of what the letter said, he had
16   acted contrary to his intentions, as expressed in his own letter.
17   Additionally, it should be noted that in his fax to Mr.
18   Mitchell on Sunday, December 1, 1996, Mr. Herndon stated that
19   legal mail (documents) must be <u>hand-carried</u> into the jail
20   facility and not mailed there, because that was the <u>policy</u> of the
21   West Virginia jail system. I found this interesting, because he
22   had previously mailed copies of the grand jury indictments, and
23   of the scheduled hearing dates, to Me at both the Central
24   Regional Jail and the NRJ. The question now is this: Did he lie
25   here and, if so, where else would he lie -- at trial? God
26   forbid!
27   I personally have serious problems with Mr. Herndon. He
28   ignores all of My requests for contact with him; he ignores My

1  suggestions to consult with other attorneys; he ignores My
2  instructions for filing pleadings which could help Me in court.
3      It must be noted that Mr. Herndon has ignored *all* My
4  suggestions that we work together on strategy, all the while he
5  has held onto his own strategy for the trial itself. In My
6  opinion, testing a strategy under fire is a very poor strategy.
7  If we lose -- <u>I'm dead</u>. Thanks, but no thanks!
8      During the period when Mr. Herndon was on vacation in
9  Europe, I had no legal counsel *whatsoever*. The Federal Bureau of
10 Investigation ("FBI") smashed in My front door, and then they
11 took My fax machine and My copies of Title 18 United States Code,
12 Sections 1512 and 1513. To take My means of communicating with
13 Patriot groups across America is fraudulent, criminal conduct.
14 Legal counsel was not available. To date, Mr. Herndon has said
15 nothing about that incident. I would very much like to know if
16 he knew about this incident involving the FBI.

17                     INCORPORATION OF EXHIBITS
18     I hereby incorporate by reference the following documentary
19 exhibits, as if they were set forth fully herein, to wit:
20
21     1.   MEMO from Paul Andrew Mitchell to James E. Seibert,
22         dated November 29, 1996
23
24     2.   MEMO from Paul Andrew Mitchell to Stephen D. Herndon,
25         dated November 29, 1996
26
27     3.   FAX TRANSMITTAL from Stephen D. Herndon to Paul Andrew
28         Mitchell, dated December 1, 1996
29
30     4.   MEMO from Paul Andrew Mitchell to Stephen D. Herndon,
31         dated December 2, 1996
32
33     5.   MEMO from Paul Andrew Mitchell to Rita J. Sedosky,
34         dated December 7, 1996

35
36 FURTHER AFFIANT SAYETH NAUGHT.

```
 1
 2
 3   Executed on  X   12-13-96
 4
 5
 6
 7
 8
 9   X   _____[signature]_____
10   Floyd Raymond, Looker, Sui Juris
11   Citizen of West Virginia state
12
13
14   Executed on December 10, 1996
15
16
17
18   _____[signature: Paul Mitchell]_____
19
20
21   Paul Andrew, Mitchell, B.A., M.S.
22   Citizen of Arizona state, federal witness,
23   and Counselor at Law
24
...
40
```

*Affidavit of Probable Cause/Notice of Intent:  Page 10 of 11*

```
 1                     PROOF OF SERVICE

 2     I, Paul Andrew, Mitchell, Sui Juris, hereby certify, under

 3   penalty of perjury, under the laws of the United States of

 4   America, without the "United States", that I am at least 18 years

 5   of age, a Citizen of one of the United States of America, and

 6   that I personally served the following document(s):
 7
 8               AFFIDAVIT OF PROBABLE CAUSE AND
 9        NOTICE OF INTENT TO FILE CRIMINAL COMPLAINTS:
10                28 U.S.C. 1746(1);  Rule 201(d),
11                     Federal Rules of Evidence

12   by placing one true and correct copy of said document(s) in first

13   class U.S. Mail, with postage prepaid and properly addressed to

14   the following:
15
16   Office of the United States Attorney
17   Federal Building
18   c/o P.O. Box 591
19   Wheeling
20   WEST VIRGINIA
21
22   Clerk of Court
23   United States District Court
24   c/o P.O. Box 471
25   Wheeling
26   WEST VIRGINIA
27
28   Attorney General
29   Department of Justice
30   10th and Constitution, N.W.
31   Washington
32   DISTRICT OF COLUMBIA
33
34   Solicitor General
35   Department of Justice
36   10th and Constitution, N.W.
37   Washington
38   DISTRICT OF COLUMBIA
39
40   Executed on December 10, 1996
41
42
43
44   /s/ Paul Mitchell
45   _____
46
47   Paul Andrew Mitchell, Sui Juris
48   Citizen of Arizona state, federal witness,
49   Counselor at Law, and Counsel of Record in Fact
```

MEMO

TO:      James E. Seibert, Magistrate
         United States District Court
         Room 433, Federal Building
         Wheeling, West Virginia

FROM:    Paul Andrew, Mitchell, B.A., M.S.
         Counselor at Law

DATE:    November 29, 1996

SUBJECT: U.S.A. v. Looker et al.

I am authorized by Mr. Floyd Raymond Looker to inform you of His intent to execute and file His Plea in Abatement and Sworn Statement in the matter now before you. These pleadings have been mailed to him at the Northern Regional Jail via Express U.S. Mail postmarked today, for executing and filing immediately upon receipt of same; they have also been mailed to His Pastor, Butch Paugh in Nettie, West Virginia, and to His stand-by counsel of record, Mr. Stephen D. Herndon at 76 Fifteenth Street, Wheeling, West Virginia.

Because of the logistical difficulties involved in delivering these pleadings to Mr. Looker, getting them signed by Mr. Looker, and then getting them filed in the United States District Court, I respectfully request, on His behalf, that you postpone the arraignment scheduled for 1:30 p.m. in Courtroom 433 on Monday, December 2, 1996, until such time as these pleadings can be processed through normal channels.

It is also Mr. Looker's understanding, and expectation, that His Plea in Abatement must be heard by a qualified and competent federal judge, and not a magistrate.

Thank you very much for your consideration.


Sincerely yours,




Paul Andrew, Mitchell, B.A., M.S.
Counselor at Law and federal witness
c/o 2509 N. Campbell, #1776
Tucson, Arizona state
Postal Zone 85719/tdc

email: pmitch@primenet.com (586/Eudora Pro)
tel:   (520) 320-1514 (private line)
   (please request permission to share)
fax:   (520) 320-1513 (dedicated Internet line)
   (call: 520-320-1514 first to switch software)

copy: Floyd Raymond Looker

```
MEMO

TO:        Stephen D. Herndon
           c/o 76 Fifteenth Street
           Wheeling, West Virginia
           Postal Zone 26003/tdc

FROM:      Paul Andrew, Mitchell, B.A., M.S.
           Counselor at Law

DATE:      November 29, 1996

SUBJECT:   Ray Looker pleadings
```

Please expedite delivery of these pleadings into the hands of Ray Looker, have him sign and date pages 8 of 9 and 22 of 36, then file them with the Clerk of the Court prosecuting the cases.

I am authorized to instruct you to request a routine continuance in the case, pending delivery of these pleadings to all interested parties by the U.S. Postal Service.

Mr. Looker does not wish to enter a standard plea at this time, given that these pleadings consist of a Plea in Abatement and Motion to Stay Proceedings, pending final review of his challenge to the constitutionality of the Jury Selection and Service Act.

The remaining copies have been served today by mail under my signature.

Thank you.


Sincerely yours,



Paul Andrew, Mitchell, B.A., M.S.
Counselor at Law and federal witness
c/o 2509 N. Campbell, #1776
Tucson, Arizona state
Postal Zone 85719/tdc

email: pmitch@primenet.com (586/Eudora Pro)
tel:   (520) 320-1514 (private line)
  (please request permission to share)
fax:   (520) 320-1513 (dedicated Internet line)
  (call: 520-320-1514 first to switch software)

# FAX TRANSMITTAL

TO: Paul Andrew Mitchell

From: Stephen D. Herndon

Dated: December 1, 1996

Re: United States v. Looker

Pages: (Exclusive of this page): 2

All the information contained in this facsimile message is attorney privileged and confidential information intended for the use of the individual or entity named above. If the recipient of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this FAX in error, please notify me immediately by telephone at 304-232-6330 and return the original FAX by mail to Stephen D. Herndon, 76 Fifteenth Street, Wheeling. West Virginia 26003

# STEPHEN D. HERNDON

ATTORNEY AT LAW  
76 FIFTEENTH STREET  
WHEELING, WV 26003-3512

TELEPHONE 304-232-6330  
FAX 304-232-6330

December 1, 1996

Paul Andrew Mitchell  
c/o 2509 North Campbell Suite 1776  
Tucson, Arizona 85719

Dear Sir:

    This will acknowledge receipt of your facsimile transmission of a copy of a letter to Magistrate Judge Seibert on November 29, 1996, as well as a number of pleadings with cover letter delivered to me on November 30, 1996.

    Please be advised that it is the policy of the local detention center to permit attorneys to deliver their own work product and court materials to clients. All other materials must be processed into the detention center in the normal manner. This is a security based requirement that I am not willing to avoid in this or any other case. Accordingly, I would not be able to follow your instructions to deliver the pleadings to Mr. Looker if I were so inclined.

    Further, West Virginia has several ethics rules that appear to have some application to the matter. Rule 3.3 of the Rules of Professional Conduct prohibits an attorney from advancing any claim that is frivolous as a matter of law or of fact. In West Virginia, attorneys take these rules rather seriously.

    I deem your plea in abatement to be frivolous.

    First, Article II, Section 3 of the West Virginia Constitution requires that all citizens of West Virginia must be natural or naturalized citizens of the United States. Accordingly, your allegation that the present jury selection process excludes citizens of West Virginia from jury service who elect not to be citizens or the United States is false.

    Second, the United States Supreme Court has addressed the question of whether or not it is lawful to require that a juror be a citizen and determined that a citizenship qualification for jury service is constitutional.

    Accordingly, I decline to follow your instructions to file the pleadings prepared and signed by you. Should you have some controlling authority for the position advanced by you, I will be happy to reconsider my position.

I note that you have executed the pleadings as counsel of record and referenced me as stand-by counsel. Please be advised that I only consent to act as local counsel or stand-by counsel for attorneys that I know or who come to me with professional references from persons whose judgment I trust. You fit into neither category.

Under no circumstances will I act as either local counsel or stand-by counsel for you. I expect that you will have arranged local counsel for tomorrow's hearing inasmuch as you have entered a general appearance as counsel of record. I look forward to hearing the results of the hearing with some minor, academic interest.

Inasmuch as I have not been relieved from representing Mr. Looker by the presiding court, I will appear and explain my position to the court if necessary.

Very truly yours,

Stephen D. Herndon

cc: Floyd Raymond Looker

```
MEMO

TO:        Stephen D. Herndon
           c/o 76 Fifteenth Street
           Wheeling, West Virginia
           Postal Zone 26003/tdc

FROM:      Paul Andrew, Mitchell, B.A., M.S.
           Counselor at Law

DATE:      December 2, 1996

SUBJECT:   Ray Looker pleadings
```

Mr. Herndon:

After you received them on Saturday last, did you, or did you not, deliver to Mr. Looker the eight (8) pleadings which I was specifically retained to prepare for him, per his verbal request for same?

If I do not receive from you a written answer to this question within seventy-two (72) hours, transmitted via Express U.S. Mail, I will proceed on the basis of the conclusive presumption that you did **not** deliver *any* of the pleadings which I prepared for Mr. Looker, and which I mailed to you at great expense via Certified United States Express Mail.

Mr. Herndon, I do hope that you appreciate the gravity of what you have done today in Wheeling, West Virginia, to jeopardize the life, liberty, and property of Mr. Ray Looker. I strongly advise you to study carefully the case law concerning Title 18, United States Code, Sections 241 and 242.


Sincerely yours,



Paul Andrew, Mitchell, B.A., M.S.
Counselor at Law and federal witness
c/o 2509 N. Campbell, #1776
Tucson, Arizona state
Postal Zone 85719/tdc

email: pmitch@primenet.com (586/Eudora Pro)
tel:   (520) 320-1514 (private line)
  (please request permission to share)
fax:   (520) 320-1513 (dedicated Internet line)
  (call: 520-320-1514 first to switch software)


copy:  Federal Bureau of Investigation
       Postmaster, Wheeling, West Virginia
       files

```
MEMO

TO:        Rita J. Sedosky
           "Deputy Clerk"
           United States District Court
           Post Office Box 471
           Wheeling, West Virginia state

FROM:      Paul Andrew, Mitchell, B.A., M.S.
           Counselor at Law

DATE:      December 7, 1996

SUBJECT:   Your Letter Dated December 2, 1996
```

This is to inform you that I have invoked the Freedom of Information Act ("FOIA") to request certified documentary evidence of your official credentials. Until such time as I receive confirmation from reliable sources that you do lawfully occupy the office which you claim to hold, I will table your letter to me of December 2, 1996. A copy of My FOIA request for your credentials has been mailed to you under separate cover.

There is one pressing issue which requires My immediate response, however. You have allegedly invoiced Me for photocopying 328 pages @ $0.50 per page, for a TOTAL DUE of $164.00. I hereby refuse your invoice, dated December 2, 1996, for two reasons:

One, I did not order this photocopying, and there is no purchase order on record to evidence any authorization by Me to perform such photocopying services, or to invoice Me for same.

Two, for your information, the pleadings to which you refer were reproduced in triplicate by Me. One set was mailed directly to your office (see Proof of Service). The second set was mailed, via Express U.S. Mail, directly to Major General Ray Looker at the Northern Regional Jail in Moundsville, West Virginia state, for His signature and subsequent filing with your office.

The third set was mailed, via Express U.S. Mail, to Mr. Looker's court-appointed attorney, Mr. Stephen D. Herndon, at 76 Fifteenth Street, Wheeling, West Virginia state. Mr. Herndon acknowledged receipt of this third set on Saturday, November 30, 1996; this corresponds to the information on the PS Form 3811, Return Receipt, which I received from Mr. Herndon via the U.S. Postal Service. We have taken the liberty of modifying this Form 3811 to read "NON Domestic" [sic].

However, Mr. Herndon then refused to follow Mr. Looker's explicit instructions to deliver this third set to Mr. Looker at the Northern Regional Jail, and then to file the papers with your office after Mr. Looker had signed and dated them. I have attached a copy of Mr. Herndon's letter to Me, dated December 1, 1996. See, in particular, the last paragraph on the first page:

```
 1        "Accordingly, I decline to follow your instructions to file
 2        the pleadings prepared and signed by you."  [sic]
 3
 4   Thus, the evidence now in my possession proves that three (3)
 5   sets of pleadings were, in fact, mailed via Express Mail, but Mr.
 6   Herndon refused to deliver the third set of pleadings to their
 7   intended destination.
 8
 9   I cannot take any responsibility for unprofessional, unethical,
10   and criminal conduct on the part of Mr. Looker's court-appointed
11   attorney.  Confer at "attorn" in Black's Law Dictionary.
12
13   Please contact Mr. Herndon to inquire as to the whereabouts of
14   this third set.  I understand that he is presently an officer of
15   your Court.  By Law, these pleadings are Petitions to Government
16   for Redress of Grievances;  as such, they are protected by the
17   Petition Clause in the First Amendment.  The U.S. Supreme Court
18   has ruled that the Petition Clause is the Right conservative of
19   all other rights.  See Chambers v Baltimore & Ohio R.R., 207 US
20   142, 148 (1907).
21
22   This raises the possibility that Mr. Herndon may be committing
23   acts which deprive Mr. Looker of fundamental Rights guaranteed by
24   the Constitution for the United States of America, in violation
25   of 18 U.S.C. 242, which Constitution you must take an oath to
26   support, pursuant to Article VI, Clause 3, in the U.S.
27   Constitution.
28
29   It is for this reason that I am required to demand that you
30   produce evidence of your oath to support the U.S. Constitution.
31   Please see the deadlines for exhaustion of administrative
32   remedies, as detailed in Title 5, United States Code, Sections
33   552 et seq.  Title 5 U.S.C. has been enacted into positive law.
34
35   Thank you very much for your consideration.
36
37
38   Sincerely yours,
39
40
41
42
43   Paul Andrew, Mitchell, B.A., M.S.
44   Counselor at Law and federal witness
45   c/o 2509 N. Campbell, #1776
46   Tucson, Arizona state
47   Postal Zone 85719/tdc
48
49   email: pmitch@primenet.com (586/Eudora Pro)
50   tel:    (520) 320-1514 (private line)
51      (please request permission to share)
52   fax:    (520) 320-1513 (dedicated Internet line)
53      (call: 520-320-1514 first to switch software)
54
55   copies:  Hon. Frederick P. Stamp, Jr.
56            Hon. James E. Seibert
57            Maj. Gen. Floyd Raymond, Looker
```