

U.S. DISTRICT COURT
FILED AT WHEELING, WV
FEB 27 1997
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,           :
                    Plaintiff,      :      CRIMINAL ACTION
                                    :      NO. 1:96CR43-01
        v.                          :
                                    :
JAMES R. ROGERS,                    :
                    Defendant.      :
                                    :

## DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

AND NOW, comes the Defendant, JAMES R. ROGERS, by his attorney, GARY B. ZIMMERMAN, Esquire, and moves this honorable court for an order suppressing any and all evidence seized from the defendant's person; his assigned locker at the Clarksburg, West Virginia Firehouse; a black bag located in the Clarksburg, West Virginia Firehouse, which was owned and in the control of the defendant; and his residence located at Route 2, Box 1960, Jane Lew, West Virginia; all of which occurred on October 11, 1996.

1.  On October 11, 1996 at approximately 6:50 A.M., seven (7) Federal Bureau of Investigation agents and a West Virginia State Trooper executed an arrest warrant on the defendant.

2.  The defendant was taken into custody pursuant to said warrant at the downtown Clarksburg Fire Department on Main Street, Clarksburg, West Virginia.

1

3.   The agents entered the living quarters of the fire department where the defendant was sleeping.  They woke him up and informed him that he was under arrest.

4.   The agents, all of whom were armed, surrounded the defendant while he dressed.  One or more of them said they were looking for photographs.

5.   One or more of the agents asked the defendant which locker was his.  He responded that locker No. 15 was his.

6.   In front of locker 15 was a black duffel bag.  The agents asked the defendant if that was his bag.  He responded that it was his bag.

7.   The agents continued to question the defendant about photographs of the FBI Identification Center located in Clarksburg.  He continued to inform them that he did not have any photographs.

8.   The agents asked the defendant if there were any photos of the FBI Identification Center in his locker or bag.  He responded no.  They then asked him if they could look in the locker and the bag for the photographs.  He responded, "Yes."

9.   The agents then searched the locker and the black duffel bag.  They did not find any photographs, but they seized all of the items, which are listed on the inventory attached hereto as Exhibit "A."

10.  The agents then asked the defendant if the photographs were in his home.  He responded that they were not.

11.   The defendant was then advised of his rights as guaranteed by the Fifth and Sixth Amendments of the United States Constitution.

12.   Thereafter, the agents presented him with a consent to search form for Locker 15 and his black duffel bag.  He refused to sign this form.

13.   The defendant was then removed from the scene to the United States Post Office.

14.   The defendant was surrounded by at least six (6) agents at all times from the initial encounter at 6:50 A.M. until he was removed from the scene.

15.   The search of the defendant's Locker 15 and his black duffel bag and the seizure of all items from these places was illegal and unlawful in that these searches and seizures violated his rights as guaranteed by the Fourth, Fifth and Sixth Amendments to the United States Constitution as follows:

    a.   The defendant was taken into custody by agents of the F.B.I. at 6:50 A.M. on October 11, 1996.

    b.   The agents began to interrogate the defendant and elicited a number of statements from him prior to advising him of his Fifth and Sixth Amendment rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

    c.   The unlawful interrogation resulted in the identification of his locker and black duffel bag.

    d.   The searches and seizures from Locker 15 and the black duffel bag were conducted without a search warrant.

    e.   The searches and seizures of Locker 15 and the black duffel bag were not permitted by any recognized exception to the warrant clause of the Fourth Amendment to the United States

Constitution:

(1)   Consent to Search Locker 15 and the Black
       Duffel Bag

    (a)   The unlawful interrogation of the
       defendant, which resulted in the
       identity of his locker and duffel bag,
       also resulted in his submission to the
       claim of lawful authority when he
       responded yes to the agents' questions
       regarding whether or not they could look
       into the locker and bag for photographs.
       This unlawful interrogation and the fact
       that defendant was surrounded by armed
       F.B.I. agents overcame his free will and
       rendered any purported consent
       involuntary.

    (b)   The defendant's answer of "yes" to the
       agents question of whether they could
       look in his locker and duffel bag for
       the photographs was not freely and
       voluntarily given, but was the product
       of duress and coercion, expressed or
       implied.

(2)   Consent to Seize the Items Within the Locker
       and the Black Duffel Bag

    (a)   The unlawful search of the locker and
       black duffel bag failed to produce the
       photographs, which the agents were
       attempting to locate.

    (b)   The agents seized a variety of other
       items of personal property from the
       locker and the black duffel bag.

    (c)   At the time of the seizure, the agents
       lacked probable cause that the items
       seized were contraband or the evidence
       of a crime; thereby, making the seizure
       general and exploratory in nature, which
       is prohibited by the Fourth Amendment.

    (d)   Any purported consent by the defendant
       to search the locker and black duffel
       bag for photographs limited the seizure
       to the photographs in question.

16.   On October 9, 1996, F.B.I. Special Agent, J. C. Raffety, prepared an affidavit in support of a search warrant application for the home of the defendant located at Route 2, Box 196-0, Jane Lew, West Virginia.

17.   On October 9, 1996, Magistrate David Case issued a search warrant for the defendant's home.

18.   F.B.I. agents executed the search warrant on October 11, 1996 and seized a variety of personal items, which are listed on the inventory attached as Exhibit "B."

19.   The search warrant in question was issued without probable cause; thereby, violating defendant's Fourth Amendment rights as follows:

   a.   The affidavit fails to establish any facts or circumstances which form a nexus between the activity described in the affidavit and the property for which the warrant was issued.

   b.   The affiant's statement that his investigative expertise is that people normally maintain property such as cameras and photographs with their personal effects in their residences is a general conclusion.  This conclusion is insufficient to establish that the camera in question is more likely than not in the residence. It is merely a guess and a speculative conclusion.

   c.   The search warrant and the affidavit in support thereof are so lacking in facts and circumstances to establish probable cause to search the described premises that no well-trained officer should rely upon this warrant.  Thus, the good faith exception as set forth in *U.S.A. v. Leon*, 468 U.S. 897 (1984) is not applicable.

WHEREFORE, the defendant requests that the court enter

an order suppressing any and all evidence seized on October 11, 1996 from the home of the defendant, from his locker at the fire station and from his black duffel bag.

Respectfully submitted,

Dated: _2-26-97_

GARY B. ZIMMERMAN
Attorney for James R. Rogers
PA I.D. No. 10080
Suite 304
100 Ross Street
Pittsburgh, PA 15219
(412) 566-2133

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,      :   CRIMINAL ACTION
           Plaintiff,      :   NO. 1:96CR43-01
                       :
    v.                 :
                       :
JAMES R. ROGERS,          :
           Defendant.    :

## CERTIFICATE OF SERVICE

On this _26th_ day of February, 1997, I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE was served by regular first class, United States mail, upon the following counsel of record:

David E. Goodwin
Assistant U. S. Attorney
United States Attorney's Office
Federal Post Office Building
Post Office Box 750
Clarksburg, WV 26301

William Cipriani, Esquire
634 Charles Street
Wellsburg, WV 26070

Mr. Floyd R. Looker
Northern Regional Jail
R.D. #2, Box 1
Moundsville, WV 26041

GARY B. ZIMMERMAN

U.S. DISTRICT COURT
FILED AT WHEELING, WV

FEB 27 1997

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,          :     CRIMINAL ACTION
              Plaintiff,           :     NO. 1:96CR43-01
                                   :
     v.                            :
                                   :
JAMES R. ROGERS,                   :
              Defendant.           :
                                   :

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO SUPPRESS

The defendant has filed a Motion to Suppress two separate searches and seizures, which occurred on October 11, 1996.

The first was without a warrant and occurred at the Clarksburg Fire Station, wherein his locker and his black duffel bag were searched.  The second was of his home and was conducted pursuant to a warrant issued on October 9, 1996 by United States Magistrate David Case.

To determine the legality of the searches at the fire house, an evidentiary hearing is required.  These searches were conducted without a warrant thereby requiring the Government to show the existence of a recognizable exception to the warrant clause of the United States Constitution.  *Chimel v. California*, 395 U.S. 752, 762 (1969) and it progeny.

A review of the discovery material, leads the defendant to believe the Government will attempt to rely upon the consent

1

exception to justify this warrantless search. Consent searches are valid only if the consent is freely and voluntarily given. The question of whether a consent was voluntary, as opposed to the product of duress or coercion is a question of fact to be determined by a totality of the circumstances. *United States v. Evans*, 27 F.3d 1219 (7th Cir. 1994). To establish voluntary consent (1) there must be clear and positive testimony that consent was unequivocal and specific and freely given; (2) the government must prove consent was given without duress or coercion--expressed or implied; and (3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived. *United States v. Muldrow*, 19 F.3d 1332, 1336 (10th Cir. 1994).

The instant searches occurred while the defendant was in custody. Prior to the searches, he had not been informed of his *Miranda* rights nor was he advised that he had the right to refuse the request to search made by the F.B.I. agents. The Fourth Circuit has held that there is no requirement that the subject of a search has knowledge of his right to refuse consent. *United States v. Perrin*, 45 F.3d 869, 875 (4th Cir. 1995). This does not, however, remove the fact of the defendant's knowledge from the consideration of voluntariness using the totality of the circumstances test. *United States v. Kim*, 25 F.3d 1426, 1432

(9th Cir. 1994); *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995).

Some, but not all, of the factors that should be considered when determining whether the search was in fact voluntary or was the product of coercion are:

1.  The voluntariness of the defendant's custodial status.

2.  The presence of coercive police procedures.

3.  The extent and level of the defendant's cooperation with the police.

4.  The defendant's awareness of his right to refuse to consent.

5.  The defendant's education and intelligence.

6.  The defendant's belief that no incriminating evidence will be found.

7.  Whether the arresting officers had their guns drawn or otherwise overmastered the suspect.

8.  Whether the *Miranda* warning was given prior to the search.

9.  If the defendant was in custody, whether or not he was made aware of the reason for his custody.

While these factors enumerated in *Jenkins* and *Kim* give some guidance, they are by no means all inclusive. The rule is clear, the Government bears the burden to prove the consent was voluntary and the court must consider the totality of the circumstances when deciding this issue. *United States v. Evans*, 27 F.3d 1219, 1230 (7th Cir. 1994).

The defendant further submits that in addition to the involuntariness of the consent as discussed above, the seizure of

the items from the locker and the black duffel bag was unlawful.

If for argument's sake, the defendant's consent was valid, the agents would be limited in their search and seizure by the parameters of the consent. *Walter v. United States*, 447 U.S. 649 (180); *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992); *United States v. Cannen,* 29 F.3d 472, 477 (9th Cir. 1994). If the consent of a defendant permits Government agents to look into a locker or duffel bag for photographs, the search of the locker and duffel bag would be limited to a search for photographs. *Florida v. Jimeno*, 500 U.S. 248, 252 (1991); *United States v. Moldenado*, 38 F.3d 936, 940 (7th Cir. 1994); *United States v. Rodney,* 956 F.2d 295 (D.C. Cir. 1992); *United States v. Torres*, 32 F.3d 225, 230-31 (7th Cir. 1994).

A review of the inventory from the locker reveals that there were no photographs seized. Other items, however, were seized which had to be examined closely to determine just what they were. The books had to be read, the small leather pouch had to be opened and examined. The inventory of the duffel bag also shows that no photographs were seized. The items seized were books and other items, which the defendant legally possessed.

The items seized were not contraband or the fruits of the crime for which the defendant was charged and in custody. They were therefore not subject to seizure unless the Government can demonstrate that they were "mere evidence" of a crime and there

was probable cause to seize them.  *Soldal v. Coal County, Illinois*, 506 U.S. 56 (1992); *Warden v. Hayden*, 387 U.S. 294, 306-07 (1967).

The requirements of the Fourth Amendment can serve the same protection of privacy, whether the search and seizure is for mere evidence or for fruits, instrumentality or contraband.  There must, of course, be a nexus . . . between the item seized and criminal behavior.  Thus in the case of mere evidence, probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction.  *Warden v. Hayden*.

The defendant thus submits that irrespective of the initial warrantless search issue, the items seized must be suppressed as they were seized without a warrant and without probable cause.

<u>The Search Warrant</u>

The defendant submits that the search warrant was issued without probable cause.  The affiant, a well-trained law enforcement officer, knew, or should have known, that the warrant was issued without probable cause and he did not act in good faith when he executed the warrant and seized items from the defendant's home.

The Fourth Amendment requires that a search warrant be based on probable cause.  Probable cause has been defined as evidence, which would lead a reasonable person to believe that an offense

has been committed or is being committed or that the items to which a search warrant is directed are located in the area described. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *United States v. Lalor*, 996 F.2d 1578 (4th Cir. 1993).

The search warrant in this case sets forth a chronology of activities describing the FBI Identification Center in Clarksburg as a target in the event of an armed struggle between the United States Government and the people. The affidavit also sets forth information that the defendant had access to the blueprints to said facility and that he photographed said plans and gave them to Mr. Looker.

All of the activity described in the affidavit occurred in places other than the defendant's home. The one link between the activity described in the warrant and the place to be searched is that Rogers and his family lived at the location.

The affiant inserted the following paragraph into the affidavit to link the place to be searched.

> . . . It is also the affiant's investigative experience that people normally maintain property such as a camera and photographs with their personal effects in their residence.

The affiant then requested a warrant to search defendant's house for a camera and other photographs of the F.B.I. Identification Center.

The defendant submits that the affidavit failed to set forth any facts and circumstances that would make it more probable than

not that a camera and photographs were in the defendant's house at the time the warrant was issued.

There are no facts submitted that the defendant even owned a camera. There are no statements from the defendant that he had any photographs at his home. The affiant's statement as set forth above is nothing more than a bare suspicion. It is a guess that the defendant owns a camera and further a mere guess that it was presently located in his home.

The defendant submits that this was an exploratory search based upon a hunch not on probable cause. The defendant recognizes that the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence, and that can be established by circumstantial rather than direct evidence. *United States v. Lalor.* However, it is submitted that the nexus in this case is not supported by any evidence whatsoever. If the affidavit would have established that the defendant owned a camera, there would have been at least one fact from which an inference could be drawn that he may keep it at his home. But again, he may have kept it in his car, as many people do, or at his place of employment as many people do.

The defendant submits that the nexus in this case is an obvious guess and this court should find that the warrant was issued without probable cause.

In addition to the above, the defendant submits that the facts and circumstances in the warrant detailing the transfer of the photographs from the defendant to Looker occurred eight (8) months prior to the issuance of the search warrant. This information was stale. The transfer occurred on February 18, 1996. This warrant was issued on October 9, 1996. There is no information recited in the affidavit that would indicate that the defendant engaged in any other activity, which would have involved a camera or photographs. The defendant submits that on October 9, 1996, the information was old and stale -- not timely, and did not present probable cause. *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993).

The defendant submits that the Government cannot rely upon the good faith exception where they can introduce evidence obtained by the officer acting in reasonable reliance upon a search warrant issued by a detached and neutral magistrate, but ultimately found to be unsupported by probable cause. *United States v. Leon*, 468 U.S. 897, 900 (1984)

The defendant submits that the instant situation is one of the exceptions identified in *Leon*. No reasonably well-trained officer should rely upon this warrant. Nor can these well-trained agents manifest good faith in relying upon a warrant based on this affidavit, which is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.

The defendant submits that the staleness of the information and the mere guess at the nexus between information in the affidavit and the location of a camera in the house is such that no reasonably well-trained officer could believe probable cause existed.

WHEREFORE, the defendant requests that any and all items seized from his locker and black duffel bag at the Clarksburg Fire House and from his residence be suppressed.

Respectfully submitted,

Dated:  2.26.97

GARY B. ZIMMERMAN
Attorney for James R. Rogers
PA I.D. No. 10080
Suite 304
100 Ross Street
Pittsburgh, PA 15219
(412) 566-2133

9

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,    :    CRIMINAL ACTION
          Plaintiff,         :    NO. 1:96CR43-01
                             :
     v.                      :
                             :
JAMES R. ROGERS,             :
          Defendant.         :

## CERTIFICATE OF SERVICE

On this 26th day of February, 1997, I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS was served by regular first class, United States mail, upon the following counsel of record:

David E. Goodwin
Assistant U. S. Attorney
United States Attorney's Office
Federal Post Office Building
Post Office Box 750
Clarksburg, WV 26301

William Cipriani, Esquire
634 Charles Street
Wellsburg, WV 26070

Mr. Floyd R. Looker
Northern Regional Jail
R.D. #2, Box 1
Moundsville, WV 26041

                                    Gary B Zimmerman
                              _____
                              GARY B. ZIMMERMAN



U.S. DISTRICT COURT
FILED - WHEELING, WV

FEB 27 1997

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
     Plaintiff,  :  CRIMINAL ACTION
            :  NO. 1:96CR43-01
  v.         :
            :
JAMES R. ROGERS,    :
     Defendant.  :

## MOTION FOR RELIEF FROM PREJUDICIAL
## JOINDER AND MEMORANDUM OF LAW IN SUPPORT

   AND NOW, comes the defendant, JAMES R. ROGERS, by his
attorney, GARY B. ZIMMERMAN, and moves, pursuant to Rule 14 of
the Federal Rules of Criminal Procedure for a trial separate from
that of co-defendant, Floyd Raymond Looker.

   1. The defendant is charged in Count 1 of the Indictment
with conspiring with Floyd Raymond Looker.  Count 2 of the
Indictment charges the defendant with the substantive offense,
which is the object of the conspiracy charged in Count 1.  Looker
is charged in Count 3 with the substantive offense, which is the
object of the conspiracy.

   2. Floyd Raymond Looker is representing himself after
discharging two lawyers, who were appointed by the court.

   3. Co-defendant has filed or caused to be filed by a non-
lawyer, who resides in Arizona, a variety of motions requesting

69-2

certain types of discovery and a plea in abatement.

4.    It appears that co-defendant Looker intends to challenge the authority of the Government to function and in doing so may present a position or positions which are not based in the law and which may cause the jury to consider him and said positions ridiculous.

5.    The defendant submits that the defense of co-defendant Looker will prejudice the jury against him.

6.    The defendant submits that his defense is in direct conflict with the defense of Looker and the defenses are mutually exclusive.

7.    The co-defendant has three other cases involving the Mountain Militia, which may be Rule 404B evidence against Looker.

8.    These other matters would not be Rule 404B evidence against the defendant and he will be greatly prejudiced by the introduction of this evidence especially because this other evidence involves explosives.

9.    The defendant submits that he cannot receive a fair trial if he is forced to be tried with Looker.

<u>Memorandum of Law in Support</u>

10.  Rule 14 is a discretionary rule and provides the court with wide discretion to order separate trial or other appropriate relief.

11.   The defendant submits that the due process clause of the Fifth Amendment to the United States Constitution mandates a severance in this case.  The defendant recognizes that in most cases where a conspiracy is charged, it is judicially economical to try the co-conspirators together.  The defendant submits that this case is special in that regard.  It would be unfair to the defendant to subject him to the spill-over from the defense of Looker.

WHEREFORE, the defendant request that his trial be severed from that of co-defendant Looker.

Respectfully submitted,

Dated: 2-26-97

GARY B. ZIMMERMAN
Attorney for James R. Rogers
PA I.D. No. 10080
Suite 304
100 Ross Street
Pittsburgh, PA 15219
(412) 566-2133

3

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,           :      CRIMINAL ACTION
                    Plaintiff,      :      NO. 1:96CR43-01
                                    :
        v.                          :
                                    :
JAMES R. ROGERS,                    :
                    Defendant.      :

## CERTIFICATE OF SERVICE

On this 26th day of February, 1997, I hereby certify
that a true and correct copy of the foregoing MOTION FOR RELIEF
FROM PREJUDICIAL JOINDER AND MEMORANDUM OF LAW IN SUPPORT was
served by regular first class, United States mail, upon the
following counsel of record:

David E. Goodwin
Assistant U. S. Attorney
United States Attorney's Office
Federal Post Office Building
Post Office Box 750
Clarksburg, WV 26301

William Cipriani, Esquire
634 Charles Street
Wellsburg, WV 26070

Mr. Floyd R. Looker
Northern Regional Jail
R.D. #2, Box 1
Moundsville, WV 26041

_Gary B. Zimmerman_
GARY B. ZIMMERMAN

U.S. DISTRICT COURT
FILED AT WHEELING, WV

FEB 27 1997

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,           :    CRIMINAL ACTION
                Plaintiff,          :    NO. 1:96CR43-01
                                    :
        v.                          :
                                    :
JAMES R. ROGERS,                    :
                Defendant.          :

## DEFENDANT'S MOTION FOR DISCLOSURE
## OF IMPEACHING EVIDENCE AND MEMORANDUM OF LAW

Defendant, JAMES R. ROGERS, by and through undersigned counsel, moves this Honorable Court for an entry of Order directing the prosecution to disclose all impeachment material, including but not limited to:

(1)  All records and information revealing felony convictions, guilty verdicts, or juvenile adjudications or guilty verdicts attributed to any witness who may be called by the prosecution, including but not limited to relevant "rap sheets".

(2)  All records and information revealing prior misconduct or bad acts attributed to such witnesses.

(3)  All consideration or promises of consideration given to or for the benefit of such witnesses.  By "consideration", defendant refers to absolutely anything of value or use, including but not limited to criminal, civil or tax immunity grants, assistance or favorable treatment or recommendations with

69-3

1

respect to any criminal, civil, tax court, court of claims, administrative or other legal dispute with the prosecution or any other governmental agency, state or federal; payments of money or fees, witness fees and special witness fees, provision of food, clothing, shelter, transportation or other like benefits, placement in a "witness protection program", limitation or waiver of forfeitures, and anything else which could arguably reveal an interest or bias in the witness in favor of the prosecution or against the defense or act as an inducement to testify or to color testimony.

(4)  All criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against the witness, any probationary, parole or deferred prosecution status of the witness, and any civil, tax court, court of claims, administrative or other pending or potential legal disputes or transactions with the prosecution or any other governmental agency, state or federal.

(5)  The existence and identification of each occasion on which the witness has testified before any court, grand jury, or other tribunal or body in relation to the defendant or otherwise bearing upon the facts of this case.

(6)  The existence and identification or each occasion on which each witness who is an informer, accomplice, co-conspirator or expert has testified before any court, grand jury or other tribunal or body.

2

(7)   All personnel files for the witnesses and the existence and identity of all prosecutorial files for the witnesses.  Specifically, defendant requests any information in the personnel or informant files of any prosecution witnesses, including agents, officers, or informers who will testify at trial, relating to the witnesses' character, including but not limited to any defect in the witnesses' capacity to tell the truth.  This request specifically includes any history of psychiatric treatment or observation for mental, emotional, or drug and alcohol problems.

(8)   The same records and information requested in items 1 through 7 above with respect to each non-witness declarant whose statements are to be offered in evidence.

(9)   All other records or information which could arguably be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecution's evidence or which could arguably lead to such records or information; and would show:

In *Brady v. Maryland,* 373 US 83 (1963), the defendant was convicted of first degree murder and sentenced to death. Prior to trial, his attorney had requested the prosecution to allow him to examine extra-judicial statements made by defendant's co-conspirator.  Several such statements were shown to defense counsel, but one in which the co-conspirator admitted the actual killing was withheld by the prosecution and did not

3

come to defendant's notice until after he had been tried, convicted and sentenced.  In a post-conviction proceeding, the Maryland Court of Appeals held that suppression of this evidence denied defendant due process of law.  The United States Supreme Court affirmed, ruling that suppression by the prosecution of evidence favorable to a defendant who requested it violates due process if the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution.

*Brady* was the easy case.  Unfortunately, its doctrine has burdened courts with the necessarily prolix and speculative chore of guessing, after the fact, whether this or that piece of evidence would have been material, would have been favorable, and was within the scope of defendant's pretrial request.  The problems inherent in this act of judicial speculation have been met with, and largely complicated by, further theoretical refinements.  See, e.g., *United States v. Agurs,* 427 US 97 (1986); *United States v. Bagley,* 473 US 667 (1985).  But the fundamental rule of *Brady* remains:  the failure of the prosecution to identify impeaching evidence in response to a request for such evidence is a denial of due process.  And common experience in applying that rule has added one common sense corollary to it:  the more explicit and comprehensive the trial court's order directing the prosecution to supply impeaching material, the greater the likelihood that trial objections, trial delays, and appellate issues will be minimized or even eliminated.  Thus the granting of this motion accords with

judicial efficiency and economy as much as it preserves defendant's fair trial rights.

Courts in virtually all American jurisdictions have recognized that *Brady* issues can be avoided on appeal by prompt and express action on the part of the trial court, see, e.g., *United States v. Schwimmer*, 649 F.Supp. 544, 549 fn. 5 (E.D.N.Y. 1986) (if prosecution is unsure whether evidence constitutes *Brady* material, it should seek court's guidance); and that orders granting requests for disclosure of impeachment material should be sufficiently broad in scope to protect the due process concerns addressed by *Brady*, see, e.g., *People v. Memro*, 700 P.2d 446 (Cal. 1985) (accused is entitled to any pre-trial knowledge of any unprivileged evidence, or information that might lead to the discovery of evidence, if it appears reasonable that such knowledge will assist him in preparing his defense). For the general proposition that impeaching evidence is properly subject to early pre-trial disclosure, see *Brown v. Wainwright*, 785 F.2d 1457 (11th Cir. 1986); *Bowen v. Maynard*, 799 F.2d 593 (10th Cir. 1986) cert. denied 107 S.Ct. 458; *United States v. O'Neill*, 767 F.2d 780 (11th Cir. 1985); *United States v. Drougas*, 748 F.2d 8 (1st Cir. 1984); *Carman v. State*, 604 P.2d 1076, appeal after remand 658 P.2d 131 (Alaska 1979); *People v. Morris*, 756 P.2d 843 (Cal. 1988); *People v. Terry*, 720 P.2d 125 (Col. 1986). Courts have insisted on the discoverability of impeaching material as diverse as the results of lie detector tests of prosecution witnesses, *Carter v. Rafferty*, 826 F.2d 1299 (3rd Cir. 1987)

*cert.* denied 108 S.Ct. 711, and money provided to state's witnesses for car payments, *State v. Lukezic,* 691 P.2d 1088 (Ariz. 1984).

WHEREFORE, Defendant Rogers respectfully prays that this Honorable Court enter its Order granting the within motion for disclosure of impeaching evidence; and granting such other and further relief as to this Honorable Court may seem just.

Respectfully submitted,

Dated: 2-26-97

GARY B. ZIMMERMAN
Attorney for Defendant
PA I.D. No. 10080
Suite 304
100 Ross Street
Pittsburgh, Pennsylvania 15219
(412) 566-2133

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,　　　　　:　CRIMINAL ACTION
　　　　　　　　Plaintiff,　　　　　　:　NO. 1:96CR43-01
　　　　　　　　　　　　　　　　　　:
　　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
JAMES R. ROGERS,　　　　　　　　　:
　　　　　　　　Defendant.　　　　　:

## CERTIFICATE OF SERVICE

On this __26th__ day of February, 1997, I hereby certify
that a true and correct copy of the foregoing DEFENDANT'S MOTION
FOR DISCLOSURE OF IMPEACHING EVIDENCE was served by regular first
class, United States mail, upon the following counsel of record:

David E. Goodwin
Assistant U. S. Attorney
United States Attorney's Office
Federal Post Office Building
Post Office Box 750
Clarksburg, WV 26301

William Cipriani, Esquire
634 Charles Street
Wellsburg, WV 26070

Mr. Floyd R. Looker
Northern Regional Jail
R.D. #2, Box 1
Moundsville, WV 26041

GARY B. ZIMMERMAN



U.S. DISTRICT COURT
FILED AT WHEELING, WV

FEB 27 1997

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
           Plaintiff,

    v.

JAMES R. ROGERS,
           Defendant.

:    CRIMINAL ACTION
:    NO. 1:96CR43-01
:
:
:
:
:
:

## DEFENDANT'S MOTION TO PERMIT VOIR DIRE
## BY DEFENSE COUNSEL AND MEMORANDUM OF LAW

Defendant, JAMES R. ROGERS, by and through undersigned counsel and pursuant to Rule 24, Fed.R.Cr.P., moves this Honorable Court to permit jury selection to be conducted, at least in part, by defense counsel; and would show:

We begin by recognizing that, although this Court is authorized to permit attorney-conducted voir dire, it is not required to do so.  But cf. Gutman, "The Attorney-Conducted Voir Dire of Jurors:  A Constitutional Right", 39 Brooklyn L.Rev. 290 (1972).  Rather, this Motion is directed to the Court's discretion, which discretion itself is subject to the essential demands of fairness, Aldridge v. United States, 283 US 308 (1931).

Nevertheless, courts and commentators have long stressed the importance of voir dire questioning in obtaining a fair and impartial jury.  See, e.g., Swain v. Alabama, 380 US

1

202, 218-20 (1965); <u>United States v. Dellinger</u>, 472 F.2d 340, 366-76 (7th Cir. 1972), <u>cert</u>. denied 410 US 970 (1973); <u>United States v. Shavers</u>, 615 F.2d 266, 268 (5th Cir. 1980); <u>Bailey v. United States</u>, 53 F.2d 982, 983-4 (5th Cir. 1931); see generally 5 Wigmore, <u>Evidence</u>, Section 1367 (3rd Ed. 1940); Babcock, "Voir Dire: Preserving Its Wonderful Power", 27 Stanford L.Rev. 545 (1975). The essential function of <u>voir dire</u> is "to enable counsel to gather sufficient information to make well-informed judgments about jurors whose biases may interfere with a fair consideration of the evidence." Fahringer, "In the Valley of the Blind: A Primer on Jury Selection in a Criminal Case", 43 L. & Contemp. Probs. 116, 120 (1980). "If this right [to an impartial jury] is not to be an empty one, the defendants must, upon request, be permitted sufficient inquiry into the background and attitudes of the jurors to enable them to exercise intelligently their preemptory challenges...". <u>United States v. Dellinger</u>, <u>supra</u>, at 368. The preemptory challenge "should not be required to be exercised before an opportunity is given for such inspection and examination of prospective jurors as is reasonably necessary to enable the accused to have some information upon which to base an exercise of that right." <u>Bailey v. United States</u>, <u>supra</u>, at 984. The "right to be tried by an impartial jury" includes "the right to an examination designed to ascertain possible prejudices of the veniremen", <u>United States v. Lewin</u>, 467 F.2d 1132, 1138 (7th Cir. 1982). In <u>United States v. Ible</u>, 630 F.2d 389, (5th Cir. 1980), the defendant was arrested

following his distribution of a number of counterfeit twenty-dollar bills.  It was indicated to counsel that alcohol might become an issue at trial.  During voir dire, the defendant sought to question the jurors on whether they had any moral or religious beliefs about the use of alcohol that would make it difficult for them to be fair and impartial should the issue arise.  The trial court prohibited this line of questioning.  On appeal, the Fifth Circuit Court wrote:

> The federal practice of almost exclusive voir dire examination by the Court does not take into account the fact that it is the parties rather than the Court who have the full grasp of the nuances and the strengths and weaknesses of the case.  Peremptory challenges are worthless if trial counsel is not afforded an opportunity to gain the necessary information upon which to base such strikes".  (Citations omitted).  Therefore questioning by the Court must overall, coupled with its charge to the jury, afford a party the protection it seeks.  (Citations omitted).  Experience indicates that "in the majority of situations, questioning by counsel would be more likely to fulfill this need then exclusive examination in general terms by the trial court".

Id. at 395.

Defendant Rogers is prepared to identify, at an ex parte hearing on this motion, the particular subject matter areas as to which he requests attorney-conducted voir dire; and the factual and legal circumstances that make it imperative that such voir dire be conducted by defense counsel and not by this Court.

WHEREFORE, Defendant Rogers respectfully prays that this Honorable Court enter its Order permitting jury selection to be conducted, at least in part, by defense counsel; granting him

a hearing on the instant motion; and granting such other and
further relief as to this Honorable Court may seem just.

Respectfully submitted,

Dated: _2-26-97_

GARY B. ZIMMERMAN
PA I.D. No. 10080

Suite 304
100 Ross Street
Pittsburgh, PA 15219
(412) 566-2133

4

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
            Plaintiff,

    v.

JAMES R. ROGERS,
            Defendant.

:   CRIMINAL ACTION
:   NO. 1:96CR43-01
:
:
:
:
:

## CERTIFICATE OF SERVICE

On this 26th day of February, 1997, I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MOTION TO PERMIT VOIR DIRE BY DEFENSE COUNSEL was served by regular first class, United States mail, upon the following counsel of record:

David E. Goodwin
Assistant U. S. Attorney
United States Attorney's Office
Federal Post Office Building
Post Office Box 750
Clarksburg, WV 26301

William Cipriani, Esquire
634 Charles Street
Wellsburg, WV 26070

Mr. Floyd R. Looker
Northern Regional Jail
R.D. #2, Box 1
Moundsville, WV 26041

GARY B. ZIMMERMAN

U.S. DISTRICT COURT
FILED AT WHEELING, WV

FEB 27 1997

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,     :     CRIMINAL ACTION
                Plaintiff,    :     NO. 1:96CR43-01
                              :
        v.                    :
                              :
JAMES R. ROGERS,              :
                Defendant.    :

## APPLICATION FOR A WRIT OF
## HABEAS CORPUS AND MOTION TO DISMISS THE
## INDICTMENT WITH A MEMORANDUM OF LAW IN SUPPORT

AND NOW, comes the defendant, JAMES R. ROGERS, by his attorney, GARY B. ZIMMERMAN, and moves that the Indictment be dismissed as the Act of Congress upon which it is based is so vague that it violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

1. The defendant is charged in Count 1 of the Indictment with violating 18 U.S.C. 371 alleging that he conspired with Floyd Raymond Looker wherein the object of the conspiracy was a violation of 18 U.S.C. 2339A (providing material support and resources with the knowledge and intent that the material support and resources so provided would be used in preparation for committing an injury to the property of a department or agency of the United States).

69-5                              1

2.   The defendant is charged in Count 2 of the Indictment with the violation of 18 U.S.C. 2339A as set forth above.

3.   18 U.S.C. 2339A provides:

    (a)   DEFINITION --  In this section, the term "material support or resources" means currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communication equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets except medicine or religious materials.

    (b)   OFFENSE --  Whoever, within the United States, provides material support or resources or conceals or disguises the nature, location, source of material support or resources, knowing or intending that they are to be used in the preparation for, or in carrying out, a violation of Section, 32, 37, 81, 175, 351, 831, 842 (m) or (n), 844 (f) or (i), 956, 1114, 1116, 1203, 1361, 1362, 1263, 1366, 1751, 2155, 2156, 2280, 2281, 2332, 2332 (a) or (b) or 2340A of this title or Section 46502 of Title 49 or in preparation for or in carrying out, the concealment from the

2

commission of any such violations, shall be fined under this title, imprisoned not more than 10 years, or both.

(c)   INVESTIGATIONS  --   (1) In General within the United States, an investigation may be initiated or conducted under this section only when facts reasonably indicate that:

(A)   In the case of an individual, the individual knowingly or intentionally engages, has engaged, or is about to engage in the violation of this or any other federal criminal law; and

(B)   In the case of a group of individuals, group knowingly or intentionally engages or has engaged, or is about to engage in the violation of this or any other federal criminal law.

(2)  Activities protected by the First Amendment. An investigation may not be initiated or continued under this section based on activities protected by the First Amendment to the United States Constitution including expressions of support or the provision of financial support for the non-violent, political, religious, philosophical or ideological goals or beliefs of any person or group.

4.   The defendant is alleged to have transferred photographs of some of the construction plans of the FBI/CJIS facility to Floyd Raymond Looker in preparation to damage said facility.

5. The definition of material support or resources in 18 U.S.C. 2339(a) is specific and definitive with the exception of the catch-all. . .other physical assets.

6. The photographs in question in this case do not fall into the category of any of the specifically enumerated definitions in the statute other than the catch-all. . .other physical assets.

7. The Government announced at the preliminary examination and detention hearing that their theory of the case is that the photographs are other physical assets.

8. The defendant submits that the phrase "other physical assets" is so vague and overbroad that it is violative of the Due Process Clause of the Fifth Amendment to the United States Constitution.

9. The defendant submits that the phrase "other physical assets" is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application; thereby, rendering it violative of Due Process.

10. The defendant submits that the phrase "other physical assets" must be stricken from the statute because of its vagueness and overbreadth and when that is accomplished the photographs do not fall into any of the remaining definitions in the statute.

4

## Memorandum of Law

11.   *Wharton's Criminal Law*, 15th Edition, Section 11, succinctly states the law of the United States concerning the definitiveness of statutes and their constitutionality, as follows:

> . . . a statute defining an offense is void on the ground of "vagueness" and violative of due process when the conduct prohibited or commanded is expressed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Coates v. Cincinnati*, 402 U.S. 611 (1971); *Grayned v. Rockford*, 408 U.S. 104 (1972). Moreover, from the standpoint of administration, indefiniteness in expression fosters arbitrariness and discrimination in enforcement. A statute may also be struck down on the ground of "overbreadth," i.e., it offends the constitutional principle that a governmental purpose to control or prevent activities subject to state regulation may not be achieved by means which sweep so broadly as to invade the area of protected freedoms. *Broadrick v. Oklahoma*, 413 U.S. 601 (1973).

The defendant submits that 18 U.S.C. 2339A's definition of other physical assets violated both the vagueness and overbreadth tests as required by due process. How is a reasonable person to know what he/she cannot furnish to a political group. The only answer one could give after reviewing the statute would be nothing whatsoever and; more importantly, not even something that is totally in the public domain. For example, would written material from a public library be considered "other physical assets" as defined by the statute? Would a photograph of the

Capital Building in Washington, D.C. be "other physical assets?" Would a reproduced article from a public library, which gave instructions on how to build a bomb, be "other physical assets?" The list could go on and on and using the statute as guidance, no one can be sure what "other physical assets" are or are not.

The defendant submits that this statute is violative of due process as long as the phrase "other physical assets" is part and parcel of the definitions and can be used to formulate a criminal sanction against him.

The defendant further submits that if the phrase "other physical asset" is removed from the statute, the Indictment should be dismissed.

WHEREFORE, the defendant requests this Court issue a Writ of Habeas Corpus; dismiss the Indictment and release the defendant.

Respectfully submitted,

Dated: 2-26-97

GARY B. ZIMMERMAN
Attorney for James R. Rogers
PA I.D. No. 10080
Suite 304
100 Ross Street
Pittsburgh, PA 15219
(412) 566-2133

6

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,                :    CRIMINAL ACTION
                    Plaintiff,           :    NO. 1:96CR43-01
                                         :
        v.                               :
                                         :
JAMES R. ROGERS,                         :
                    Defendant.           :

## CERTIFICATE OF SERVICE

On this _26th_ day of February, 1997, I hereby certify
that a true and correct copy of the foregoing APPLICATION FOR A
WRIT OF HABEAS CORPUS AND MOTION TO DISMISS THE INDICTMENT WITH A
MEMORANDUM OF LAW IN SUPPORT was served by regular first class,
United States mail, upon the following counsel of record:

David E. Goodwin
Assistant U. S. Attorney
United States Attorney's Office
Federal Post Office Building
Post Office Box 750
Clarksburg, WV 26301

William Cipriani, Esquire
634 Charles Street
Wellsburg, WV 26070

Mr. Floyd R. Looker
Northern Regional Jail
R.D. #2, Box 1
Moundsville, WV 26041

GARY B. ZIMMERMAN