IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
          Plaintiff,

v.                             Case No. 1:96CR43-02

JAMES R. ROGERS, A/K/A "RICH",
          Defendant.

### GOVERNMENT'S RESPONSE TO DEFENDANT'S VARIOUS PRETRIAL MOTIONS

Now comes the United States of America and William D. Wilmoth, United States Attorney for the Northern District of West Virginia, by David E. Godwin, First Assistant United States Attorney, and responds to the defendant's various pretrial motions by stating the following:

I. <u>Motion to Suppress Physical Evidence</u>:

    1. The search of the defendant's locker and bag was conducted without a warrant. Prior to the search, the officers obtained the voluntary consent of the defendant. Whether voluntary consent to search has been given in fact is a question for the Court. <u>United States v. Scott</u>, 578 F.2d 1186 (6th Cir.) <u>cert</u>. <u>denied</u>, 439 U.S. 870 (1978). In making this determination, the Court must examine the totality of the circumstances. <u>United States v. Mendenhall</u>, 446 U.S. 544 (1980).

    2. An evidentiary hearing is needed for this issue. At a hearing of this matter, the United States expects to prove that the officers acted properly and that the search and the scope of the



search are not flawed as alleged by the defendant in his motion.

3. The Supreme Court has identified factors relevant in assessing the voluntariness of consent including; the age of the person, his education and intelligence, his mental and physical condition at the time, whether he is under arrest, the length and nature of other interrogation, and whether he has been advised of his right to refuse to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). However, no single factor will determine the voluntariness of consent.

4. Consent obtained after a person has been arrested and placed in custody can be voluntary. United States v. Watson, 423 U.S. 411 (1976). Consent can be given voluntarily even though Miranda warnings have not been given. United States v. Tobin, 576 F.2d 687 (5th Cir.) cert. denied, 439 U.S. 1051 (1978). Refusal to sign a written consent form "does not act as effective withdrawal of the prior oral consent." United States v. Lattimore, 87 F.3d 647, 651-52 (4th Cir. 1996).

5. Casual conversation or statements by agents which are not designed to elicit an incriminating response are not "interrogation" for Miranda purposes. United States v. Payne, 954 F.2d 199 (4th Cir.) cert. denied, 112 S.Ct. 1680 (1992). Officers have a right to identify relevant aspects of an arrest scene such as the presence of weapons. Questions related to this safety issue are not subject to Miranda warnings. New York v. Quarles, 467 U.S. 649 (1984).

6. The United States' evidence will establish with clear and positive proof that the defendant gave voluntary consent to search his locker and bag and that the consent was not limited or qualified.

7. The search warrant for the defendant's residence is not defective. The Court is obliged to give great deference to the judgment of the issuing judicial officer. In lieu of making the

determination anew, the reviewing Court should determine whether there was a substantial basis for the probable cause determination.

8. "Probable cause to search a residence exits when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place' Illinois v. Gates, 462 U.S. at 238, 103 S.Ct at 2332, '[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation.' United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982). [E]vidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence.' United States v. Maestas, 546 F.2d 1177, 1180 (5th Cir. 1977), citing United States v. Lucary, 430 F.2d 1051 (9th Cir. 1970); United States v. Rahn, 571 F.2d 290 (10th Cir.) cert. denied, 423 U.S. 825, 96 S.Ct 41, 46 L.Ed. 2042 (1975); quoted from United States v. Jenkins, 901 F.2d 1075, 1080-81 (4th Cir. 1990).

9. In the Jenkins case, the affidavit established that there was probable cause to believe that Jenkins had committed a theft from a bank and that the contraband being sought was capable of being hidden in a residence and the affidavit contained the statement from an experienced officer that people who steal money are most likely to take it to their homes for safekeeping. The search was held to be valid.

10. Probable cause does not require personal observation or affirmative proof. It requires that, considering all of the facts and circumstances presented to the magistrate, the place to be searched is a reasonable place to search. In Illinois v. Gates, supra, the Supreme Court at pages 238-39 explained:

> "The task of the issuing magistrate is simply to make a practical, common sense

3

decision whether given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, that there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing magistrate is simply to ensure that the magistrate had a substantial basis for concluding the probable cause existed.

11. In United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988), the Court of Appeals established that, in the Fourth Circuit, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." In the Anderson case, the Fourth Circuit found no defect in a search warrant for Anderson's house to locate a gun and silencer even though there were no facts or conclusions in the affidavit that the gun and silencer were located in Anderson's residence.

12. In the case of United States v. McCall, 740 F.2d 1331 (4th Cir. 1984), the Fourth Circuit considered this issue of staleness. In that case, the Court found that information that the defendant had possessed a certain government owned revolver nine months before the search was not too stale to support the search of his house. The Court states at page 1336:

> "This question [staleness] is not resolved by reference to pat formulas or simple rules. '[T]he vitality of probable cause cannot be qualified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.' United States v. Johnson, 461 F.2d 285, 287 (10th Cir. 1972). Rather, we must look to all the facts and circumstances of the case, including he nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized."

13. In this case, the issuing Magistrate Judge had issued the arrest warrant for the defendant for a continuing conspiracy. He had been provided with facts that establish a reason to believe that the defendant had secreted a copy of the photographs to keep for himself. A camera

and photographs are objects that are commonly possessed in one's home. Under all of the facts and circumstances of the case, the information provided to the Magistrate Judge was a substantial basis for a finding of probable cause.

14. The defendant's assertion that the officer should have known that the warrant was invalid; and accordingly, that the good faith exception of Leon is not available in this case is merely a conclusory assertion which has no support. The defendant has failed to identify a flaw in the search and seizure of property at his residence under this search warrant. (See, United States v. Anderson, supra at page 729 - the Fourth Circuit rendered its opinion in Anderson for the express purpose of avoiding this sort of allegation of bad faith).

Wherefore, the motion should be denied without a hearing as to the search of the residence and the Court should conduct an evidentiary hearing on the consent search.

II. Motion for Relief from Prejudicial Joinder:

1. The United States does not object to the defendant's motion.

III. Application for a Writ of Habeas and Motion to Dismiss the Indictment:

1. The defendant claims that Title 18, United States Code, §2339A is constitutionally defective for the reason that the term "other physical assets" is too vague to put citizens on notice of what acts are prohibited by the statute.

2. First it would be useful to briefly clarify the legislative history of §2339A and the amendment of the statute.

3. At the commencement of the conspiracy alleged in Count One, "in or about the month of June, 1995," and at the time of the substantive offense alleged against the defendant Rogers, "February 18, 1996," the statute provided the following:

5

§2339A. Providing material support to terrorists

**(a) Definition.**--In this section, "material support or resources" means currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, but does not include humanitarian assistance to persons not directly involved in such violations.

**(b) Offense.**--A person who, within the United States, provides material support or resources of conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carrying out, a violation of section 32, 36, 351, 844(f) or (I), 1114, 1116, 1203, 1361, 1363, 1751, 2280, 2281, 231, or 2339 of this title or section 46502 of title 49, or in preparation for or carrying out the concealment of an escape from the commission of any such violation, shall be fined under this title, imprisoned not more than 10 years, or both.

**(c) Investigations.**

**(1) In general.**--Within the United States, an investigation may be initiated or continued under this section only when facts reasonably indicate that--

**(A)** in the case of an individual, the individual knowingly or intentionally engages, has engaged, or is about to engage in the violation of this or any other Federal criminal law; and

**(B)** in the case of a group of individuals, the group knowingly or intentionally engages, has engaged, or is about to engage in the violation of this or any other Federal criminal law.

**(2) Activities protected by the First Amendment.**--An investigation may not be initiated or continued under this section based on activities protected by the First Amendment to the Constitution, including expressions of support or the provision of financial support for the nonviolent political, religious, philosophical, or ideological goals or beliefs of any person or group.

    4. Effective April 24, 1996, the statute was amended. Accordingly, during the last four and one half months of the conspiracy and at the time of the substantive offense charged against the defendant, Floyd Raymond Looker in Count Three, the statute was different and provided:

6

§2339A. Providing material support to terrorists

**(a) Offense.**--Whoever, within the United States, provides material support or resources or conceals or disguises the nature, location, source, or ownership of material support or resources, knowing or intending that they are to be used in preparation for, or in carry out, a violation of section 32, 37, 81, 175, 351, 831, 842(m) or (n), 844(f) or (I), 930(c), 956, 1114, 1116, 1203, 1361, 1362, 1363, 1366, 1751, 1992, 2155, 2156, 2280, 2281, 2332, 2332a, 2332b, 2332c, or 2340A of this title or section 46502 of title 49, or in preparation for, or in carrying out, the concealment or an escape from the commission of any such violation, shall be fined under this title, imprisoned not more than 10 years, or both.

**(b) Definition.**--In this section, the term "material support or resources" means currency or other financial securities, financial services, lodging, training, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel, transportation, and other physical assets, except medicine or religious materials.

5. The original statute, recited in paragraph 3 above, became effective on September 13, 1994. The amendment, which became effective on April 24, 1996, redesignated subsection (b) as subsection (a) and added references to code sections 37, 81, 175, 831, 842(m) or (n), 956, 1362, 1366, 2155, 2156, 2332, 232a, 2332b, 2340A and struck out reference to sections 36, 2331, and 2339 of Title 18. Subsection (a) of the original statute was redesignated as subsection (b) and the language of the last phrase which excepts certain "physical assets" was changed from "does not include humanitarian assistance to persons not directly involved in such violations" to "except medicine or religious materials." Additional amendments were made to the statute effective October 11, 1996, none of which are of any significance to this case.

6. The United States Supreme Court stated in <u>Connally v. General Const. Co.</u>, 269 U.S. 385, 391 (1926):

"That the terms of a penal statute creating a new offense must be sufficiently

explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or acquires the doing of an act in term so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. [citations omitted]"

7. The language of this new statute, Title 18, United States Code, §2339A, is plain, clear and without ambiguity. The act that is prohibited is *providing* "material support and resources" *with an intention* that the provided material will be *used in preparation* for committing one of the enumerated offenses. The definition of "material support and resources" specifies certain things, some of which are not be physical in their nature; for example, training (information and action), financial services (action), lodging (right to stay is not physical), personnel (human), and transportation (mixture of physical assets and action). The statute then provides that any physical asset is included in the definition with the express exception of "humanitarian assistance" under the first version and "medicine or religious materials" under the present statute.

8. That the photographs of blueprints in this case are "other physical assets" within this definition is clear and without ambiguity. The photographs are "physical" and they are not "humanitarian assistance", or "medicine" or "religious materials." With the exception of the humanitarian/medicine/religious materials provision, any "thing" can be the subject matter of this crime whether it be obtained at the public library or stolen from a government vault.

9. The defendant's argument is misdirected. The gravamen of the offense is not the nature of the thing provided; it is the intent of the provider. This crime is defined by what the person providing the physical thing to another intended would be done with the thing. If the provision of a physical thing is for the purpose of or with the intent that it be used in preparing for

or committing one of the enumerated crimes, then the offense has been committed.

10. The lack of vagueness or ambiguity can be demonstrated by the ease with which the rhetorical questions contained in the defendant's memorandum can be answered. A reasonable person can give anything he or she wants to give to "a political group" so long as the thing is not intended to be used to commit a crime, such as damaging government property. A photograph of the Capitol Building in Washington could be "material support and resources" if it is provided to another with the intention that it be used in preparation for the commission of one of the enumerated crimes.

11. The "physical asset" doesn't define the crime; the intention of the provider defines the crime. The statute states this in clear, unambiguous language. Therefore, the statute provides adequate notice of the prohibited act.

12. The defendant's motion is without merit and should be denied.

IV. Motion For Disclosure of Impeaching Evidence:

1. The United States will comply with the Court's Scheduling Order and provide Giglio material on or before July 11, 1997.

V. Motion to Permit Voir Dire by Defense Counsel:

1. The trial court has broad discretion to control the scope and manner of voir dire examination, but the "exercise of that discretion is limited by the 'essential demands of fairness.'" United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977) (quoting Aldridge v. United States, 238 U.S. 308, 310 (1931); United States v. Duncan, 598 F.2d 839 (4th Cir.) cert. denied, 444 U.S. 871 (1979).

2. The essential function of voir dire is to allow impanelling of a fair and impartial jury

through questions that permit intelligent exercise of challenges by counsel. <u>Rucker</u>, <u>supra</u> at 1048-49.

3. The public has a right to be present during voir dire. <u>Press-Enterprise Co. v. Superior Court</u>, 104 S. Ct. 819 (1984); <u>Richmond Newspaper, Inc. v. Virginia</u>, 448 U.S. 555 (1980).

4. The government requests that the Court conduct voir dire of the prospective jurors believing that fairness in the jury selection process is enhanced by such procedure. The government has no objection to the Court asking questions of the prospective jurors which are proposed to the Court by the parties in writing and approved by the Court as properly inquiring into the qualification of prospective jurors.

          Respectfully submitted,

          United States of America

          William D. Wilmoth
          United States Attorney

By: _/s/ David E. Godwin_
     David E. Godwin
     First Assistant U. S. Attorney

## CERTIFICATE OF SERVICE

I, David E. Godwin, First Assistant United States Attorney for the Northern District of West Virginia, do hereby certify that a copy of the foregoing GOVERNMENT'S RESPONSE TO DEFENDANT'S VARIOUS PRETRIAL MOTIONS was placed in the United States Mail, postage prepaid, addressed to Gary B. Zimmerman, counsel for James R. Rogers, Suite 304, 100 Ross Street, Pittsburgh, Pennsylvania 15219, Floyd Raymond Looker, defendant pro se, Northern Regional Jail, RD #2, Box 1, Moundsville, West Virginia 26041, and William Cipriani, standby counsel for Floyd Raymond Looker, 634 Charles Street, Wellsburg, West Virginia 26070.

Dated: April 1, 1997

*David E. Godwin* (signature)
David E. Godwin
First United States Attorney
Post Office Box 750
Clarksburg, West Virginia 26302-0750