IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

U.S. DISTRICT COURT
FILED AT WHEELING, WV

MAY 14 1997

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.    Criminal Action No. 1:96CR43-02

JAMES R. ROGERS,

    Defendant.

<u>ORDER</u>

On April 14, 1997, came the United States of America by David Godwin, Assistant United States Attorney, and the Defendant, James R. Rogers, in person and by Gary Zimmerman, his counsel, for a hearing on pretrial motions.

I. <u>Introduction</u>

A. <u>Background</u>. Defendant is one of two defendants in a three-count indictment charging in Count One a conspiracy to violate Title 18 U.S.C. § 371 (conspiring to commit an offense against the United States) and in Counts Two and Three, violation of Title 18 U.S.C. § 2339(A) (providing material support to terrorists). Defendant Rogers is only charged in Counts One and Two.

B. <u>Motions</u>.

    1. Defendant's Motion to Suppress Physical Evidence (Docket #69-1)

    2. Defendant's Motion for Relief from Prejudicial Joinder (Docket #69-2)

    3. Defendant's Motion for Disclosure of Impeaching Evidence (Docket #69-3)



4. Defendant's Motion to Permit Voir Dire by Defense Counsel (Docket #69-4)

5. Defendant's Motion to Dismiss Indictment (Docket #69-5)

6. Motion by the United States to Produce Handwriting Exemplars (Docket #74)

7. Defendant's Amended Motion to Suppress (Docket #79)

C. <u>Decision or Recommendation</u>.

1. It is recommended the motion to suppress the items seized when the Defendant Rogers was arrested at the Clarksburg firehouse be denied because he consented to the search. No evidentiary hearing is granted on Defendant's motion to suppress the items seized from the Defendant's residence pursuant to the search warrant because he has not made a substantial preliminary showing of omission of an intentionally or recklessly withheld statement and it is recommended the motion be denied because the alleged information omitted was not essential to the determination of probable cause.

2. The motion for relief from prejudicial joinder is denied because Co-defendant Looker is no longer representing himself and it is Defendant's plan to introduce potential evidence prejudicial to himself, not the government's plan.

3. Defendant's motion for disclosure of impeaching evidence is denied as moot.

4. Defendant's motion to permit voir dire by defense counsel is denied because it is less likely to obtain a fair and impartial jury.

5. It is recommended the motion to dismiss the indictment be denied because a person who wanted to obey the law could understand the offense prohibited by 18 U.S.C. § 2339(A).

6. It is recommended the motion to produce handwriting exemplars be granted because taking of handwriting exemplars does not violate Defendant's Fifth Amendment right against self-incrimination.

7. It is recommended the amended motion to suppress physical evidence be denied for the reasons stated in denying the motion to suppress above.

## II. Facts

The only testimony taken was in relation to the motion to suppress the items seized from the Defendant when he was arrested at the Clarksburg fire department station October 11, 1996. Testimony was taken from FBI Agents Robert G. Koehler, Dan Richard, William C. Mearns and Paul H. Wilson for the government and the Defendant James R. Rogers for the Defendant. Three exhibits were admitted. Exhibit I was an advice or rights, Exhibit II was a consent to search form and Exhibit III was a list of the items seized from the Defendant when he was arrested.

About 6:45 a.m. October 11, 1996, six or seven law enforcement officers entered a Clarksburg fire department station with a warrant for the arrest of the Defendant, James R. Rogers. All were in street clothes except one uniformed West Virginia State Policeman. The officers proceeded upstairs to the bunkroom, led by Special Agent Koehler, who was in charge of the arrest team. Koehler entered the bunkroom, turned the light on and inquired of the person he saw in the first bunk where he might find the Defendant Rogers. The person in the bunk responded that he was Rogers. The Defendant got out of bed, went into the squad room, dressed and sat at a table. The squad room contains lockers, tables and chairs and a television. Apparently it is used as an all purpose room for the fire station. According to the law enforcement officers, the Defendant was told there was a warrant for his arrest; a copy of the warrant was given to him and his <u>Miranda</u> rights were read to him. The Defendant was asked if he had any personal property on the premises and the Defendant pointed to his locker, which was locker number 15. There was a black duffel bag at the foot of the locker and the Defendant gave his consent to search the duffel bag and the locker. The Defendant refused to sign a written consent to search, but did give his oral consent both before and after he refused to sign a written consent. Agent Koehler searched the locker and seized certain items, while Agent Mearns searched the duffel bag and seized certain items. Agent Richard listed the items seized from the two separate places.

4

Defendant's version of the events is very similar, except that he says that he only consented to the search of his locker and duffel bag for photographs and no other items. He further testified that he was not told that he was under arrest or read his Miranda rights until after the search was completed and just prior to being taken to an automobile for transportation to an initial appearance. Defendant is an intelligent, articulate, middle-aged man who has never been arrested or convicted of any offense. Defendant expressed several times that he did not know why he was being arrested.

### III. Motions to Suppress Physical Evidence and Amended Motion to Suppress

#### Search One: The Search at the Firehouse

A. Contentions of the Parties. Defendant contends the items seized at the firehouse must be suppressed because he only consented to a search for photographs, was not told he was under arrest nor read his Miranda rights until after the arrest.

The government contends he consented to the search after being told he was under arrest, was read his Miranda rights and consented to the search.

B. The Standards. A search conducted pursuant to a valid consent is an exception to the Fourth Amendment's requirement of a warrant. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Whether the alleged consent is valid is to be determined from the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544 (1980).

C. Discussion. This Defendant is intelligent, articulate

5

and mature. He could understand anything said to him and was completely alert and awake immediately after rising from his bunk because of his training as a fireman. He knew what was going on. He never objected to their seizing items outside the scope of what he claims was a limited scope search. The agents' testimony was open, honest and not inconsistent. The government clearly met its burden of establishing that the Defendant made a knowing and voluntary valid consent to search.

D. <u>Recommendation</u>. For the foregoing reasons, it is recommended the items seized in the firehouse search <u>not</u> be suppressed.

<u>Search Two: The Search of Defendant's Residence</u>

A. <u>Contentions of the Parties</u>. Defendant contends the items seized pursuant to a warrant issued by Magistrate Judge Core be suppressed because the affiant, Special Agent Rafferty, deliberately omitted or recklessly failed to include in the affidavit the facts that in a March 7, 1996 video tape, which the government had in its possession, Defendant Rogers stated he did not take the photographs (of blueprints) and they were not taken at his request. Defendant further claims omission of this fact removes any reason to search for a camera and removes any probable cause for the search warrant, all of which entitles Defendant to a <u>Franks</u> hearing.

The government contends there was probable cause for the search warrant of the residence to be issued even if the facts of

6

the March 7, 1996 tapes were intentionally or recklessly omitted, which the government denies.

B. <u>The Standards</u>. Defendant must show the information omitted from the affidavits is (1) deliberately false or recklessly disregarded and (2) the inclusion of the omitted information would defeat probable cause. All known information need not be included and omissions are less likely to entitle a defendant to a <u>Franks</u> hearing. <u>United States v. Colkley</u>, 899 F.2d 297 (4th Cir. 1990). There is a two-prong test: (1) substantial preliminary showing of intentionally or recklessly false omission and (2) the false omission must defeat probable cause. <u>Colkley, supra</u>. Staleness is determined by the nature of activity (is it ongoing?), length of activity (how long?) and nature of property seized (not likely diminished by passage of time). <u>United States v. McCall</u>, 740 F.2d 1331 (4th Cir. 1984).

C. <u>Discussion</u>. In <u>Colkley, supra</u>, the Fourth Circuit indicated that the trial court should not have granted an evidentiary hearing because defendant did not make a substantial preliminary showing. Defendant here has not made a substantial preliminary showing and inclusion of the omitted information has absolutely no effect on the issue of probable cause. Finally, the information was not stale. The offense was ongoing, had lasted a long time and neither a camera or photographs are likely to be used up or removed.

The affidavit for the search warrant is extensive--six pages. It chronicles extensive activity from June 4, 1995, through

7

September 19, 1996. From February 10 to February 16, 1996, Defendant had used the services of Rite Aid Pharmacy to have pictures developed by one hour photo service on three occasions. One of those three occasions produced the photographs the government had obtained. Isn't it more than a mere probability that there may be other photographs from the other two visits which may be evidence of a crime? Because Defendant on one occasion says he did not take certain photographs does it mean he didn't have a camera or take other photographs concerning this matter?

I don't find any substantial showing for a <u>Franks</u> hearing. Even if there were, inclusion of the omitted material would not defeat probable cause but make it stronger because it ties Defendant directly to photographs whether he took them or not.

D. <u>Recommendation</u>. For the foregoing reasons, it is recommended the motion to suppress physical evidence seized at Defendant's residence be denied and no evidentiary hearing be granted.

IV. <u>Motion to Sever from Co-defendant</u>

Defendant seeks severance from Co-defendant Looker because Looker is representing himself and has made outrageous statements that the government will introduce at trial, which will prejudice this Defendant.

After the motion was filed, Defendant Looker advised that he was no longer going to proceed <u>pro se.</u> The basis for the Defendant's motion is moot. However, Defendant, in a supplemental memorandum, contends the spill-over effect of the stronger evidence

8

against Co-defendant Looker will harm him. Defendant also contends he will introduce 404(b) evidence of the other indictments against Co-defendant Looker which will either harm Co-defendant Looker if allowed or harm Defendant if not allowed.

B. <u>Standards</u>. Fed. R. Crim. P. 8(a) permits joinder of separate offenses when the offenses are of the same or similar character, based upon two or more acts connected together or as part of a common plan. <u>United States v. Haney</u>, 914 F.2d 602 (4th Cir. 1990). Fed. R. Crim. P. 8(b) allows defendants to be charged in the same indictment if they are alleged to have participated in the same act or series of acts constituting an offense or offenses. All defendants need not be charged in each count. Generally, individuals indicted together should be tried together. <u>United States v. Brugman</u>, 655 F.2d 540 (4th Cir. 1981). To sustain Defendant's burden, he "must show that a joint trial [was] so prejudicial as to have resulted in a miscarriage of justice." <u>United States v. Pryba</u>, 900 F.2d 748, 758 (4th Cir. 1990). <u>United States v. Goldman</u>, 750 F.2d 1221 (4th Cir. 1984) requires Defendant to make a strong showing of prejudice in order to support a motion for severance. <u>Goldman</u> further holds a severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of the defendant.

C. <u>Discussion</u>. In the absence of an allegation by this Defendant supported by <u>specific</u> facts that this Defendant has a need for testimony of a co-defendant (and that the co-defendant is likely to testify), an antagonistic defense or a desire to testify

9

on one count but not another, this Defendant has not shown a specific and compelling prejudice to the conduct of his defense which would entitle him to a severance.

First, it must be noted that it is Defendant, not the government, who wishes to introduce this evidence. If it were the government seeking to introduce 404(b) against a co-defendant, the trial court would use the harm to the co-defendant as a part of the balancing test. The trial court would then consider, if it decided to allow any of the evidence, whether a limiting instruction to the jury would be sufficient to protect Defendant.

Here, it is Defendant who wishes to introduce Rule 404(b) evidence against his Co-defendant and then claim it will harm Defendant. Defendant is creating his own problem. It just doesn't seem appropriate for Defendant to be able to create the problem. In any event, the trial court will make a decision on the evidence and will be better able to determine whether a limiting instruction to the jury will sufficiently protect Defendant. Finally, the trial court can consider whether it is right to allow Defendant to create his own problem and then seek a severance.

D. <u>Decision</u>. Motion DENIED without prejudice.

V. <u>Motion for Disclosure of Impeaching Evidence</u>

This evidence was granted in the Initial Scheduling Order, is moot and therefore DENIED.

VI. <u>Motion to Permit Voir Dire by Defense Counsel</u>

It is within the discretion of trial court to allow supplemental voir dire inquiry. <u>United States v. Lancaster</u>, 78

F.3d 888 (4th Cir. 1996). That is not the practice in this District. Further, it has been my observation that such supplemental voir dire inquiry has the effect of not producing a fair and impartial jury but rather an attempt by both sides to produce an unfair and impartial jury. Motion DENIED.

### VII. Motion to Dismiss

A. <u>Contentions of the Parties</u>. Defendant contends that the portion of 18 U.S.C. § 2339(A) that defines the term material support or resources by listing a number of specific items and then the catchall "other physical assets" is unconstitutionally vague.

The government contends that the term "other physical assets" is not unconstitutionally vague.

B. <u>The Standards</u>. No one should be criminally responsible for conduct he could not understand was prohibited. <u>United States v. Harris</u>, 347 U.S. 612 (1954). The root of the vagueness doctrine is a rough idea of fairness. <u>Colten v. Kentucky</u>, 407 U.S. 104 (1953).

C. <u>Discussion</u>. The issue here is: Can a person who wants to obey the law understand it? 18 U.S.C. § 2339(A) provides that a person who provides material support knowing that material support is to be used to violate certain sections of the United States Code is guilty of crime.

Material support is defined specifically and then with the catchall "other physical assets." The government contends providing a picture of the Capitol from the <u>Washington Post</u> which lists the Capitol's address to a person who intends to blow up the

11

Capitol violates this law. It is not the undefined physical asset that creates the crime, but rather knowing that the physical asset is to be used to assist another in committing a crime.

In this case, Defendant allegedly provided photographs of blueprints of parts of the FBI Center to his Co-defendant, who intended to sell the photographs to someone who would blow up the FBI Center. It is not providing the photographs that is criminal behavior unless one knows the criminal purpose of the person to whom they are given.

So, can a person who wants to obey the law understand it? Don't give anything to a person who wants to use that object to commit a crime. I think it is clear and therefore not unconstitutionally vague.

D. <u>Recommendation</u>. For the foregoing reasons, I recommend the motion to dismiss be denied.

VIII. <u>Motion by the United States to Produce Handwriting Exemplars</u>

Taking of handwriting exemplars does not violate Defendant's Fifth Amendment privilege against self-incrimination. <u>Gilbert v. California</u>, 388 U.S. 263 (1967). Motion GRANTED.

The Clerk of the Court is directed to mail a copy of this Order to counsel of record.

ENTERED: May 14, 1997

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE