

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                     Criminal Action No.1:96CR43-01

FLOYD RAYMOND LOOKER,

      Defendant.

## OBJECTION OF DEFENDANT FLOYD RAYMOND LOOKER TO MAGISTRATE'S RECOMMENDATION OF JUNE 19, 1997

The defendant, Floyd Raymond Looker, objects to the recommended decision of United States Magistrate Judge James E. Seibert, dated May 14, 1997, which denied the defendant's motion to suppress and motion to dismiss. In support thereof, the defendant states as follows:

*The Magistrate's Recommendation Regarding Defendant's Motion to Suppress Fails to Address the Crux of the Defendant's Argument*

The motion to suppress is based on an argument which is similar to *one* of the arguments made in support of the defendant's various motions to dismiss, i.e., the fact that the Government undertook its investigation in violation of the former version of 18 U.S.C. §2339A, which provided a safeguard for protecting First Amendment rights of free speech.[1] Under the version

---

[1] As we pointed out in the defendant's brief on this motion, 18 U.S.C. §2339A was amended after Government began its investigation "sting" operation, but before the time of the defendant's arrest and indictment.



of §2339A that existed at the time the Government investigation began, subsection (c) prohibited the Government from beginning or continuing an investigation based on activities which were protected by the First Amendment. The defendant urged the magistrate judge in his brief and argument that, indeed, the Government undertook the investigation without *any* information that the defendant or the organization with which he was affiliated was engaging in, or about to engage in, criminal activity.

Unfortunately, the magistrate judge's recommendation completely fails to address this issue. Instead, the recommendation discusses the defendant's argument coincidentally with another argument made in support of the defendant's motion to dismiss, i.e., the Government's conduct was so outrageous that it amounted to a due process violation.

Having said that, we would summarize our previous argument for the court. First, the defendant has conceded that the motion to suppress is not traditional as it is not based upon an alleged violation of his Fourth, Fifth or Sixth Amendment rights. Rather, the motion addressed a First Amendment right and a statutory limitation placed upon the Government by subsection (c) of 18 U.S.C. §2339A. Simply put, the Government violated the statute by beginning an investigation without the prerequisite evidence of criminal activity, and furthermore, began an investigation of a group of individuals who were merely exercising there right to free speech and association. Since the investigation was illegal, any evidence gathered therefrom should be suppressed. Otherwise, the defendant is without a remedy.

### *The Magistrate Judge Should Have Granted the Defendant an Evidentiary Hearing on the Issue of Outrageous Governmental Conduct*

A review of the materials provided by the defendant to the magistrate judge clearly

2

demonstrates that the defendant is entitled to an evidentiary hearing on the issue of outrageous governmental conduct. The magistrate judge correctly stated that the test for granting an evidentiary hearing in a criminal case is whether the defendant made a sufficient threshold showing that material facts were in doubt or dispute? *See, United States v. Panitz*, 907 F.2d 1267, 1273 (1st Cir. 1990).

The defense of outrageous Government misconduct has its origins in *United States v. Russell*, 411 U.S. 423. 93 S.Ct. 1637, 36 L.Ed. 2d 366 (1973), where the Supreme Court stated that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that the process principles would absolutely bar the Government from invoking judicial processes to obtain a conviction." *Id.* at 432-32, 93 S.Ct. at 1643.

Because of the "difficulties attending the notion that due process of law can be embodied in fixed rules," *Id.* at 431, 93 S.Ct. at 1642, Courts recognizing the outrageous conduct defense have not attempted to attach a precise definition to its requirements. Rather, the relevant inquiry is whether, considering the totality of the circumstances in any given case, the Government's conduct is so shocking, outrageous and intolerable that it offends "the universal sense of justice." *Russell*, 411 U.S. at 432, 93 S.Ct. at 1643.

In *Sherman v. United States*, 356 U.S. at 377 N. 7, 78 S.Ct. at 823, the Court left the matter at: "The function of law enforcement is the prevention of crime and the apprehension of criminals." Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, "a different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of the innocent person the predisposition to

3

commit the alleged offense and induce its commission in order that they may prosecute." *Id.* at 372, 78 S.Ct. at 820, quoting *Sorrells v. United States*, 287 U.S. at 442, 53 S.Ct. at 212.

Mr. Justice Roberts in *Sorrells* put the idea in the following words:

The applicable principle is that Courts must be closed to the trial of a crime instigated by the Government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy. 287 U.S. at 459, 53 S.Ct. at 219.

Several Federal Courts have adopted the objective test, or a variant thereof, focusing on the conduct of the Government agents, rather than the "predisposition" of the particular defendant. *United States v. Russell*, 93 S.Ct. at 1649, footnote 3 (citations omitted).

In *United States v. Lacey*, 86 F.3d 956, the Court made the distinction between a defense of outrageous Government misconduct and the defense of entrapment, in that the entrapment defense looks at the state of mind of the defendant to determine whether he or she was predisposed to commit the crime for which they are prosecuted, while the outrageous conduct defense looks at the Government's behavior. The court in *Lacey* also pointed that "most" of the federal circuits have recognized the viability of the defense. *Id.*, at 964, fn. 6.

In *United States v. Santana*, 6 F.3d 1 (1st Cir. 1993), the court stated that "outrageousness, by its nature, requires an *ad hoc* determination." *Id.*, at 6. The court also pointed out that the government's actions "can only be evaluated by taking into account the totality of the relevant circumstances." *Id.*, at 7.

In this case the Government had no evidence whatsoever to believe that defendant or any member of the Mountaineer Militia was involved in *any* form of criminal activity prior to the activities of the paid informant Okey Marshall Richards. In fact, FBI agent J.C. Raffety testified

4

to such fact. The evidence will likely show that the delay in taping meetings and telephone calls was to allow informant Richards the necessary time to lay a foundation for creating criminal activity.

At the hearing on this motion, the defendant invited the magistrate judge's attention to nine recorded conversations wherein Okey Marshall Richards, the government informant goads the defendant the defendant to be involved in criminal activity and complains to the defendant and co-defendants when things are not moving quickly enough. In addition, it was pointed out that Special Agent Raffety admitted at the preliminary hearing that it was the government who was controlling the operation. In a supplemental memorandum, the defendant drew the court's attention to a taped conversation occurring on 2/7/96 between O. Marshall Richards and James J. Johnson, designated by number 266A-PG-61664, wherein the government informant requests defendant, James J. Johnson, to "deal with him [Richards] directly" and *not* deal with defendant Looker. In addition to the foregoing, the defendant's supplemental memorandum attached statements of Phillip Kline and Leonard E. Poff. The statement of Kline states in part:

> "Fact--every time the presence of O. Marshall Richards came about, the conversation centered around drawing people into explosives and bringing aircraft down."

The statement of Leonard E. Poff states in part:

> "The only time that any criminal activities was mentioned was when Marshall Richards brought the subject up. In my opinion, Mr. Richards was trying to lead people in the wrong direction. It was like he was trying to set everyone up."

A review of the materials provided to the magistrate judge clearly shows that if informant Richards was removed from the case, no crimes would have been orchestrated. Due to the relatively low threshold required for an evidentiary hearing, i.e., whether material facts are in

5

doubt or dispute, the defendant is entitled to a an evidentiary hearing on this issue.

Defendant submits that an evidentiary hearing would show that absolutely no criminal activity was undertaken by the defendants until after the active involvement of Okey Richards in the Mountaineer Militia; after Richards endeared himself to the members of the militia; after Richards planted idea after idea into the minds of the militia members. Mr. Richards provided transportation and finances for travel and expenses throughout West Virginia, Ohio and southwestern Pennsylvania. Defendant's financial situation made him especially vulnerable to the FBI and informant Okey Marshall Richards, who prided himself on his marketing expertise and his ability to "sell crushed ice to the Eskimos." All of these actions were under the control, advice and financial backing of the FBI through its paid informant, Okey Marshall Richards.

It is not the role of government to manufacture crime. In this case, it was done and the defendant's rights to due process were violated. At the least, the facts are in dispute on this issue and the defendant is entitled to an evidentiary hearing.

WHEREFORE, the defendant requests that the Court not follow the recommendation with respect the motion to suppress, and further grant the defendant's request for an evidentiary hearing with respect to the issue of outrageous governmental conduct.

FLOYD RAYMOND LOOKER, Defendant

_____
WILLIAM CIPRIANI,
Counsel for Defendant

6

## CERTIFICATE OF SERVICE

      Service of the foregoing Motion was had upon the following by hand delivering a true copy, this 30th day of June, 1997.

By: _____
William Cipriani
Counsel for Defendant

David Godwin
First Assistant United States Attorney
P.O. Box 750
Clarksburg, WV 26303-0750
Counsel for the Government

Gary B. Zimmerman, Esq.
100 Ross Street
Suite 304
Pittsburgh, PA 15219
Counsel for James Rogers