U.S. DISTRICT COURT
FILED AT WHEELING, WV

AUG 1 8 1997

NORTHERN DISTRICT OF WV
CLERK

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF WEST VIRGINIA

3    UNITED STATES OF AMERICA, )

4              Plaintiff,          )

5    VS.                          )      CRIMINAL ACTION NO.

6    FLOYD RAYMOND LOOKER,         )      1:96CR43-01

7              Defendant.          )

8

9    Proceedings had in the <u>Plea Hearing</u> of the above-styled

10   action on <u>August 13, 1997</u>, before Honorable Frederick P. Stamp,

11   Jr., Chief Judge, at Wheeling, West Virginia.

12                              - - -

13   APPEARANCES:

14        On Behalf of the United States of America:

15             William D. Wilmoth, Attorney
               United States Attorney
16             David E. Godwin, Attorney
               Assistant United States Attorney
17             P.O. Box 591
               Wheeling, WV  26003
18             304-234-0100

19        On Behalf of the Defendant Looker:

20             William Cipriani, Attorney
               Cipriani & Paull
21             634 Charles Street
               Wellsburg, WV  26070
22             304-737-1610

23

24   Proceedings recorded utilizing realtime translation,
     transcript produced by computer-aided transcription.
25

JENNIFER VAIL-KIRKBRIDE, RPR-RMR
REGISTERED PROFESSIONAL REPORTER
P.O. BOX 42, WHEELING, WV  26003
(304)-233-0661

1    APPEARANCES (Continued):

2       On Behalf of the Defendant:

3           William C. Gallagher, Attorney

4           Cassidy, Myers, Cogan, Voegelin & Tennant
            First State Capitol

5           1413 Eoff Street
            Wheeling, WV  26003

6           304-232-8100

7       The Defendant was present in person.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   INDEX

2   Witness\Proceeding                Direct  Cross  Redirect  Recross

3   8-13-97

4   By the Government:

5   Leslie Hoppey                     23

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JENNIFER VAIL-KIRKBRIDE, RPR-RMR
REGISTERED PROFESSIONAL REPORTER
P.O. BOX 42, WHEELING, WV  26003
(304)-233-0661

4

## PROCEEDINGS

(8-13-97, 4:00 o'clock p.m., defendant present, in open court)

THE COURT:  The next matter we have is United States of America versus Floyd Raymond Looker, it is Criminal Action Numbers 5:96CR41, 96-CR42, and 1:96CR43, a matter of a change of plea.

Is the United States ready to proceed, Mr. Wilmoth?

MR. WILMOTH:  The United States is ready, your Honor.

THE COURT:  Mr. Cipriani, Mr. Gallagher, is the defendant ready to proceed?

MR. GALLAGHER:  Yes, your Honor.

THE COURT:  Mr. Looker, if you are ready to proceed, I will ask the clerk to administer an oath to you.

THE CLERK:  Raise your right hand, please.

Do you solemnly swear the testimony you are about to give in this matter shall be the truth, the whole truth and nothing but the truth, so help you God?

THE DEFENDANT:  So help me God.

THE CLERK:  You may be seated.

THE COURT:  Mr. Looker, if it will be easier for you, you may want to continue to refer to the monitor while I am asking you these questions.  You are now under oath and I am sure you understand that means you promise to tell me the truth under penalty of perjury or false swearing.  I want you to let me know if there is anything that you don't understand as we go

1   through this, and I will try to explain it.  Of course, consult

2   with your counsel, Mr. Cipriani and Mr. Gallagher, if you need

3   clarification from them on anything.

4        I am going to be asking you some questions about the pleas

5   of guilty that I understand you propose to enter in three cases,

6   and your understanding of the rights that you are giving up by

7   entering a plea in those cases, and your understanding, also, of

8   the Federal Sentencing Guidelines as they may apply in your

9   particular case.

10       But before I do that, I want to get just a little

11  background information about you.  How old are you, sir?

12                THE DEFENDANT:  Uh--

13                THE COURT:  You can remain seated.  I also should have

14  said, you can remain seated during the entire hearing.  I would

15  ask you, just keep your voice up so that the court reporter and

16  I can hear what you said.  And if for any reason because of your

17  hearing disability you have difficulty in following this, let me

18  know or let your counsel know and we will see what we need to do

19  to correct that.

20       How old are you?

21                THE DEFENDANT:  I will be 57 this coming Tuesday.

22                THE COURT:  And tell me something about your education

23  and also your work experience.

24                THE DEFENDANT:  I have graduate degrees in theology,

25  law, and business management.  My work experience has been

JENNIFER VAIL-KIRKBRIDE, RPR-RMR
REGISTERED PROFESSIONAL REPORTER
P.O. BOX 42, WHEELING, WV  26003
(304)-233-0661

6

1  primarily as a missionary and missionary evangelist,

2  self-supporting with various types of work to support the

3  ministry.

4         THE COURT:  And my recollection is, from testimony at

5  your earlier trial, that you received your law degree while you

6  were serving in the armed forces; is that correct?

7         THE DEFENDANT:  That is correct, sir.

8         THE COURT:  All right.  Have you ever been treated for

9  any mental illness or any addiction to narcotic drugs of any

10 kind?

11        THE DEFENDANT:  No, sir, but I believe the Court is

12 aware that I am taking Prozac.

13        THE COURT:  Yes.  And have you taken any medicines or

14 drugs or alcohol--or consumed any alcoholic beverages within the

15 last 24 hours?

16        THE DEFENDANT:  No, sir.  I do not drink.

17        THE COURT:  But you have taken certain medicines?

18        THE DEFENDANT:  Yes, sir.  Prozac.

19        THE COURT:  Are you taking Prozac now?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  What is the dosage that you are taking?

22        THE DEFENDANT:  20 milligrams per day.

23        THE COURT:  Is that a prescribed dosage?

24        THE DEFENDANT:  That is prescribed by the Veterans'

25 Administration and also by the Northern Regional Jail doctor.

1        THE COURT:  Are you feeling or having any side effects
2   from the taking of that Prozac?
3        THE DEFENDANT:  No, sir.
4        THE COURT:  All right.  And I believe that there has
5   been some testimony, maybe in the Magistrate Judge's court, that
6   that Prozac has been helping you; is that correct?
7        THE DEFENDANT:  That is correct, sir.
8        THE COURT:  All right.  Are you taking any other
9   medicines, prescription medicines?
10        THE DEFENDANT:  No, sir.
11        THE COURT:  No others?
12        THE DEFENDANT:  No, sir.
13        THE COURT:  All right.  Do you know what this
14   proceeding is all about, what we are doing here this afternoon?
15        THE DEFENDANT:  Yes, sir.
16        THE COURT:  And I know that you have a hearing
17   impairment.  Are you able to follow this proceeding by virtue of
18   the real-time monitor that has been on your counsel table during
19   your first trial and is on the counsel table in front of you
20   during this hearing?
21        THE DEFENDANT:  Yes, sir.  It is very helpful.
22        THE COURT:  All right.  And do you have any other
23   disability that would prevent you from fully participating in
24   this hearing?
25        THE DEFENDANT:  No, sir.

1        THE COURT:  And is that monitor, TV monitor, is that

2    helping you participate in this hearing and making it possible

3    for you to fully participate in this hearing?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  All right.  And just for the record, are

6    you able to read and write and understand the English language?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Mr. Cipriani, and Mr. Gallagher, do you or

9    any members of firms that you are associated with represent any

10   other person or party involved in any way with Mr. Looker's case

11   that would give rise to a potential conflict of interest for

12   you?

13       MR. GALLAGHER:  Your Honor, we have had ample

14   opportunity to review the government's list of witnesses and all

15   of the statements that have been provided in the case and there

16   is no conflict with any members of my firm.

17       MR. CIPRIANI:  Same with me, your Honor.

18       THE COURT:  All right.  Thank you, gentlemen.

19       I have received today a proposed plea agreement.  It is

20   dated today, August 13, and it is in the form of a letter to Mr.

21   Cipriani and Mr. Gallagher.  And I would ask, please, Mr.

22   Wilmoth, as the United States Attorney, if you would summarize

23   that plea agreement for the record.

24       Mr. Looker, if you will follow that summary on the screen

25   so that you are sure that you understand what you have agreed

1   to, and if you have a copy of the plea agreement that you want

2   to follow as we go along, that will be fine, also.

3          MR. WILMOTH:  Your Honor, under the terms of this

4   proposed plea agreement as described in paragraph 1, Mr. Looker

5   will plead guilty today to Counts 1 and 3 of the case in which

6   Mr. Rogers was a codefendant.  Count 1 charges conspiracy to

7   commit an offense against the United States.  Count 3 charges

8   providing material support with the intent to do damage to a

9   government facility.

10      Mr. Looker will also plead guilty to Count 5 of Case Number

11   40 in which Mr. Johnson and Mr. Lewis are codefendants, which

12   charges him with causing the transportation of an unregistered

13   firearm in interstate commerce.

14      Lastly, Mr. Looker will plead guilty to Count 5 of Case

15   Number 42, the case in which Mr. Coon is a codefendant.  That

16   count charges Mr. Looker with causing transportation of an

17   unregistered firearm in interstate commerce.

18      Paragraph 2 of the plea agreement sets forth the maximum

19   penalties to which Mr. Looker will be exposed by virtue of his

20   pleas of guilty.  Count 3 is a stipulation--I said Count 3, I'm

21   sorry.  Paragraph 3 is a stipulation by Mr. Looker that he and

22   his codefendant, Mr. Coon, caused the transportation of

23   explosive materials from Pennsylvania to West Virginia on

24   September 6, 1995, including C-4 plastic explosives, high

25   explosive TNT, and numerous additional civilian and military

1   explosive-related materials, including electric blasting caps,

2   blasting fuses, firing devices, detonation cord and blasting

3   machines.

4       In addition, Mr. Looker has stipulated that the overt acts

5   alleged in Count 1 of Case Number 40, that is the one in which

6   he is a codefendant with Mr. Johnson and Mr. Lewis, are true and

7   correct.

8       Under paragraph 4 of the agreement, Mr. Looker has agreed

9   to be completely forthright and truthful with federal officials,

10   to answer any inquiries made of him, to give signed, sworn

11   statements, and trial testimony if asked to, along with agreeing

12   to submit to a lie-detector test if requested to do so.

13       Under paragraph 5, nothing contained in any statement that

14   Mr. Looker gives pursuant to paragraph 4 that I just described,

15   will be used against him as the basis of any subsequent

16   prosecution except for perjury if that would occur.

17       In addition, the defendant understands and has set

18   forth--his understanding is set forth in this paragraph, that

19   the Federal Bureau of Investigation has conducted an additional

20   investigation of him and others in relation to certain

21   fraudulent checks and that a prosecution of him in this court or

22   in any other District Court of the United States where it might

23   be applicable is not precluded by this agreement.

24       Under paragraph 6, the United States has agreed to inform

25   the Court of the degree to which Mr. Looker has been

1  cooperative, or his failure to be cooperative, at the time of

2  sentence.

3      In addition, the United States will move to dismiss the

4  remaining counts pending against Mr. Looker in the case in which

5  Mr.--cases in which Mr. Johnson, Mr. Lewis, and Mr. Coon are the

6  codefendants.

7      Paragraph 7 explains, your Honor, that there have been no

8  representations by any agent or employee of the United States as

9  to exactly what the sentence will be in these cases.  The

10  agreement does, however, contain the nonbinding recommendation

11  by the United States pursuant to Rule 11(e)(1)(B) of the Federal

12  Rules of Criminal Procedure, that if the defendant accepts

13  responsibility and the probation officer recommends a two-level

14  reduction in his Sentencing Guidelines for acceptance of

15  responsibility, the United States will concur in that

16  recommendation.  However, the United States will oppose the

17  third level reduction for early acceptance of responsibility in

18  any of these cases.  All parties are free to take such other

19  positions related to sentencing as they deem appropriate.

20  However, the defendant understands that the Court is not bound

21  by these recommendations and that the defendant has no right to

22  withdraw his guilty plea if the Court does not follow the

23  sentencing recommendation.

24      There is, your Honor, no paragraph 8.  We go from paragraph

25  7 to paragraph 9.  My mistake.

1    The paragraph noted as number 9 explains that the parties

2  recommend that the Court consolidate the sentencing of the

3  defendant on all four cases, and that the parties agree pursuant

4  to Rule 11(e)(1)(C) of the Federal Rules of Civil Procedure that

5  the appropriate disposition of these cases would be a sentence

6  of less than 25 years maximum.

7    Under paragraph 10, the United States has the right to

8  decline to make the foregoing recommendations if the defendant

9  breaches the plea agreement in any way, including failing to

10  cooperate as he has promised, and the defendant will still have

11  no right to withdraw his plea.

12    Under paragraph 11, the United States reserves the right to

13  provide a prosecution version of the offense to the probation

14  office when the presentence report or reports--is or are

15  prepared for the Court.  The United States also retains the

16  right to respond to any questions raised by the Court, to

17  correct any inaccuracies or inadequacies in the anticipated

18  presentence report, or to respond to any written or oral

19  statements made by the Court to--to the Court, I'm sorry, by Mr.

20  Looker or his counsel.

21    Under paragraph 12, the United States waives its right to

22  appeal the sentence.  In other words, the sentence is entirely

23  up to the Court.

24    Mr. Looker also acknowledges his right to appeal certain

25  parts of the sentence, but is waiving his right to appeal any

1   sentence of ten years or less on the grounds set forth in that

2   paragraph.

3        Under the paragraph noted or called paragraph 13, if the

4   defendant's plea is not accepted by the Court or is later set

5   aside or if the defendant breaches any part of this agreement,

6   then the United States has the right to void the agreement in

7   its entirety.  And the last paragraph of the agreement simply

8   says that the paragraphs I have summarized constitute the entire

9   agreement between Mr. Looker and the United States with regard

10  to these cases.

11       I will hand the original, signed version to the clerk, your

12  Honor.

13            THE COURT:  Thank you, Mr. Wilmoth.  Because that plea

14  agreement contains both nonbinding recommendations and also what

15  appears to be a binding recommendation under Rule 11(e)(1)(C), I

16  will not accept or reject the plea agreement, but will act upon

17  it at a later time, probably the time of sentencing.

18            Mr. Looker, is that your signature on the first and all

19  subsequent pages of the plea agreement next to the date August

20  13, 1997?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  And do you understand and agree with all

23  of the terms and provisions of that plea agreement?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Did you go over that plea agreement in

1  detail with your counsel, Mr. Cipriani, and Mr. Gallagher,

2  before you signed it, and did they answer any questions you had

3  about it?

4         THE DEFENDANT:  Yes, sir, they did.

5         THE COURT:  Do you believe that you have any other

6  arrangements or side deals with the United States Government

7  that are not contained in this plea agreement?

8         THE DEFENDANT:  No, sir.

9         THE COURT:  Do you understand that I am not bound by

10 any stipulation or recommendation contained in the plea

11 agreement, except for the binding recommendation in the one

12 paragraph, and that if I find later on, based upon an

13 independent investigation by the probation officer or any other

14 evidence, that I can't go along with the nonbinding

15 recommendation or stipulation, that you would still be bound by

16 your plea agreement and would not have a right later on to

17 withdraw it?  Do you understand that?

18        THE DEFENDANT:  I understand, sir.

19        THE COURT:  And do you further understand that under

20 paragraph 12 of the plea agreement, that you have entered into a

21 waiver of your right to appeal the sentence in this case--in

22 those cases in which the sentence of ten years or less is

23 imposed, either for the grounds set forth by the relevant

24 sentencing statute, Section 3742 of Title 18, or for any post-

25 conviction remedies that you might have, including but not

1    limited to what is known sometimes as a Section 2255 remedy

2    under Title 28?  Do you understand that?

3            THE DEFENDANT:  I understand that, sir.

4            THE COURT:  Mr. Cipriani and Mr. Gallagher, based on

5    your review of the plea agreement with your client, do you

6    believe that he fully understands this waiver of appellate

7    rights set forth in paragraph 12?

8            MR. GALLAGHER:  We did discuss it at some length, your

9    Honor, and I believe he understands it.

10           THE COURT:  All right.  I will, then, file the plea

11   agreement.

12       Mr. Looker, have you received and reviewed the indictments

13   that are the subject of this plea agreement, namely 5:96CR40,

14   1:96CR42, and 1:96CR43, and have you gone over those with your

15   counsel and have they explained those charges in full to you?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  And would you like me to read those

18   indictments to you or will you waive the reading of the

19   indictments?

20           THE DEFENDANT:  We can waive the reading.

21           THE COURT:  All right.  Mr. Looker, the elements of

22   the crimes to which you intend to enter a plea of guilty to, are

23   as follows:  With regard to Count 1 of Case Number 1:96CR43, the

24   government would have to prove the following elements beyond a

25   reasonable doubt:  First, that two or more persons entered into

1  an unlawful agreement charged in Count 1 of the indictment;

2  secondly, that you knowingly and willfully became a member of

3  that conspiracy; third, that one of the members of the

4  conspiracy knowingly committed at least one of the overt acts

5  charged in Count 1 of that indictment; and, finally, that the

6  overt acts were committed to further some objective of the

7  conspiracy.

8      The elements of the crime which the government would have

9  to prove beyond a reasonable doubt as to Count 3 of Case Number

10  1:96CR43, would be the following:  That you provided material

11  support or resources or concealed or disguised the nature,

12  location, source or ownership of such material support, or

13  resources, and that you did so knowingly or intending that

14  material support or resources were to be used in preparation for

15  or in carrying out a violation of one of certain enumerated

16  crimes in that statute.

17      In Count 5 of Case Number 5:96CR40, and Count 5 of Case

18  Number 1:96CR42, the elements of that crime, and both are

19  allegations, as you know, violations of similar--the same

20  statute, the government would have to prove the following

21  elements beyond a reasonable doubt:  First, that you

22  transported, delivered, or received the firearm in interstate

23  commerce; and, secondly, that the firearm was not registered as

24  required by Title 26, United States Code, Section 5841.

25      Now, you are also named in Counts 1, 4, 6, and 7 of Case

1   Number 5:96CR40, and Counts 1 and 4 of Case Number 1:96CR42.

2   Now, the sentence as to which you would be exposed by

3   guilty pleas in the cases involved in this plea agreement are as

4   follows:  As to Count 1 of Case Number 1:96CR43, five-year

5   maximum period of incarceration, $250,000 maximum fine,

6   three-year minimum period of supervised release.

7   As to Count 3 in Case Number 1:96CR43, ten years maximum

8   period of incarceration, $250,000 maximum fine, and a

9   three-year minimum period of supervised release.

10  And as to Count 5 of Case Number 5:96CR40 and Count 5 of

11  1:96CR42, ten years maximum period of incarceration, $250,000

12  maximum fine, and a three-year minimum period of supervised

13  release.

14  If you were on supervised release and violated the terms

15  and conditions of supervised release, you could, following a

16  hearing on revocation of supervised release and revocation of

17  that release, be sentenced to further incarceration.

18  Also, Mr. Looker, as a part of any fine that this Court

19  could impose upon you, you could be required to pay the cost of

20  incarceration, cost of supervised release, cost of community

21  confinement.  At the present time those monthly costs are

22  $1910.17 a month for incarceration, $217.18 a month for

23  supervised release, and $1186.25 a month for community

24  confinement.  And the special assessment of $200 would be

25  mandatory.  It is possible that that mandatory assessment might

1   be $300, $50 for Count 5 in CR40 and CR42, and $100 for counts

2   in 1:CR--1:96CR43, but the probation officer will look at that

3   and give us a report on that aspect.  And restitution can be

4   ordered if it is implicated.

5         Now, Mr. Looker, because this crime took place or continued

6   after November 1, 1987, the Federal Sentencing Guidelines are a

7   very important part of your case from here on.  And I want to

8   now just get some idea of your understanding of the Federal

9   Sentencing Guidelines as to this crime.  First of all--and these

10   crimes in the plea agreement.

11         First of all, have Mr. Cipriani and Mr. Gallagher discussed

12   with you the Federal Sentencing Guidelines, and have they

13   advised you as to how they will apply, at least in your

14   particular case?

15         THE DEFENDANT:  Yes, sir, they have.

16         THE COURT:  All right.  And do you understand that on

17   the individual counts that I have just gone over with you, you

18   cannot receive a greater sentence than the statutory maximums

19   that I have just explained to you?  Do you understand that?

20         THE DEFENDANT:  Yes, sir, I do.

21         THE COURT:  And do you understand that I am not going

22   to be able to determine what Guideline sentence applies in your

23   case until a later date when a presentence report has been

24   prepared and completed by the probation office, you have

25   received it, gone over it with your counsel, made objections to

1   it if you wished, and the government has had a chance to do the

2   same thing?  Do you understand that?

3                THE DEFENDANT:  I understand that, sir.

4                THE COURT:  Do you also understand that under a

5   concept known as relevant conduct, that this Court in

6   determining the total offense level for sentencing purposes

7   under the Guidelines may take into account any conduct, any

8   circumstances, or any injuries relevant to the crimes of which

9   you have been convicted?  Do you understand that?

10                THE DEFENDANT:  Yes, sir.

11                THE COURT:  Is there any prospect of an enhancement of

12   the sentence by--for firearm convictions in this case?

13                MR. WILMOTH:  I believe not, your Honor.

14                THE COURT:  Mr. Looker, do you understand that after

15   this Court has determined what Guidelines apply in your case,

16   that I have the authority, at least in some circumstances, to

17   depart from the Guidelines and impose a sentence that is either

18   more severe or less severe than that called for by the

19   Guidelines?  Do you understand that?

20                THE DEFENDANT:  I understand that, sir.

21                THE COURT:  And do you understand that also under

22   paragraph 12 of the plea agreement, you have waived the right to

23   appeal these sentences under certain circumstances set forth in

24   that paragraph?  Do you understand that?

25                THE DEFENDANT:  I understand.

**JENNIFER VAIL-KIRKBRIDE, RPR-RMR**
**REGISTERED PROFESSIONAL REPORTER**
**P.O. BOX 42, WHEELING, WV  26003**
**(304)-233-0661**

1          THE COURT:  Do you understand also that parole has

2    been abolished by the Federal Sentencing Guidelines and if you

3    are sentenced to prison, you are not going to be eligible for

4    release on parole?  Do you understand that?

5          THE DEFENDANT:  I understand that, sir.

6          THE COURT:  Do you also understand, Mr. Looker, that

7    if I accept your plea of guilty to these crimes and the sentence

8    later imposed upon you is more severe than you had hoped for or

9    expected, that you are still going to be bound by your guilty

10   plea and not have a right later on to withdraw it?  Do you

11   understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  And do you understand also that by

14   pleading guilty to these counts in the various indictments,

15   which are all felony counts, that you may be giving up some

16   important civil rights, such as the right to vote, the right to

17   hold public office, the right to serve on a jury and the right

18   to own or possess a firearm?  Do you understand that?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Mr. Looker, do you understand that rather

21   than pleading guilty here this afternoon, that you have a right

22   to continue to maintain a not guilty plea on these cases and to

23   continue to plead not guilty and to go to trial on these cases,

24   including the trial that is set forth in one of the cases to

25   begin tomorrow morning?  Do you understand that?

1        THE DEFENDANT:  I understand, sir.

2        THE COURT:  Do you also understand that if you

3  continue to plead not guilty, you could be represented by your

4  counsel, Mr. Cipriani and Mr. Gallagher, throughout all of the

5  rest of the proceedings, including the trial in these cases?  Do

6  you understand that, sir?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Do you also understand that if you went to

9  trial on these cases, you would have a right to a trial by jury

10  and a jury composed of 12 regular jurors, one or more

11  alternates, who are residents of this district to be impaneled

12  to hear all of the evidence and decide whether or not you were

13  innocent or guilty?  Do you understand that?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Do you understand that if you went to

16  trial on any of these cases, that you could confront the

17  witnesses that came in to testify against you; Mr. Cipriani and

18  Mr. Gallagher could move to suppress any evidence they felt had

19  been improperly obtained against you; and also they could

20  cross-examine the witnesses that came in to testify against you?

21  Do you understand that?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  Do you understand also, Mr. Looker, that

24  if you went to trial in these cases, you would have the

25  constitutional right, as you had in your first trial, not to

1    testify or to in any other way incriminate yourself, and your

2    exercise of that right could not be used against you by anybody?

3    Do you understand that?

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  Do you also understand that if you went to

6    trial by jury, that the verdict of the jury would have to be

7    unanimous?  All 12 jurors would have to agree on either your

8    innocence or your guilt.  Do you understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  And do you understand that if you went to

11   trial, you could present evidence on your own behalf and your

12   counsel could ask the clerk to subpoena witnesses to come in and

13   testify for you if that was your desire?  Do you understand

14   that?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Do you understand that these are all

17   rights that you are giving up here by entering a plea of guilty

18   to these counts in these cases?

19             THE DEFENDANT:  Yes, sir.

20             THE COURT:  And do you understand that if you enter

21   pleas of guilty in these cases, that there is not going to be a

22   trial in these cases, no jury verdicts or no findings of

23   innocence or guilt based upon disputed evidence presented either

24   to a Court or to a jury?  Do you understand that, sir?

25             THE DEFENDANT:  Yes, sir.

1        THE COURT:  Mr. Looker, do you fully--do you believe

2   that you fully understand the consequences of entering guilty

3   pleas in these cases?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  And, Mr. Cipriani and Mr. Gallagher, based

6   on your numerous interviews and conferences with Mr. Looker, do

7   you believe that he fully understands the consequences of a

8   guilty plea in these cases?

9        MR. GALLAGHER:  We do, your Honor.

10        THE COURT:  All right.  Mr. Wilmoth, would you present

11   the factual basis for the plea under Rule 11?

12        MR. GODWIN:  The United States calls Special Agent

13   Leslie Hoppey from the FBI, your Honor.  And, your Honor, may

14   she take the witness stand instead of standing here?

15        THE COURT:  Yes.  That will be fine.

16       <u>Leslie Hoppey, Government's Witness, was Sworn</u>

17        THE CLERK:  The witness is Leslie Hoppey, H-O-P-P-E-Y.

18        THE COURT:  Good afternoon, Agent Hoppey.

19                DIRECT EXAMINATION

20   BY MR. WILMOTH:

21   Q.    Special Agent Hoppey, you are an agent of the Federal

22   Bureau of Investigation?

23   A.    Yes, I am.

24   Q.    You are assigned to the Clarksburg office, are you not?

25   A.    Yes, I am.

1   Q.     Were you one of the two chief agents in this entire series

2   of cases?

3   A.     Yes, I was.

4   Q.     And are you, therefore, familiar with the evidence that the

5   United States would be able to introduce at trial in these cases

6   against Mr. Looker?

7   A.     Yes, I am.

8   Q.     Would you explain for Judge Stamp, please, first, the

9   evidence that the government would introduce against Mr. Looker

10  as to Counts 1 and Count 3 of case 1:96CR43 that is scheduled to

11  go to trial tomorrow and in which Mr. Rogers is the codefendant.

12  A.     Yes, I can.  On June 4 of 1995, Mr. Floyd Raymond Looker,

13  the general of the Mountaineer Militia, held a training session

14  in Lewis County, which is in the Northern District of West

15  Virginia.  During this training session--there were 26 county

16  commanders which attended this training session.  Among the

17  county commanders were--was the Harrison County commander, James

18  Richard Rogers, also known as Rich Rogers.  Mr. Rogers is

19  employed as a fire lieutenant with the Clarksburg Fire

20  Department in Clarksburg, West Virginia.

21          During this meeting, Mr. Looker discussed targeting federal

22  facilities in case the militia ever had to retaliate against the

23  United States Government.  One of the federal facilities that

24  was going to be targeted was the FBI Criminal Justice

25  Information Service facility, which is also known as the FBI

1    CJIS facility located in Clarksburg, West Virginia.

2            Mr. Rogers then indicated, because of his employment with

3    the fire department in Clarksburg, West Virginia, that he had

4    information regarding this facility.

5            On August 29 of 1995--I'm sorry.  I just wanted to explain

6    that Okey Marshall Richards was also in attendance at this

7    meeting.

8    Q.    That is the government's corroborating witness?

9    A.    Yes, he is, sir.

10           On August 29 of 1995, Mr. Richards, Mr. Looker, and Mr.

11   Rogers had a meeting in Clarksburg, West Virginia.  Again,

12   during this meeting, they talked about targeting the FBI

13   facility in Clarksburg, West Virginia.  During this meeting, Mr.

14   Rogers advised them that he had access to the blueprints because

15   they were located in the fire department in Clarksburg, West

16   Virginia.

17           Mr. Richards then met with Mr. Rogers again in December of

18   1995, where again they discussed the details about the CJIS

19   facility and the blueprints.

20           After this meeting, Mr. Richards directly reported to Mr.

21   Looker about what transpired in that meeting.  On February 5 of

22   1996, Mr. Looker met with an undercover Special Agent by the

23   name of Steven Francke, known to Mr. Looker as Steven Francis.

24           During this meeting, Mr. Looker advised to the undercover

25   Special Agent that in the near future, he might have access to

1   the blueprint plans of the CJIS facility and he inquired of

2   Special Agent Francke if he knew of a potential buyer of the

3   plans.  Agent Francke said he would look into it and get back

4   with him at a later date.

5          On February 18 of 1996, Mr. Rogers met with Mr. Richards.

6   During that meeting, he provided Okey Marshall Richards with 35

7   photographs of the CJIS blueprints.  He also provided negatives

8   and he also provided two large photographs of the blueprints.

9          Also with the negatives was a little legend which explained

10  what the photographs were all about.

11         On March 7 of 1996, Looker, Rogers, and Richards met again

12  in Clarksburg, West Virginia.  This meeting was videotaped.

13  During this meeting, Rogers explained specifically to Mr. Looker

14  and Mr. Richards what the photographs of the blueprints meant.

15         On May 11 of 1996, Mr. Richards and Mr. Looker met at a

16  hotel location.  Again, this meeting was videotaped.  During

17  this meeting, they got together a package, because this package

18  was supposed to be sold to the undercover agent.  The undercover

19  agent was supposed to be a middleman that could sell this

20  package to an unnamed Middle Eastern terrorist group.

21  Q.   This package contained the photographs of the blueprints to

22  which you have just testified?

23  A.   Yes, sir, they did.

24         On September 19 of 1996, Mr. Looker met with the undercover

25  agent.  This is when they negotiated the price that was to be

1    set for this package.  The price was negotiated at $50,000.  Mr.

2    Looker told the undercover agent that he was going to tell Mr.

3    Richards that he only offered $40,000 so that way Mr. Looker

4    could be able to pocket the additional $10,000.

5         On October 11 of 1996, Mr. Looker was arrested shortly

6    after selling these plans to the undercover agent.

7         During this arrest--right prior to the arrest, Mr. Looker

8    took $10,000 of the $50,000 and shoved the money into his

9    long-johns, into his pants.

10   Q.    Let's go to Criminal Number 5:96CR40, the case in which Mr.

11   Johnson and Mr. Lewis are codefendants.  Will you explain to

12   Judge Stamp the evidence that the United States would be able to

13   adduce at trial against Mr. Looker?

14   A.    Yes.  I would be pleased to.

15        On July 30 of 1995, Floyd Raymond Looker, the general of

16   the Mountaineer Militia, again held a training session in Lewis

17   County.  During this training session, there was a man by the

18   name of James M. Johnson, known as J.J. Johnson, in attendance.

19   He was from an unorganized militia in Ohio.  During this

20   training session, he provided Mr. Looker with an explosive

21   device.

22        Shortly after this training session, Mr. Looker advised

23   Okey Marshall Richards that he was in receipt of this explosive

24   device.  He physically showed it to Mr. Richards.  Mr. Looker

25   was keeping it at his residence.

1          On August 9 of 1995, Okey Marshall Richards introduced to

2    Mr. Looker the undercover agent, Steve Francke.  Steve Francke

3    was posing as an explosives expert who had knowledge of how to

4    examine explosive devices.  Mr. Looker, in turn, gave this

5    explosive device to the undercover agent.  The undercover agent

6    gave it to Special Agent J.C. Raffety.  In turn, it was sent up

7    to our FBI laboratory for examination.

8          Also, I just wanted to add, too, at the training session,

9    Mr. Johnson explained to Mr. Looker that if he wanted to

10   purchase these explosive devices at a future time, that he could

11   do so.  He also explained to Mr. Looker that if he were to

12   attach BB's or pellets to the outside of the device, it could be

13   conformed into a fragmentation device.  And a fragmentation

14   device simply means that the BB's that are attached to it could

15   propel out around; it could cause more serious damage to persons

16   or property.

17         On September 7, after the explosive was in the custody of

18   the FBI, we received an FBI laboratory report.  The laboratory

19   division described the improvised explosive device known as

20   IED's as being capable of causing serious injury and/or death

21   and that the probability of death or serious injury would be

22   greatly increased should fragmentations be affixed to the

23   outside of the devices as suggested.

24         In September of 1995, Mr. Looker instructed Richards to

25   contact Johnson and to try to negotiate a deal.  After numerous

1    conversations between Mr. Johnson and Mr. Richards, on December
2    16 of 1995, Mr. Richards traveled to the Cleveland, Ohio area
3    where he purchased 400 of these explosive devices from Mr.
4    Johnson.  Also present at that meeting was Mr. Imam Lewis, who
5    later was described as a middleman between Johnson and the
6    distributor of these devices.
7         A few days later, on December 19 of 1995, Mr. Johnson and
8    Mr. Lewis traveled from Ohio into West Virginia and met with Mr.
9    Richards and Mr. Looker at the Dallas Pike exit outside of
10   Wheeling, West Virginia.  They sold 600 of these devices to them
11   at this time.
12        After this, the devices were sold--Mr. Looker thought the
13   devices were sold to the undercover agent, and Mr. Looker was
14   the middleman, so he received a commission on the sale of these
15   explosives.
16        And, also, we found out that these explosives were
17   unregistered under Title 26.
18   Q.   Let me take you to Criminal Number 1:96CR42, the case in
19   which Mr. Coon is the codefendant.  Will you explain, as you
20   have earlier, to Judge Stamp what the government's evidence
21   would be against Mr. Looker with regard to Count 5 of that case?
22   A.   Yes, sir.  In August of 1995, Mr. Looker instructed Okey
23   Marshall Richards to meet with Mr. Coon and try to attempt to
24   obtain some explosives from him because Mr. Coon, as Mr. Looker
25   described him, was a militia sympathizer.

1    On September 6 of 1995, Okey Marshall Richards traveled to

2    Waynesburg, Pennsylvania from West Virginia and met with Mr.

3    Coon at his residence.  During this meeting, Mr. Coon provided

4    Mr. Richards with 11 sticks of C-4, and he also provided him

5    with explosive-related materials, including electric blasting

6    caps, blasting fuses, firing devices, detonation cord and

7    blasting machines.  Mr. Coon knew that these explosive devices

8    were to be given to Mr. Looker.

9    Q.    Is C-4 plastic explosives?

10   A.    Yes.  C-4 is plastic explosives.

11        Mr. Looker then on September 11 of 1995 phoned--excuse me.

12   He had contact with the undercover agent and negotiated with the

13   undercover agent the sale of these explosives.  But the entire

14   time, the explosives were in the custody of the FBI.

15        Then on January 29, Mr. Looker and Mr. Richards drove to

16   Mr. Coon's residence in Waynesburg, Pennsylvania.  During this

17   meeting, Mr. Coon gave to Mr. Looker and Mr. Richards three 40

18   millimeter grenades.

19   Q.    Is that the kind of grenade that is launched from a

20   shotgun-like launcher as opposed to thrown by hand?

21   A.    Yes, sir, it is.  After he gave them the grenades, Mr.

22   Richards and Mr. Looker drove back from Pennsylvania into West

23   Virginia.

24   Q.    And were the explosive devices that you have described

25   registered as required?

1   A.    Yes, sir.

2   Q.    They were registered?

3   A.    Oh, I'm sorry, sir.  I misunderstood you.  No, they were

4   not.

5            MR. WILMOTH:  That is all I have.

6            THE COURT:  Any cross-examination?

7            MR. CIPRIANI:  No, your Honor.

8            THE COURT:  Mr. Looker, any additions or corrections

9   that you would like to make to the testimony of Special Agent

10  Hoppey?

11           THE DEFENDANT:  Your Honor--

12       (Discussion off the record between Mr. Gallagher and Mr.

13  Looker).

14           MR. GALLAGHER:  May we have a moment, your Honor?

15       (Discussion off the record continued)

16           MR. CIPRIANI:  Your Honor, we would agree that that is

17  a fair summary of what the government's evidence would be in the

18  case.

19           THE COURT:  Is that correct, Mr. Looker?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  All right.  Any additions or corrections,

22  then, that counsel would want to make to anything offered by

23  Agent Hoppey?

24           MR. CIPRIANI:  Your Honor, it is my understanding, and

25  I don't have the indictment in front of me, but as to--with

1  regard to Count 1 and 3 of Indictment Number 43, I believe there

2  was some additional language in the indictment about the

3  so-called targeting federal facilities.  Agent Hoppey made

4  mention of retaliation against the government.  I don't know if

5  that is the exact wording in the indictment.  I think what the

6  wording in the indictment was "In the event of confrontation,

7  invasion of foreign forces or declaration of martial law," some

8  wording to that effect, your Honor.  I am not sure if she stated

9  exactly what was the allegation as to that count.

10            THE COURT:  Mr. Wilmoth?

11            MR. WILMOTH:  I think what Mr. Cipriani said is

12  essentially correct.  I think the agent said it in a different

13  way.

14            THE COURT:  Thank you very much, Agent Hoppey, for

15  testifying here today.

16            THE WITNESS:  Thank you, your Honor.

17            THE COURT:  Mr. Looker, based upon the testimony you

18  just heard from Special Agent Leslie Hoppey, based upon the

19  rights I have gone over with you that you will be giving up by

20  entering guilty pleas in these cases, based upon the Federal

21  Sentencing Guideline implications that you and I have been

22  discussing, I will now ask you with regard to Counts 1 and 3 of

23  Case Number 1:96CR43, how do you plead, guilty or not guilty?

24            THE DEFENDANT:  I plead guilty, your Honor.

25            THE COURT:  And with regard to Count 5 of Case Number

1    5:96CR40(sic), how do you plead, guilty or not guilty?

2              THE DEFENDANT:  I plead guilty, your Honor.

3              THE COURT:  And with regard to Count 5 of Case Number

4    5:96CR42, how do you plead, sir, guilty or not guilty?

5              THE DEFENDANT:  I plead guilty, your Honor.

6              THE COURT:  Now, has the plea--have the pleas that you

7    have just given me to all these counts in all these cases been

8    the result of any threat or coercion or harassment of you by

9    anybody at any time?

10             THE DEFENDANT:  No, sir.

11             THE COURT:  Have the pleas that you have just given me

12   been the result of any promise or any inducement other than

13   those that are specifically set forth in the plea agreement that

14   you signed?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Are you pleading guilty to protect

17   anybody?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Has anybody promised or predicted to you

20   what the exact sentence is going to be other than the binding

21   recommendation that is contained with regard to the 25-year

22   sentence?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Do you understand nobody knows at this

25   time what the exact sentence is going to be until we get the

1   presentence report and review it under the Federal Sentencing

2   Guideline analysis?  Do you understand is that?

3            THE DEFENDANT:  I understand that.

4            THE COURT:  Do you believe that your attorneys, Mr.

5   Cipriani and Mr. Gallagher, have adequately and effectively

6   represented you throughout all of these proceedings?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Do you believe that your attorneys have

9   left anything at all undone that you think they should have done

10  on your behalf?

11           THE DEFENDANT:  No, sir.

12           THE COURT:  And have you or your attorneys found any

13  defense to the charges made in these indictments to which you

14  have entered pleas of guilty?

15           THE DEFENDANT:  No, sir.

16           THE COURT:  Now, are you, in fact, guilty of the

17  crimes charged in Count 1 of case 1:96CR43, Count 3 of Case

18  Number 1:96CR43, Count 5 of Case Number 5:96CR40, and Count 5 of

19  Case Number 1:96CR42?  In other words, did you do it?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  All right.  I will find that the defendant

22  is competent to enter the pleas of guilty to all of these

23  offenses, that the pleas have been freely and voluntarily made,

24  that he is aware of the consequences of these pleas, that the

25  bases in fact for the tendered pleas have been shown under Rule

1  11, that the elements of the crime have been established.  I

2  will accept the pleas of guilty to Counts 1 and 3 of Case Number

3  1:96CR43, Count 5 of Case Number 5:96CR40, and Count 5 of Case

4  Number 1:96CR42.  And I will defer adjudging the defendant

5  guilty until a later time, probably the time of sentencing.

6          I would like to ask the United States Probation Officer to

7  please begin the preparation of a presentence report and if

8  restitution is implicated, address that, as well.

9          Mr. Looker, you should meet with the United States

10  Probation Officer, it may be Mr. Terry Huffman, the gentleman

11  seated there beside you or behind you; it may be another

12  probation officer assigned to this case.  But in any event,

13  assist the officer in the preparation of a meaningful

14  presentence report to me.  And you should do nothing between now

15  and the time of sentencing to get into any further difficulty.

16          This defendant is presently in custody and will be remanded

17  to the custody of the United States Marshal at this time.

18          Mr. Wilmoth, anything in addition we need to take up?

19                  MR. WILMOTH:  Nothing for the United States, your

20  Honor.

21                  THE COURT:  Mr. Cipriani and Mr. Gallagher, anything

22  further we need to take up?

23                  MR. CIPRIANI:  No, your Honor.

24                  THE COURT:  Thank you very much.

25          (The hearing was concluded at 4:55 p.m., 8-13-97)

**JENNIFER VAIL-KIRKBRIDE, RPR-RMR**
**REGISTERED PROFESSIONAL REPORTER**
**P.O. BOX 42, WHEELING, WV  26003**
**(304)-233-0661**

## CERTIFICATE

1
2
3
4
5
6          I, Jennifer Vail-Kirkbride, Registered Professional
7    Reporter and Official Reporter of the United States District
8    Court for the Northern District of West Virginia, do hereby
9    certify that the foregoing is a true and correct transcript
10   of the proceedings had in the above-styled action on
11   August 13, 1997, as reported by me in stenotypy.
12         I certify that the transcript fees and format comply with
13   those prescribed by the Court and the Judicial Conference of the
14   United States.
15         Given under my hand this 18th day of August, 1997.
16
17
18   Official Reporter, United States
19   District Court for the Northern
     District of West Virginia
20
21
22                        - - -
23
24
25

**JENNIFER VAIL-KIRKBRIDE, RPR-RMR**
**REGISTERED PROFESSIONAL REPORTER**
**P.O. BOX 42, WHEELING, WV  26003**
**(304)-233-0661**