IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

U.S. DISTRICT COURT
FILED AT WHEELING, WV
OCT - 3 1997
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

UNITED STATES OF AMERICA,
    PLAINTIFF,

v.                               CRIMINAL NO. 1:96CR43-02

JAMES R. ROGERS, a/k/a Rich,
    DEFENDANT.

## RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

Comes now the United States of America and William D. Wilmoth, United States Attorney for the Northern District of West Virginia, by David E. Godwin, First Assistant United States Attorney, and responds to defendant's motion by stating:

1) The defendant's motion does not state the evidence in the light most favorable to the United States; to the contrary, it restates factual arguments made on the defendant's behalf at his trial.

2) The crime charged and proven against the defendant in Count Two of the indictment is one of preparation and the fact that no actual assault plan was made or that no actual injury was inflicted on the F.B.I. facility is immaterial.

3) The defendant argues in his motion that he only intended that his materials would be used

178

in the event the United States of America ceased to exist as the governing authority. There is no evidence in the record of this case that establishes such to be the fact.

4) According to the evidence adduced at trial in the form of the videotape of the meeting on March 7, 1996, the defendant indicated that the use of the F.B.I. facility for the purpose of the smart cards or digitized fingerprint identity documents would be a provocation for inflicting an injury on the facility. The use of such identity documents and any role the F.B.I. C.J.I.S. facility may have in that is a political issue. As the defendant stated such it was an issue pending before the West Virginia Legislature during a recent session. The use of violence to further political goals is "terrorism."

5) In the conversation on March 7, 1996, the defendant contemplated that he was assisting in preparing for the use of violence against the facility. Why else would he have indicated that he had "lost sympathy for those people" and then suggest, in the alternative, that fewer people worked there at night, clearly implying that an attack at night would result in less loss of life. And why else would he have commented that it would take a "big one," referring to an explosion.

6) That the defendant contemplated that he was involved in preparations to injure the facility were clearly indicated in his later conversations that he could provide a force of ten men who were trained and willing to assist in an assault on the facility.

7) The defendant never claimed that his efforts were only aimed at the event of the total breakdown of lawful, constitutional authority. To the contrary, the evidence establishes that he viewed federal agencies such as FEMA and the F.B.I. as instrumentalities of the political authority he was preparing to oppose.

8) The defendant has not shown any ground or basis for the granting of a judgment of acquittal.

Accordingly for the reasons stated herein and such other reasons as may appear to the Court from the record herein, the United States requests that the Court deny the defendant's motion.

Respectfully submitted,

UNITED STATES OF AMERICA

WILLIAM D. WILMOTH
UNITED STATES ATTORNEY

By: *David E. Godwin*
David E. Godwin
First Assistant United States Attorney

CERTIFICATE OF SERVICE

I, David E. Godwin, First Assistant United States Attorney for the Northern District of West Virginia, do hereby certify that the foregoing RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL was served upon the defendant by placing a copy thereof in the United States Mail, postage prepaid, addressed to Gary B. Zimmerman, counsel for James R. Rogers, Suite 304, 100 Ross Street, Pittsburgh, PA 15219

Dated this 3rd day of October, 1997.

*David E. Godwin*
David E. Godwin
First Assistant U. S. Attorney
Post Office Box 750
Clarksburg, WV 26302-0750

## Memorandum



To : SAC, PITTSBURGH (100A-PG-61162) (P)    Date  5/18/95

From : SA J. C. RAFFETY

Subject: MILITIA ACTIVITIES
PITTSBURGH DIVISION
DOMESTIC SECURITY/TERRORISM
(OO: PITTSBURGH)



For information, on 5/5/95, and 5/17/95, MARSHALL RICHARDS (protect), 412 Haymond Highway, Clarksburg, WV (304) 622-5926, described as a white male, DPOB 12/9/53 Clarksburg, WV, SSAN 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, provided the following voluntary information:

RICHARDS advised he has been acquainted with FLOYD RAYMOND LOOKER, JR., aka Ray Looker, adjutant general, The Mountaineer Militia (TMM), since approximately 1990.

LOOKER became acquainted with RICHARDS through attempts by LOOKER to establish a conservative newspaper in the Clarksburg, WV, area. LOOKER had approached former West Virginia State Senator JAY WOLFE, who has a reputation for supporting conservative issues, and whom RICHARDS served as a campaign worker in past elections.

LOOKER and WOLFE became estranged, due to LOOKER'S personality and extreme views on current political and social issues. RICHARDS advised that LOOKER seeks title and recognition and believes himself a leader, despite personal characteristics which alienate him from others.

RICHARDS stated that LOOKER'S wife, a Taiwanese national identified as CHI-ANNA LOOKER, nee Chen, was then attending Alderson-Broaddus College, Phillippi, WV, but withdrew because of financial difficulties.

RICHARDS advised that LOOKER, who had no employment in Clarksburg, WV, relocated to the Niagara Falls, NY, area and obtained employment as a security guard at Sentrex Security Services. This move to New York also placed LOOKER and his wife in close proximity to her relatives in the Toronto, Canada, area.

JCR/fbe
(2)


DEFENDANT'S EXHIBIT

100A-PG-61162

RICHARDS stated that he helped move LOOKER to New York and encouraged him to expand his educational background. LOOKER, while in Niagara Falls, NY, took courses at a real estate sales school in Buffalo, NY, and became a certified appraiser.

RICHARDS maintained his contacts with LOOKER, and in 1992, as a result of the expanding trade market with the People's Republic of China (PRC), RICHARDS and LOOKER, through contacts established by LOOKER'S marriage to CHI-ANNA LOOKER, incorporated the Sino-American Development Company, a New York corporation. The purpose of the Sino-American Development Company was to establish a foundation to expand language, cultural relations, and business association between the United States and China. To this end, RICHARDS and LOOKER located a building for this foundation at the site of the old Devoe College in Buffalo, NY. It was RICHARDS' and LOOKER'S intention to staff the foundation with China experts and offer training to U.S. and Chinese business education and/or government executives, which would pay for those services.

CHI-ANNA LOOKER, reportedly the daughter of a high-ranking officer in the Taiwanese/Republic of China military, and through her family connections, arranged an introduction for RICHARDS and LOOKER with Dr. (FIRST NAME UNKNOWN) (FNU) FU, a Taiwanese national currently residing in Buffalo, NY. RICHARDS stated that FU has a Ph.D. in chemistry or metallurgy and reportedly has strong political/economic ties through marriage with PRC officials and business elites in Shenczhen (phonetic) Province in mainland communist China.

RICHARDS advised that FU formerly resided in France following World War II and relocated to the United States a number of years ago.

RICHARDS stated that the contact with FU was to obtain financial and/or personal assistance in getting the Sino-American Development Company "off the ground." RICHARDS stated, however, that because of LOOKER'S abrasive and inexperienced manner, Dr. FU did not associate himself with the project.

RICHARDS stated that shortly thereafter, LOOKER was fired from his job at Sentrex Security Services, again because of personality conflicts, and returned to Clarksburg, WV, in approximately the spring of 1993, where he was employed for a short period of time by MICKIE PETTITO, Commercial Realty, Clarksburg, WV, as an appraiser.

2

100A-PG-61162

RICHARDS advised that shortly after leaving that employment, LOOKER associated for a short time as an appraiser for a realty company, believed to be ERA, Route 20, Clarksburg, WV. RICHARDS stated that the brother of the realtor who operates that business is JAMES A. McCLAIN, 506 Elk Avenue, Stonewood, WV. McCLAIN is a part-time minister, and RICHARDS believes he met LOOKER through McCLAIN'S brother and their mutual interest in religion, as both are ministers.

RICHARDS advised that through contact with McCLAIN, LOOKER was introduced to GENE ALAN BOARD and RAYMOND G. VALLORANI, who operate Photocraft, Inc., P.O. Box 2076, Fairmont, WV, and who publish The Bulletin Board, a weekly newspaper distributed at supermarkets and other outlets, which contains ads for cars, property, employment opportunities, etc., and where McCLAIN is employed.

RICHARDS advised that GENE ALAN BOARD is a "behind-the-scenes" player in the militia movement and arranged a September or October 1994 meeting at the Peiking Duck Restaurant, Clarksburg, WV, wherein the militia concept was discussed and promoted with LOOKER. Present at this meeting were JAMES A. McCLAIN, RAY LOOKER and wife CHI-ANNA LOOKER, DAMON BLACK and wife SHELLY BLACK, and MARSHALL RICHARDS. RICHARDS was invited to the dinner as a guest of LOOKER.

RICHARDS stated that at this meeting, DAMON BLACK, described as a white male, late forties to early fifties, 6'1" to 6'2" in height, large build, dark complexion, with black hair and mustache, spoke of his familiarity and association with the Arizona, Colorado, and Montana militia groups.

RICHARDS stated that BLACK is a marketing executive with a background in real estate and automobile dealerships. BLACK reportedly is associated with A.R.G. Marketing, Inc., a North Carolina firm, telephone number (704) 896-7084.

BLACK spoke to the group about militia infrastructure, security operations, and methodology for raising money to cover operational expenses. BLACK reportedly owns a ranch in Colorado but is on the road quite a bit due to business. SHELLY BLACK is described as a white female, age late thirties, 5'8" in height, 130 pounds, shoulder-length blonde hair, well groomed and attractive.

3

100A-PG-61162

During this meeting, BLACK advised that the Arizona and Montana militia units were "key" groups. The Michigan Militia Organization was also mentioned in passing as a growing organization.

On this occasion, BLACK also discussed the need to develop a number of weapons caches throughout the region, in the event the militia was activated. BLACK is a strong advocate of maintaining a large supply of weapons and ammunition.

In mid November 1994, the group held a second meeting at the real estate office, Route 20, Clarksburg, WV. In attendance at this meeting were JAMES A. McCLAIN, RAY LOOKER, DAMON BLACK, and MARSHALL RICHARDS. The topic of the meeting closely followed the earlier meeting, with BLACK being more dynamic in his presentation to LOOKER and others. It was apparent at this meeting that LOOKER was committed to establishing a militia unit in West Virginia.

Following the meeting, DAMON BLACK discussed overall militia operations privately with RICHARDS and advised that a national coordinating committee was being established to facilitate communications and coordinate a command over all the "independent" militia groups. BLACK invited RICHARDS to visit his Colorado ranch at some time in the future.

RICHARDS advised that this was the point in time where he, RICHARDS, obtained employment in the Lima, Ohio, area and lost day-to-day contact with LOOKER, because of his absence.

RICHARDS did, however, maintain his residence in Clarksburg, WV, and returned to visit his family on weekends.

During these weekend visits, RICHARDS advised he would often contact LOOKER and was aware of his, LOOKER'S, assuming the adjutant general role in The Mountaineer Militia (TMM).

Early on, LOOKER approached RICHARDS to assume the position of intelligence/security officer for TMM. RICHARDS declined, citing employment obligations in Ohio. LOOKER, however, did continue to relate to RICHARDS the TMM status regarding development and recruitment.

LOOKER did confide in RICHARDS that he approached several members of the West Virginia Army National Guard (WVANG) to obtain assistance in weapons, self-defense, and explosives

4

100A-PG-61162

training. LOOKER stated that he had been successful in recruiting some members of the WVANG.

LOOKER has indicated to RICHARDS that he, LOOKER, has been advised by DAMON BLACK that automatic weapons are needed and should be hidden in caches throughout the area. BLACK has also advised that illegal weapons and explosives should be kept in a secret location other than the members' residences, as they, the weapons, will not be located if authorities search the residences of militia members.

LOOKER advised RICHARDS that TMM has conducted classes for members, instructing them how to store weapons and ammunition for extended periods of time without damage from the elements.

RICHARDS advised that in approximately February or March 1995, LOOKER requested him to teach TMM members how to construct explosives from common household products and to assemble timing devices to be utilized in detonating such explosives. LOOKER has also asked RICHARDS how to acquire C-4 explosive charges.

RICHARDS refused, advising that he did not want to engage in any conduct which might be illegal, and further indicated he was concerned that any TMM member could commit a criminal act without RICHARD'S knowledge for which he, RICHARDS, might be held responsible.

LOOKER told RICHARDS that such training was necessary, should the militia declare war on the United States Government as a result of continued Government violation of the United States Constitution. RICHARDS was also asked to identify specific types of explosive devices which could be used against a particular target, i.e., dams, communications towers, bridges, etc. RICHARDS again refused, telling LOOKER that he was concerned about breaking the law. Though upset with RICHARDS' refusal, LOOKER maintained his friendship with RICHARDS.

LOOKER has also advised RICHARDS that DAMON BLACK reportedly has said that it is imperative that the various militia organizations work independently, but must also operate in concert. BLACK has also advised LOOKER that the only way to get strength is through explosives and weapons.

100A-PG-61162

   LOOKER has recently told RICHARDS that TMM has implemented a plan for the storage of weapons throughout the region, as previously described. LOOKER did not state whether illegal automatic weapons have been acquired.

   LOOKER has also advised RICHARDS that DAMON BLACK has a former Irish Republican Army (IRA) member who will provide assistance in training of TMM members. LOOKER has also indicated that explosives are stored at several locations in southern West Virginia.

   RICHARDS advised that LOOKER has focused all training exercises towards teaching guerrilla warfare techniques.

   On 5/17/95, LOOKER invited RICHARDS to accompany him, LOOKER, to a meeting scheduled for Sunday, 5/21/95, in the vicinity of Zanesville, Ohio. This meeting is at the invitation of the Ohio militia commander, who refused to discuss details on the telephone with LOOKER while extending the invitation.

   RICHARDS opines that the meeting may be to discuss possible operations against Wright-Patterson Air Force Base, Dayton, Ohio, due to belief by Ohio militia members that "black surveillance helicopters" are stationed at that location.

   LOOKER has again asked RICHARDS to assume leadership position in TMM. RICHARDS, who is fearful of possible future violence by TMM, has indicated to LOOKER that he will reconsider, but has not made any commitment. RICHARDS has found out that TMM has established a training base on approximately 600 acres of rural land in Lewis County, WV.

   This land is owned by a ROBERT WOOFTER, reportedly a retired U.S. Army sergeant major. LOOKER has told RICHARDS that TMM has already constructed a sniper range at that location, with target distances fixed from 100 to 800 yards. LOOKER identified WOOFTER as a member of TMM.

   LOOKER also advised that FRANK MASIARCZEK (phonetic), whose residence and strip lounges were raided by Federal agents several months ago, has also become a member of TMM. MASIARCZEK told LOOKER that FBI, IRS, and ATF agents raided his house and removed weapons and $350,000 cash from his safe. MASIARCZEK told LOOKER that he does not make his money from "whores or drugs."

6

100A-PG-61162

LOOKER advised that the recent publicity about militia groups as a result of the Oklahoma City bombing has resulted in between 20 and 30 percent of TMM membership to "drop from the rolls." LOOKER said, however, a number of new prospects and applicants have been motivated to join TMM, and LOOKER described these as dedicated to the cause. LOOKER has also allegedly received contacts from professionals wishing to donate funds to TMM, but not get directly involved. RICHARDS advised that LOOKER has not identified to him specifically the number of members currently in TMM, but has indicated indirectly that the numbers are between 500 and 600 and that they are operational in 37 of the 55 counties of West Virginia.

RICHARDS was advised by the writer that information provided by him to the FBI would be noted and made a matter of record, but that under no circumstances was he to consider himself acting on behalf of the writer or the FBI. He was further advised that the FBI could not give any direction to his efforts with regard to The Mountaineer Militia, and further, that he would be personally responsible for any criminal violations if he engaged in such, and that his providing voluntary information/intelligence concerning TMM or its members would not immunize him from any potential prosecution.

RICHARDS advised that he understood the above admonition and stated he would continue to voluntarily provide information to the FBI, due to his personal belief that the militia posed a serious threat to the public safety.

TOTAL P.08