IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

V.

JAMES R. ROGERS

CRIMINAL NO.
1:96 CR 43-02

**MOTION FOR A NEW TRIAL**

And Now Comes the defendant, James R. Rogers by his attorney Gary B. Zimmerman and moves pursuant to Rule 33 of the Federal Rules of Criminal Procedure for a New Trial.

1. On August 25, 1997 a jury found the defendant guilty of violating 18 U.S.C. 2339A, because he provided photographs of blueprints of the FBI Criminal Information Center in Clarksburg, West Virginia, to Raymond Looker and Okey Marshall Richards, which were to be used in preparation for the offense of damaging the Center.

2. Although the defendant had been charged with conspiring with Mr. Looker

to violate 18 U.C.A. 2339A, the jury found him not guilty as to that charge.

3. The evidence at the trial of the case established that there were two separate segments of activity upon which the government proceeded at trial.

    A. The first segment was where the defendant became involved with the Mountaineer Militia and his transfer of the photographs of the blueprints to Looker and Richards. The governments evidence clearly established that his intent was that the photographs remain in the possession of Richards, the government operative, until in the jargon of the Militia, "the shit hit the fan", which meant when the leaders of our government finally were overcome by the new world order and suspended the constitution and declared martial law.

    B. The second segment involved Looker's plan to sell a package of information, including the photographs the defendant had given to Richards, to a thrid party. Looker's plan was to sell this material to a group who wouldld in fact damage the FBI Center. The evidence was crystal clear that the defendant was unaware of this activity.

2. The defendant raised the defense of entrapment and the jury was charged on the law of entrapment by the court.

3. FBI Agent J.C. Raffety testified that he had been contacted on two separate occasions in the spring of 1995 by Okey Marshall Richards who wanted to know if the FBI had any interest in investigating the Militia. Raffety testified that Richards informed him that he was familiar with Mr. Looker who was the leader of the Mountaineer Militia. Raffety further testified that Richards told him that he had been approached by Looker to join the militia but had not done so. Finally Raffety stated that Richards told him that he was going to join the militia just to take a peek to see what they were doing. Raffety testified that he informed Richards that the FBI was not interested in the militia because they were not aware that they were engaged in any criminal activity.(TT 7-12) Raffety advised Richards that in the event something should come to your attention that you feel indicates there is criminal activity to please contact him. (TT-89, 94)

4. Raffety testified that shortly after this discussion Richards began to bring him information indicating that the militia was engaged in criminal activity and from that point on Richards became a paid informant operative for the FBI. (TT 10)

5. Raffety initially on testified August 14, 1997 that he did not make a written report of these first two meetings/conversations with Richards (TT -78). Subsequently, Agent Raffety testified that he in fact did prepare a report on the initial interviews of Richards and promised to find it/them and give them to the defendant and his counsel. (TT -103-104, 117, 210-211). At the time that Agent Raffety's testimony was concluded on August 15, 1997 he had not produced these reports to the defense. (TT 210-211)

6. Okey Marshall Richards testified that he knew Looker since 1990 and that he had been involved with him in a number of matters. He testified that he first became aware of the Mountaineer Militia and Mr. Looker's participation in the fall of 1994 when a friend of his by the name os Joe Stirewalt showed him a newspaper article about Looker and the Militia. (TT 221, 437). He testified that he definitely became aware of the Militia and Looker's activities to form the Militia and his position as General by the spring of 1995, because Looker called his home several time in an attempt to enlist him in the Militia. (TT 221-222) He testified that he was not personally interested in the militia because:

> "I didn't feel good about it. I didn't feel good about what the militia stands for. I think that it is--I think it is a dark day in our country that people feel that they have to--that they have to--that they can't trust our Constitution as it was written by our forefathers, that our country--our government has been sold out, which is what they believe, and overtaken by a foreign power." (TT222)

7. Thereafter, Okey Marshall Richards testified to a variety of activities and how it came to be that the defendant transferred the photos of the blueprints of the FBI Center to him. He advised that he had many conversations with the defendant about the need for the plans and that the defendant was willing to help him get them. Additionally the jury heard many tape recorded conversations between the defendant and Richards and sometimes Mr. Looker was part of these conversations. It was clear that in all of these conversations, Richards guided the topic of discussion and led the defendant into many declarations.

8. On August 20, 1997 at the end of the court day, Agent Raffety handed a 7 page memorandum to counsel for the defendant which is dated 5/18/95 and was prepared by the agent. This memorandum summarizes the initial discussions/ meetings between the agent and Richards dated 5/595 and 5/17/97. (This

memorandum is attached as defendants exhibit A)

9. The examination of Richards concluded at the beginning of the court session on August 21, 1997. The remainder of the governments case and all of the defendant's case was concluded on August 21, 1997. Closing arguments and the Courts charge was given and the jury began to deliberate on that day.

10. Beginning on August 21, 1997, Michael Shaffer of Appalachian Investigations attempted to verify certain information from the FBI memorandum. He was unable to do so until after the jury had reached their verdict

11. The memorandum reveals that Richards, at the insistence of Looker, met with Mr. Damon Black, Shelly Black his wife as well as, James A. McClain, Gene Alan Board and Raymond G. Vallorani in the spring of 1993 and had extensive talks with them about forming a militia. Richards related to Raffety that Black was a major militia operative form North Carolina and Colorado and he was giving the others advise and instructions about forming the militia and what their goals were. These goals were not peaceful nor lawful. Richards told Raffety that Black had invited him to his ranch in Colorado so that they could better formulate militia plans on a national

scale. Finally Richards told Raffety that Board was a major behind the scenes player in the militia movement.

12. Investigator Shaffer conducted a telephone interview with Mr. Black and others concerning these meetings and the content of the discussions. He has learned that the information related to Raffety by Richards is completely false. In fact according to Black, the only person at these meetings to mention the militia was Richards. He advised all that he was a former Navy Seal, had served in Vietnam and was associated with the intelligence community of the United States. These meetings according to Black were for the purpose of forming a Christian School. Nothing came of the school idea as Richards dominated the meetings with talk of formulating a militia. All others with the exception of Looker abandoned their relationship without further plans. Black indicates that he is a businessman and has no ties to the militia movement and did not ever discuss forming a militia with Looker or anyone else. Mr. Shaffer is attempting to secure affidavits from the people who attended these meetings.

13. The defendant submits that the information now available from Damon Black and the others who attended these meetings, will establish that Okey Marshal Richards was a person who helped form the Mounaineer Militia, gives rise to a

much more pursuasive claim by the defendant that he was entrapped. This evidence does more than further impeach Richards. This evidence if known by the jury would have provided the basis for a vercidt of not guilty.

14. On the face of the FBI report in question, which was withheld from the defense until the last possible monent, when it was impossible to verify any of the facts contained therein, it seems that the FBI did not know that Richards was part and parcel, any in all probability, the moving force, behind the the Moutain Militia. The defendant submits that the government had a duty to verify the information of a person as shady as Richards to make sure that the was not selling them a bill of goods. They had a duty to investigate his background and the facts he related to them about these meetings. They did not do so therefore, their malfeasance deprived the defendant of exculpatory information which would have changed the outcome of this case. The defendant submits that the Government's malfeasance and negligence is a violation of *Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed 2d 215 (1963)* and *Giglio v. United States, 405 U. S. 150, 92 S.Ct. 763, 31* L.Ed.2d 104 (1972). The defendant submits that this evidence if presented to the jury would reasonably be taken to put the whole case in such a different light as to undermine confidence of the verdicy thereby warranting a net trial.

15. The forth circuit has held in the case of *The United States v. Trevino, 89 F.3d 187, 189 (1996)* that evidence is favorable under Brady, not only when it would tend to exculpate the accused, but also where it can be used to impeach government witnesses. Kyles *v. Whitley, 514 U.S. 419, 431, 115 S.Ct. 1555,1556, 131 L.Ed. 2d 490 (1995)*, and *Hoke v.* Netherland, 92 F.3d 1350, 1356 (4th Cir. 1996) hold that due process is violated if material evidence favorable to the defense is not disclosed, irrespective of the good faith or the bad faith of the prosecution.

16. The defendant submits that an evidentiary hearing on this motion will satisfy the requirements as set forth in *United States v. Curtis, 988 F.2d 1355, 1359 (4th Cir. 1993)* mandating a new trial based on this newly discovered evidence. (1) The defendant will be able to show that this newly discovered evidence should have been known to the government and they should have provided it to him in a timely fashion. (2) That the evidence is in fact newly discovered by the defendant after the trial was concluded. (3) That the defendant acted with due diligence. (4) The new evidence is not merely cumulative of impeaching. (5) The new evidence is of such nature, that on a new trial the newly discovered evidence would probably produce an acquittal.

WHEREFORE, the defendant requests this Court issue an order setting an

evidentiary hearing on this Motion for a New Trial and there after issue an order granting the defendant a New Trial.

Respectfully Submitted,

*/s/ Gary B. Zimmerman*
GARY B. ZIMMERMAN
Attorney for the Defendant
Suite 302
100 Ross Street
Pittsburgh, Pa. 15219
412-566-2133
PA. ID. NO. 10080

Certificate of Service

I hereby certify that I have been served a true and complete copy of the

Defendant's Motion for a New Trial to the following by First Class United States Mail on the 2nd day of October 1997.

David Godwin
Assistant United States Attorney
PO Box 591
Wheeling, West Virginia 26003-0011

William Cipriani
Attorney for Floyd Looker
634 Charles Street
Wellsburg, West Virginia 26070

Gary B. Zimmerman
Suite 304
100 Ross Street
Pittsburgh, PA 15219