U.S. DISTRICT COURT
FILED AT WHEELING, WV
NOV 21 1997
NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATE OF AMERICA,
    Plaintiff,

V.

FLOYD RAYMOND LOOKER,
    Defendant.

Criminal Actions No.5:96CR40
No.1:96CR41
No.1:96CR42
No.1:96CR43

**DEFENDENT'S PRO SE
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF MOTION FOR
PLEA OF NOLO CONTENDERE**

In further support of his motion the defendant provides the following:

I.    Prosecutorial Misconduct Extended To Lying To The Media:

II.    Prosecutorial Misconduct Extended To Lying To The Court:

III.    Judicial Misconduct:

IV.    Presidential Mandate: Obstruction Of Justice.



# MEMORANDUM IN SUPPORT

*I.*   Prosecutorial Misconduct Extended To Lying To The Media:

On 10-11-96   The prosecution reported in the media that informant was a disenchanted Militia member.

*True is* -   He was not a disenchanted member, informant was neither an informant or a cooperative witness, but a well paid agent for the FBI. He was sent forth to discover, or create, illegal activity.

On 10-14-96   The media presented an outline of activities as to what happened:

a.   In June 1995 . . . Ray Looker identified the FBI complex as one of three targets and recruited a firefighter to get copies of blueprints.

*True is* -   Mr. Richards was the chief of intelligence and instructor for the class. It was he under FBI supervision when "targeted facilities" and recruited Mr. Rogers.

b.   On March 24, 1996 - The bomb rattles the windows of the farm house on the property.

*True is* -   Mr. Woofter, at trial indicated that no windows rattled.

Page 2 of 13

    c.  On May 25, 1996 - Looker introduces informant to Phillips.

        *True is* - Both Mr. Richards and defendant attest that Mr. Richards and Mr. Phillips met at the training camp while defendant was assisting in training activities.

    d.  On May 28, 1996 - Phillips provided a list of ingredients to Looker . . .

        *True is* - Mr. Phillips actually provided Mr. Richards with a list that Mr. Richards had requested. Mr. Phillips did not even expect defendant at the meeting.

    e.  On August 25, 1996 - Looker and informant meet Moore again.

        *True is* - The defendant was not at this meeting.

On 10-18-96  The media reports that seven men accused in a plot to blow-up the FBI complex . . . 200 tapes to be exact. And informant allegedly sat in on conversations in which militia member identified the FBI center and two other federal targets to be neutralized in the event of a battle with the government.

        *True is* - The prosecution has yet to identify anyone who was going to blow up the FBI complex before it was occupied by enemy hostile forces. On December 4, 1996 the prosecution revealed 430 tapes to the investigation. Th so-called meeting was a class Mr. Richards taught as chief of intelligence. No one remembered the contents of this class until the media reported it in 1996.

On 11-9-96 ... placed explosives near the FBI center ... sold to an agent posing as a middleman for a terrorist organization. Provided a complete picture of the FBI center, underground computer center and underground utilities.

*True is* - The prosecution has yet to prove that any explosives were placed near the FBI center ... that the agent - Steven Francke, ever posed as a middleman for a terrorist group, or that the information contained a complete picture of the FBI center.

Mr. Wilmoth stated that the militia were not targeted for their anti-government beliefs, but said the government is committed to prosecuting people or groups "seeking to further political or social goals through violence and force."

*True is* - The prosecution has yet to prove that defendant engaged in any anti-government behavior or that defendant sought to further any political or social goal through violence or force.
In court Mr. Godwin also accused the defendant of anti-government activities and beliefs, but has yet to prove them.

On 6-13-97 The media reported that the militia had targeted Rockefeller and Greenspan for killing.

*True is* - This information was heresay evidence related by Mr. Richards to the FBI and are not admissible in court. Seven days later the prosecution moves the court to prevent further disclosures of these heresay documents. Court recommendations and rulings on 6-27-97 and 7-25-97 deny defendant his application for habeas corpus and motion to dismiss indictments.

On 7-31-97   The court rules extra-tight security measures for the trial.

*Fact is* -   Defendant submits that such measures were designed to enhance a hostile environment in the minds of the media and the jury.


IN ALL OF THESE MEDIA REPORTS THE PROSECUTION OFFERED INFORMATION WHICH WAS A COMPOSITE OF LIES DESIGNED TO BE PREJUDICIAL TO THE DEFENDANTS AND HAD NO ELEMENT OF TRUTH IN THEM.

## II. Prosecutorial Misconduct Extended To Lying To The Court:

Pre-Trial Hearing On Motions:

U.S. Attorney's response to defendant's allegations that this illegal police action was to put some teeth in the anti-terrorist law: *It was selected for use in this case in or around September of 1996*.

Defendant's Response To A USA's Response:

a. Mr. Richards started talking about the situation on middle eastern and his view of terrorists in December 1995.

b. FBI agent Steven Francke spoke of the anti-terrorist law in June 1996. Agent Francke never stated he was posing as a middleman for any one, and never for a middle eastern or any other type of terrorist organization.

Prosecution stated that Looker contacted Mr. Francke - They knew this was not true when confronted with this misstatement of a material fact they rebutted with a further lie

that Looker called Mr. Johnson to arrange the March 9th transaction. Audio's between Mr. Richards and Mr. Johnson on 2-17-96; 2-22-96; 3-4-96 and 3-8-96 <u>refute</u> this lie.

Prosecution also alleged that defendant called Mr. Francke and met with him on several occasions and arranged to receive a call from Mr. Francke at an agreed upon time. This too is a lie. Defendant never had the means to contact Mr. Francke, any meetings were arranged between Mr. Francke and Mr. Richards before Mr. Francke contacted defendant. In every meeting Mr. Richards called defendant and informed him about the meeting and instructed him on what to say. The agreement to receive a phone call from Mr. Francke was arranged and agreed upon by Mr. Francke and Mr. Richards. Mr. Richards then instructed defendant as to what the phone call was about and instruct him what to say. Mr. Richards drove defendant to the airport and tutored him as to what he was to say.

In all of this the defense never objected to anything the prosecution said even though the defendant informed him that these were lies about material facts. Defense lawyer waited 3 weeks before he responded, and rather then object officially on record, he wrote the prosecution attorney and they spoke on the telephone. The prosecutions response to the court was by letter - not on the record, and the response itself was a lie. Defense attorney was made aware of these lies and again refused to respond. Three weeks after that defendant no choice but gave up trying to get his lawyer to challenge these.

In this same letter, dated June 5, 1997, Prosecution states that these dealings were directly between Mr. Looker and the agent. This again is a lie. Close examination of the facts will reveal that all dealings were between Mr. Richards and Mr. Francke with Mr. Richards working primarily for Mr. Francke to bring about the desired result for the FBI.

Prosecutorial misconduct continued throughout this entire judicial process as the U.S. Attorney and his assistant U.S. Attorney failed to provide condor toward the tribunal, operated in a manner less than favorable to the defense and counsel, and engaged in grass violations of misconduct, towards the court and towards the media. The serious breach of confidentiality in releasing heresay information to the media and to the court were all violations of the prosecution duty of condor to the court.

**The defendant submits that the government is not, and has not honored their duty to the court. The government has not followed the law in its desire to seek the truth as the supreme court has directed that prosecutors do.**

In Brauston vs. U.S., 93SCt.595; U.S. vs. Snyder, 428F2d520, 91SCt.139 and U.S. vs. Manfredonia, 414F2d760: The courts have held that the oath that they take (Prosecuting Attornies) is not an idle formality and, by providing for punishment for these who violate the oath, seeks to deter similar conduct by others, (Snyder, ID.).

In April 1995 FBI Director Louis Freech informed Congress that the FBI was taking a "proactive" investigative role against militias in America. Defendant believes that instructions were issued to field units to assume a proactive role ingoing after the militias. This memorandum, or instruction was never provided to defendant, as he request of his lawyer.

Mr. Raffety, case agent, submitted a memorandum to the SAC, Pittsburgh office of the FBI on 5-18-95 indicating that he and Mr. Richards had entered into an unwritten agreement for the investigation of the West Virginia Mountaineer Militia. This document was never disclosed throughout this entire judicial action to the defendant or his counsel. This memorandum indicates that Mr. Richards was furnishing the FBI information on the

W.V. Mountaineer Militia as early as November and December of 1994, Even before there was such an organization. These reports continued throughout the winter and into the spring of 1995 before the bombing of the Federal Building in Oklahoma City and even before there was such an organization in West Virginia.

The FBI and the prosecution lied when they said the investigation began because of statements made at a training camp on June 4, 1995. Statements that informant himself made to the groups as the chief of intelligence and instructor to the group.

Defendant submits that the FBI instructed Mr. Richards as to the content of his training class.

> *Rule 3.3,* Candor towards the tribunal.
> (a) A lawyer shall not knowingly:
> (1) Make a false statement of material fact to a tribunal;
> (4) Offers evidence that the lawyer know to be false. If the lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.
>
> *Rule 3.4,* Fairness to opposing party and counsel.
> <u>A lawyer shall not:</u>
> (a) Unlawfully obstruct another' party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value or assist another person to do any such act.

The FBI and the prosecution lied to the court and to the people of America when they insisted that Mr. Richards was: 1). a cooperative witness, 2). an informant, and 3). a disenchanted member of the militia.

It is clear that Mr. Richards was none of these. He was and is a paid agent of the FBI, <u>who was inserted into the organization to create criminal activity and to destroy the a constitution-right militia.</u> That Mr. Richards was operating under the control and supervision of the FBI is not disputed. That he was paid by the FBI to create criminal activity and destroy the militia in violation of the 1st Amendment to the constitution of the United States is also evident from subsequent conduct of this agent for the FBI and his supervisors.

That the FBI waited five months before recording "selective" conversations while they lay a foundation for alleged criminal activity is also clear from the record.

The fact that defendant was not needed for the FBI to expose alleged activity seeks of selective prosecution in that defendant was selected for the invidious reason that he was exercising his constitutional right to form a militia. (US vs Bell 113 CA3 (pa) 3d,345,1997)

In Stauffer (38F3d1103) law enforcement agents should not be allowed to structure sting operations in such a way to maximize the sentences imposed on defendants.

It is clear that each of the activities that occurred happened because the FBI created them in order to further enhance sentencing of defendant, and took unfair advantage of defendant's financial condition. Although defendant admits that employment in West Virginia is marginal at best, it was further hampered because of the activities of the government.

This issue was addressed in defendant's writ of habeas corpus and motion to dismiss which the court refused to consider.

### III. Judicial Misconduct:

Defendant submits that the court errored as follows:

a.  Both the Magistrate and the District Court Judge errored in accepting hearsay evidence in denying defendant's writ of habeas corpus and motion to dismiss. <u>The release of this material to the public media was not a mistake by the prosecution or the court but was intended to accomplish that to which it was targeted - the creation of further prejudicial behavior against the defendant. Defense lawyers should have moved for a mistrial.</u>

b.  The move for tighter security around the court house was designed to provide a prejudicial atmosphere in which defendant was unfairly tried. The extra manpower which included roof - top sniper teams, dog teams, blocking off of streets to limit normal access was prejudicial to the defense.

c.  The so-called bomb treats that were allegedly received were either instigated [handwritten: INSTIGATED] by the prosecution team - to include the FBI, or just made up to create a further hostile environment for the jury.

d.  Not naming jury members further prejudiced the jury against the defendant.

*e.* The excessive use of U.S. Marshals and FBI agents in the court room continued to create a hostile environment for beyond the realities of the situation. Again to the detriment and prejudicial affect on the defendant.

*f.* The appointment of a young small town attorney to represent defendant who totally lacked experience in a trial of this magnitude was irresponsible of the court and ensured that defendent would not be given a fair trial.

*g.* The court errored in allowing the government to "kick-off" its prosecution with a Flim~~film~~=flam¢ show for the media to the detriment and prejudicial affect of damning the defendants and defaming their character and reputation even before a trial was conducted and a viable defense tendered.

JUDICIAL MISCONDUCT AS FOLLOWS:

1. Use of heresay evidence to deny defendant a pretrial hearing for dismissal of indictments and writ of habeas corpus.

2. Extra tight security measures to include blocking off streets, use of snipers on rooftops, video cameras, extra police force, and police dogs in addition to the regular security to the building.

3. Concealing names of the jury from disclosure.

4. Appointment of a young - small town lawyer who is <u>in competent</u> handle a trial of this magnitude, and is easily influenced by the prosecution and the judge.

Page 12 of 13

### IV. Presidential Mandate: Obstruction Of Justice.

On May 15, 1997, President William Jefferson Clinton appeared on national television at a police memorial in Pennsylvania, and stated in reference to the incident of the Oklahoma City bombing, the uni-bomber and the FBI center in West Virginia, that "the perpetrators of these crimes will not go unpunished." This was broadcast at the 5:00 PM newscast on Channel 7 WTRF-TV, Wheeling, West Virginia.

This Presidential mandate was issued at a time when defendant had submitted a writ of habeas corpus and a motion to dismiss indictments. Motion was subsequently denied. This action of the President was detrimental and very prejudicial to the defendant.

WHEREAS, the defendant prays for such relief, and for another relief that the court deems just and fair.

11-18-97

Respectfully Submitted,

*Floyd R. Looker Jr.*
Floyd Raymond Looker Jr.
Defendant

pro se

CERTIFICATE OF SERVICE

Service of the foregoing motion was had by U.S. Mail at the Northern Regional Jail, by hand delivering a copy of same to a corrections officer, this 18TH day of November, 1997.

BY: *Floyd R. Looker, Jr.*
Floyd R. Looker, Jr.
Defendant

DAVID GODWIN, Esq.
P.O. Box 750
Clarksburg, WV 26303-0750

William Cipriani, Esq.
634 Charles Street
Wellsburg, WV 26070

William Gallagher, Esq.
c/o Cassidy, Myers, Cogan,
    Voegelin & Tennant, L.C.
1413 Eoff Street
Wheeling, WV 26003-3582

Criminal CAse Numbers:
~~5:96CR40-01~~
~~1:96CR41-01~~
~~1:96CR42-01~~
1:96CR43-01

CERTIFICATE OF SERVICE

Service of the DEFENDANT'S PRO SE MOTION TO APPEAL GUILTY CONVICTION AND APPLICATION FOR NOLO CONTENDERE PLEA, was made at the Northern Regional Jail, by hand delivering a copy of same, to a corrections officer, this 18th day of November, 1997.

By: _____
    Floyd R. Looker, Jr.
    Defendant

Criminal Case Number
1:96CR41-01

DAVID GODWIN, Esq.
P.O. Box 750
Clarksburg, WV 26303-0750


William Cipriani, Esq.
634 Charles Street
Wellsburg, WV 26070


W;illiam Gallagher, Esq.
c/o Cassidy, Myers, Cogan,.
    Voegelin & Tennant, L.C.
1413 Eoff Street
Wheeling, WV 26003-3582

CERTIFICATE OF SERVICE

Service of the APPLICATION FOR WITHDRAWAL OF GUILTY PLEA AND A PLEA OF NOLO CONTENDERE BE ENTERED ON BEHALF OF DEFENDANT was made by U.S. Mail at the Northern Regional Jail, by hand delivering a copy of same to a corrections officer this 18TH day of November, 1997.

By: _____
Floyd R. Looker, Jr.
Defendant

Criminal Case Number:
5:96CR40-01
~~1:96CR42-01~~
~~1:96CR43-01~~

DAVID GODWIN, Esq.
P.O. Box 750
Clarksburg, WV 26303-0750


William Cipriani, Esq.
634 Charles Street
Wellsburg, WV 26070


William Gallagher, Esq.
c/o Cassidy, Myers, Cogan,
    Voegelin & Tennant, L.C.
1413 Eoff Street
Wheeling, WV 26003-3582

CERTIFICATE OF SERVICE

Service of the APPLICATION FOR WITHDRAWAL OF GUILTY PLEA AND A PLEA OF NOLO CONTENDERE BE ENTERED ON BEHALF OF DEFENDANT was made by U.S. Mail at the Northern Regional Jail, by hand delivering a copy of same to a corrections officer this 18Th day of November, 1997.

By: _____
Floyd R. Looker, Jr.
Defendant

DAVID GODWIN, Esq.
P.O. Box 750
Clarksburg, WV 26303-0750

Criminal Case Number:
~~5:96CR40-01~~
1:96CR42-01 ✓
~~1:96CR43-01~~

William Cipriani, Esq.
634 Charles Street
Wellsburg, WV 26070

William Gallagher, Esq.
c/o Cassidy, Myers, Cogan,
    Voegelin & Tennant, L.C.
1413 Eoff Street
Wheeling, WV 26003-3582

CERTIFICATE OF SERVICE

Service of the APPLICATION FOR WITHDRAWAL OF GUILTY PLEA AND A PLEA OF NOLO CONTENDERE BE ENTERED ON BEHALF OF DEFENDANT was made by U.S. Mail at the Northern Regional Jail, by hand delivering a copy of same to a corrections officer this 18Th day of November, 1997.

By: _____
Floyd R. Looker, Jr.
Defendant

Criminal Case Number:
~~5:96CR40-01~~
~~1:96CR42-01~~
1:96CR43-01

DAVID GODWIN, Esq.
P.O. Box 750
Clarksburg, WV 26303-0750

William Cipriani, Esq.
634 Charles Street
Wellsburg, WV 26070

William Gallagher, Esq.
c/o Cassidy, Myers, Cogan,
    Voegelin & Tennant, L.C.
1413 Eoff Street
Wheeling, WV 26003-3582