U.S. DISTRICT COURT
FILED AT WHEELING, WV

FEB 1 4 2000

NORTHERN DISTRICT OF WV
OFFICE OF THE CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

**FLOYD RAYMOND LOOKER, JR.,**
        **Petitioner/Defendant,**

v.

Civil Action No. 5:99CV133
Criminal Action No. 5:96CR40

Civil Action No. 1:99CV178
Criminal Action No. 1:96CR41

Civil Action No. 1:99CV180
Criminal Action No. 1:96CR42

Civil Action No. 1:99CV181
Criminal Action No. 1:96CR43

**UNITED STATES OF AMERICA,**
        **Respondent/Plaintiff.**

## RESPONSE OF THE UNITED STATES TO THE
## MOTION FILED BY THE DEFENDANT, FLOYD RAYMOND LOOKER,
## UNDER TITLE 28, UNITED STATES CODE, SECTION 2255

Comes now the United States of America and Melvin W. Kahle, Jr., United States Attorney

for the Northern District of West Virginia, by David E. Godwin, First Assistant United States

Attorney, and opposes the granting of the defendant's Section 2255 motion. The following facts,

law, and argument are set forth in support of said opposition.

### PROCEDURAL HISTORY

The defendant and six other members of the Mountaineer Militia were arrested on October

11, 1996, on arrest warrants issued by a magistrate judge. The defendant was detained without bail

by order entered on October 25, 1996. On November 8, 1996, the grand jury indicted the seven

1

arrested militia members in four indictments; the defendant was named as a defendant in each of the indictments.

In case number 5:96CR40, the defendant was charged with one count of conspiracy in violation of Title 18, United States Code, §371; two counts of transporting explosive materials in interstate commerce in violation of Title 18, United States Code, §842(a)(3)(A); and two counts of transporting unregistered firearms (destructive devices) in interstate commerce in violation of Title 26, United States Code, §5861(j). The defendants, Lewis and Johnson, were named as co-defendants in the case.

In case number 1:96CR41, the defendant was charged with one count of conspiracy in violation of Title 18, United States Code, §371. The defendants, Phillips and Moore, were named as co-defendants in the case.

In case number 1:96CR42, the defendant was charged with two counts of transporting explosive materials in interstate commerce in violation of Title 18, United States Code, §842(a)(3)(A) and one count of transporting unregistered firearms (destructive devices) in interstate commerce in violation of Title 26, United States Code, §5861(j). The defendant, Coon, was named as a co-defendant in this case.

In case number 1:96CR43, the defendant was charged with one count of conspiracy in violation of Title 18, United States Code, §371, and one count of providing material support to terrorists in violation of Title 18, United States Code, §2339A. The defendant Rogers was named as a co-defendant in this case.

Case number 1:96CR41 was brought to trial before a jury in Wheeling, West Virginia, in

2

early August, 1997. On May 29, 1997, the co-defendant Moore had entered a plea of guilty to making an unregistered firearm (destructive device) in violation of Title 26, United States Code, §5861(d). On July 3, 1997, the co-defendant Phillips had entered a plea of guilty to conspiring to manufacture explosives without a license in violation of Title 18, United States Code, §371. On August 8, 1997. The jury hearing the defendant's case returned a guilty verdict against the defendant for having conspired with Moore and Phillips to manufacture explosives.

After the jury verdict on August 8, the defendant entered a plea agreement (ATTACHMENT 1) with the United States which disposed of the remaining three cases against him. Pursuant to that plea agreement, the defendant appeared in the district court on August 13, 1997, and pled guilty to one count of transporting unregistered firearms (destructive devices) in case number 5:96CR40; one count of transporting unregistered firearms (destructive devices) in case number 1:96CR42; and one count of conspiracy to provide material support to terrorists in violation of Title 18, United States Code, §371 and one count of providing material support to terrorists in violation of Title 18, United States Code, §2339A in case number 1:96CR43.[1]

In the plea agreement, the parties agreed that the four cases would be consolidated for sentencing; that the defendant waived his rights to appeal any sentence of ten years or less; and that the defendant would be sentenced to no more than twenty-five years. The agreement pertaining to

the maximum of twenty-five years was made in the form of a binding recommendation under Rule

---

[1]The remaining co-defendants were tried in three separate jury trials. The trials were completed on October 27, 1997.

of Criminal Procedure 11(e)(1)(C).

The defendant filed several pro se motions after the guilty verdict in Case 1:96CR41 and after his guilty pleas in Cases 5:96CR40, 1:96CR42; and, 1:96CR43. The court ruled upon all of these motions in an order filed on March 27, 1998, entitled Memorandum Opinion and Order Denying Pro Se Motion To Appeal Guilty Convictions, Denying Application For Nolo Contendere Plea, Denying Application For Withdrawal of Guilty Plea, Denying Defendant's Pro Se Ex parte Motion To Remove William Cipriani For Ineffective Assistance Of Counsel, Denying Motion To Vacate Guilty Verdict, Denying Motion To Vacate Guilty Pleas and Denying Motion To Dismiss Indictments. (Motions and Order attached hereto as ATTACHMENT 2, with the exception of the ex parte motion referred to in the Court's order).

On January 7, 1998, the probation officer filed a report of his presentence investigation. After objections were filed by both parties, the court imposed sentence on the defendant on March 27, 1998, and entered judgement orders on April 1, 1998. The court determined that the defendant's total offense level for case numbers 5:96CR40, 1:96CR41, and 1:96CR42 was Level 34 and that the defendant was in criminal history category I. This made the defendant's guideline range for these three cases 151 to 188 months of incarceration, two to three years supervised release and $17,500 to $175,000 in fines. The court also determined that there were no guidelines covering the terrorism charges contained in 1:96CR43. The court sentenced the defendant to a total punishment of 160 months on the guideline sentence; and, pursuant to Title 18, United States Code, §3553(b), the court sentenced the defendant to an additional 56 months for the terrorism offenses in 1:96CR43. Since the total punishment under the guidelines exceeded the maximum statutory penalty for any one

4

count, the court imposed a sentence of 120 months in the cases of 5:96CR40 and 1:96CR42 to be served concurrently with each other and 40 months in case 1:96CR41 to be served consecutively to the 120 months. Therefore, the total sentence for all four cases was 216 months. No fine was imposed for the reason that the defendant did not have the means to pay a fine.

The defendant filed his notice of appeal on April 6, 1998. The defendant, although represented by counsel, filed a motion requesting permission to file a pro se supplemental brief (ATTACHMENT 3) alleging that the district court erred in: (1) denying a hearing on the pro se motion he had filed with the district court to dismiss for outrageous government misconduct and a hearing on his motion to suppress evidence seized through an illegal police operation; (2) allowing his prosecution under a vague statute; (3) ordering excessive security at trial; (4) denying his pro se motion to withdraw his guilty plea; (5) allowing the prosecution to violate the plea agreement; (6) allowing the presentence report "to go forward after it was substantially challenged on material fact;" and, (7) "allowing the prosecution to submit false and misleading statements throughout this entire judicial process."

The Fourth Circuit Court of Appeals filed an unpublished opinion in the case (168 F.3d 484) on December 31, 1998. (ATTACHMENT 4). In the opinion, the appellate court found no merit in any of the four sentencing issues raised by the defendant's counsel. Additionally, the court granted the defendant's motion to file the pro se supplemental brief and found no merit in any of its seven areas of complaint.

The defendant filed a petition for Writ of Certiorari (first three pages of which are attached as ATTACHMENT 5) with the United States Supreme Court in which he sought review of the four

sentencing issues pursued by the defendant's counsel and the seven issues raised by the defendant in his pro se supplemental brief.  The writ was denied by the Supreme Court on May 3, 1999.  (119 S.Ct. 1586).

<u>FACTUAL OVERVIEW</u>

A lengthy description of the facts in each of these criminal cases is contained in the presentence report as the government's version of the offense. The district court, at the sentencing hearing, stated the court's belief "that the version for the government is substantially correct." The court's belief was based on the investigation of the probation officer as well as the court's participation in jury trials of all four of the indictments.

While this factual dissertation will not be set forth herein, the following are some facts that would be useful as an overview:

The defendant was the organizer and leader of the Mountaineer Militia.  During the course of establishing the militia, the defendant came into contact with each of the six co-defendants.  The defendant's intelligence and security officer was O. Marshall Richards, a confidential witness for the Federal Bureau of Investigation. Through Mr. Richard's work, the investigators were able to stay informed of occurrences as well as collect physical evidence.  An undercover Special Agent of the Federal Bureau of Investigation, Steven Francke, was introduced by Richards to the defendant. Francke, using the name Steve Francis, was represented to be a person knowledgeable in explosives who brokered explosives to terrorists.

Each of the four indictments is based on a particular course of criminal events.  The

defendant was the common factor in each of the criminal endeavors.  One of the early indications of criminal activity was the discussion of potential targets.  This occurred in early June, 1995, during a militia training session.  The co-defendant, Rogers, the Harrison county commander, indicated that, through his employment as a Clarksburg fireman, he could gain access to blueprints of one of the targets, the Federal Bureau of Investigation's Criminal Justice Identification Section (CJIS) facility near Clarksburg.  This ultimately resulted in the delivery of photographs of blueprints of certain critical sections of that facility to the defendant on February 18, 1996; and the subsequent  sale of the information to "Steve Francis" for $50,000 by the defendant on October 11, 1996.

About two months after the FBI/CJIS facility project was initiated, the defendant received a destructive device from a co-defendant, Johnson, during a militia training session.  After having the sample examined, the defendant caused purchases to occur.  Through this sequence of events beginning in August of 1995, the defendant was responsible for transferring 1000 of these devices to Steve Francis in December as well as later attempts in 1996.  In early 1996, the defendant became impatient about the lack of progress and contacted Johnson personally and attempted to arrange the purchase of an additional 1000 devices.

During 1995, the defendant came into contact with the co-defendant Coon.  The first contact was in the summer of 1995 when the defendant traveled to Pennsylvania to a militia gathering.

Coon had collected a variety of materials on his farm near Waynesburg, Pennsylvania, including military C-4 and TNT explosives, blasting caps, a blasting machine, and triggering devices for booby traps.  Over the period from early September, 1995 and January, 1996, Coon delivered to the defendant by way of Richards, a substantial stash of these materials as well as a sawed off

shotgun and three 40mm grenades.  Coon provided enough materials to  easily make in excess of fifty destructive devices.  The defendant caused these materials to be sold to Steve Francis, whom the defendant believed dealt with terrorist organizations.

The last of the four schemes that the defendant initiated was the attempt to manufacture explosives; more particularly, C-4.  In the course of his militia activities, the defendant recruited the co-defendants Phillips and Moore.  Phillips was an unemployed chemical engineer and Moore was a person who had an explosives license and experience in such things as detonators.  The co-defendant, Moore, had attended a militia training session on March 24, 1996, and made and detonated a destructive device.  This training was provided at the request of the defendant.  Through the summer and early fall of 1996, these three individuals, along with the F.B.I.'s confidential witness, Richards, continued their discussions about the manufacturing project.  They discussed what type of weapons they could make.  They also discussed the possibility of making the component explosives and detonators in such a way so that the materials could not be chemically traced.  The defendant and Phillips discussed the possibility of packaging the explosives in scented candles to facilitate the export of the materials.  Equipment was obtained for Phillips to use in the manufacturing, but no explosives were produced prior to the October 11 arrest of the group.

To the extent the defendant alleges facts in his Section 2255 motion that are contrary to these

facts or those set out in the presentence report, the United States denies and contests such allegations

8

of fact.[2]

## OVERVIEW OF RELEVANT LAW

I.    Effect of Guilty Pleas in 5:96CR40; 1:96CR42, and 1:96CR43:

The basic rule is that "a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  That is, the only claims that such a prisoner can make are (1) that his plea was not voluntary and intelligent, and (2) that he received ineffective assistance of counsel prior to entering the plea.

The Supreme Court's clearest statement of the basic rule against collateral attacks on guilty pleas came in *Tollett v. Henderson*, 411 U.S. 258 (1973).  There, the defendant plead guilty to murder and later filed a habeas corpus petition based on the fact that black persons had been excluded from the grand jury that indicted him, in violation of *Strauder v. West Virginia*, 100 U.S. 303 (1880).  Neither the defendant nor his attorney had known of the *Strauder* violation at the time of the guilty plea.  411 U.S. at 266.  Relying on its prior decisions in *Brady v. United States*, 397 U.S. 742 (1970), *McMann v. Richardson*, 397 U.S. 759 (1970), and *Parker v. North Carolina*, 397 U.S. 790 (1970), the Court in *Tollett* held that a guilty plea "forecloses independent inquiry into the claim of discrimination in the selection of the grand jury."  411 U.S. at 266.

The Court in *Tollett* "reaffirmed[ed] the principle that:

---

[2]The defendant's Section 2255 motion is full of factual conclusions and allegations that have no basis in the record.

9

a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, *he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.*  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received was not within the standards [required by the Sixth Amendment].

In *United States v. Broce*, 488 U.S. 563 (1989), the defendants plead guilty to two indictments arising out of the same course of conduct, and raised a double jeopardy challenge on collateral review because they claimed the two indictments charged but one offense.  The lower courts found that there was indeed only one offense, and the government did not challenge that finding on certiorari.  488 U.S. at 569.  Thus, the question in the Supreme Court was whether, despite the existence of the double jeopardy violation, the defendants were barred by their guilty pleas from obtaining collateral relief.  The Court held that, by pleading guilty to two indictments in a single proceeding, the defendants had admitted the existence of two offenses: "Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes."  *Id*. at 570.

In *Broce*, the Court addressed the exceptions to the general rule that voluntary guilty pleas cannot be attacked collaterally.  *See Blackledge v. Perry*, 417 U.S. 21 (1974) and *Menna v. New York*, 423 U.S. 61 (1975).  The exceptions are confined to cases "where, on the face of the record, the court had no power to enter the conviction or impose the sentence."  *Broce* at p. 569.

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"

10

*Bousley v. United States,* 523 U.S. 614, _____, 118 S. Ct. 1604, 1609 (1998). Short of demonstrating sheer gun-to-the-head coercion, there are two main ways for a prisoner to show that his plea was not voluntary and intelligent. First, he can show that he did not "understand the nature of the constitutional protections that he [was] waiving," such as the right to a jury trial, the right to confront accusers, and the privilege against self-incrimination. *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976). Second, he can show that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Ibid.* Because a conviction is presumed to be valid on collateral attack, *Park v. Raley*, 506 U.S. 20, 29 (1992), it is proper to presume both that the prisoner understood the rights he was waiving, *Johnson v. Zerbst*, 304 U.S. 458, 468-469 (1938), and also that he understood the nature of the charges against him, *Bousley*, 118 S. Ct. at 1609. The defendant is entitled to relief only where he comes forward with evidence to overturn the presumption of regularity – i.e., by producing the transcript of the change of plea hearing.

"[R]epresentations of the defendant, his lawyer, and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings....The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements of accused at arraignment that facially demonstrate plea's validity are conclusive absent compelling reason why they should not be, such as ineffective assistance of counsel. *Vic v Superintendent, Powhatan Correctional Ctr.*, 643 F.2d 167 (4th Cir. 1981); *see also United States v. DeFusco*, 949

11

F.2d 114 (4th Cir. 1991) (defendant's statements at plea hearing are "strong evidence"of voluntariness), *cert. denied*, 60 U.S.L.W. 3717 (U.S. 1992); *Hartman v. Blankenship*, 825 F.2d 26 (4th Cir. 1987); *Edmonds v. Lewis*, 546 F.2d 566 (4th Cir. 1976), *cert. denied*, 431 U.S. 958 (1977); *Edwards v. Garrison*, 529 F.2d 1374 (4th Cir. 1975), *cert. denied*, 424 U.S. 950 (1976); *Crawford v. United States*, 519 F.2d 347 (4th Cir. 1975), *cert. denied*, 423 U.S. 1057 (1976), *overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir.) (en banc), *cert. denied*, 474 U.S. 873 (1985).

II.  Effect of Trial of Case 1:96CR41 and the Appeal in all Four Cases:

A defendant  convicted after a trial cannot raise many kinds of claims under Section 2255. As the Supreme Court held in *United States v. Addonizio*, 442 U.S. 178, 184 (1979), "[i]t has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  Based on *Addonizio* and its progeny, the first "merits" question is always "whether [the] error [alleged] * * * is sufficiently fundamental to come within those narrow limits." *Id.* at 184-185.

Section 2255 provides redress for jurisdictional or harmful constitutional errors.  It also applies in rare circumstances to some non-jurisdictional and non-constitutional errors of federal law; but it does so only if those errors involve a "fundamental defect which inherently results in a complete miscarriage of justice." *Addonizio*, 442 U.S. at 185 (1979).

Unlike habeas corpus (Section 2254), which permits lower federal courts in limited circumstances to reject the legal analysis of state courts, see 28 U.S.C. 2254(d); cf. *Lambrix* v. *Singletary*, 520 U.S. 518, 522-523 (1997), Section 2255 doesn't generally require a federal court to

second-guess itself.  Accordingly, where a claim is actually decided on direct review, it cannot be relitigated under Section 2255 except in unusual circumstances.  See *Withrow* v. *Williams*, 507 U.S. 680, 720-721 (1993) (Scalia, J., concurring) (collecting cases).  The only notable exception is an intervening change in the governing substantive law.  *Davis* v. *United States,* 417 U.S. 333 (1974).  In most cases, however, a decision on the merits on direct appeal has a preclusive effect on collateral review under Section 2255.

A claim that could have been addressed to the appellate court but was not is called a "defaulted claim."  A defaulted claim generally cannot be heard on collateral review unless the applicant shows "cause" for each failure to raise the claim and "actual prejudice" resulting from the error he alleges.  See *United States v. Frady*, 456 U.S. 152, 170 (1982).  The "cause and prejudice" standard requires the prisoner to show not only that "some objective factor external to the defense" impeded his efforts to raise the issue as required by each relevant 'procedural rule, *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), but also that the error he alleges "worked to his *actual* and substantial disadvantage, infecting his entire trial with error," *Frady*, 456 U.S. at 170 (emphasis in original).  If he cannot show cause and prejudice, the prisoner cannot have his claim considered unless he shows "actual innocence." *Bousley v. United States,* 523 U.S. 614, ____, 118 S. Ct. 1604, 1611 (1998).

III.  <u>Ineffective Assistance of counsel</u>

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court reaffirmed that the Sixth Amendment guarantees a criminal defendant the "effective" assistance of counsel: "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role

necessary to ensure that the trial is fair." *Id.* at 685.  The Court explained that, in giving meaning to that requirement, "we must take its purpose – to ensure a fair trial – as the guide." *Id.* at 686. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Ibid.*

In keeping with its focus on the adversarial process, the Court in *Strickland* held that a claim of ineffective assistance of counsel has two components – inadequate performance by counsel, and prejudice resulting from that inadequate performance.  The first part of the test requires the defendant to show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  466 U.S. at 687.  The governing performance standards depend in large part on the standards set by the legal profession: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

In applying the "professional norms" standards, however, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  466 U.S. at 689.  That is because of the retrospective nature of ineffective-assistance claims: "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Ibid.*  Accordingly the

14

Court in *Strickland* held, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Ibid.*

A movant satisfies the first part of the *Strickland* test, by showing that his attorney failed to perform up to established professional standards, is not entitled to relief unless he can also satisfy the second part of the test, by showing that counsel's unprofessional errors actually

> prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. The defendant has the burden of establishing prejudice, and it is

> not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

*Id.* at 693 (citation omitted). Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Court in *Strickland* explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ibid.* Thus, the gravamen of the *Strickland* inquiry remains "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

## GROUNDS ASSERTED BY THE DEFENDANT IN HIS MOTION:[3]

I. The defendant alleges a violation of the First and Second Amendments in that the prosecution interfered with his right of assembly and right "to form patriot citizen militia groups in defense of the nation."

This claim has not been raised in either the district court of appellate court. The claim therefore does not survive the guilty pleas or the prior litigation. The defendant has not made a showing of "cause" and "prejudice."

Additionally, the complaint is without merit on its face. None of the crimes charged in the four indictments are related to an assemblage of persons and the convictions have no effect of chilling any persons right to assemble with others for lawful purposes. The asserted right "to form patriot citizen militia groups in defense of the nation" under the Second Amendment is nonexistent. The Second Amendment, in conjunction with various provisions of Article I, Section 8 of the Constitution, provide for a "well-regulated" militia under the executive authority of the federal government and the state government, to be supplied by the Congress. The defendant claims that an army formed and led himself, with only self imposed rules and guidelines qualifies as a "well regulated militia" under the Constitution. He cites no authority for such proposition. *See United States v. Hale*, 978 F.2d 1016 (8th Cir. 1992) and *United States v. Henson*, 55 F.2d 528 (SDWV 1999).

---

[3]The defendant's pleading does not clearly state his complaints. This section is intended to address his issues as they are understood by the undersigned without addressing the imprecise nature of the claims.

16

II.     The defendant complains in his second ground that his rights under the Fourth Amendment were violated by unlawful search and seizure.

The defendant filed a motion to suppress in the district court. In an order entered on July 23, 1997 (a copy attached as ATTACHMENT 6)[4] entitled Memorandum Opinion and Order Overruling Defendant Looker's Objection To Magistrate Judge's Recommendation And Denying Defendant Looker's Motion To Suppress and Motion To Dismiss. The defendant did not appeal this order to the Fourth Circuit.

A defendant filing a Section 2255 motion has the burden of pleading and proving both reasons and supporting facts why did not have a full and fair litigation of his Fourth Amendment claims at trial and on direct review. *Doleman v. Muncy*, 579 F.2d 1258, 1266 (4th Cir. 1978).

This complaint does not survive his guilty pleas and his prior litigation and should not be entertained by the court.

III.    The basis for the defendant's third ground is very difficult to discern from his pleading. He asserts a violation of his Fifth Amendment rights and apparently the reference is to the "due process" clause of that Amendment. The defendant mentions a variety of complaints in his allegations, each of which will be dealt with individually and briefly below.

a.     The defendant refers to the prosecution as "malicious and lying." The defendant has already litigated this in his pro se Motion To Vacate Guilty Verdict and Guilty Pleas With Motion To Dismiss Indictments (ATTACHMENT 2) in the district court; and, in the seventh ground stated in his pro se supplemental brief to the Fourth Circuit (ATTACHMENT 3). The district court and the appellate court each found no merit in his complaint.

---

[4]An order was entered in each of the four cases on the same day with the same title. They differed from each other only as to the names of the co-defendants and charges.

17

b. The defendant mentions "entrapment." This defense does not survive his guilty pleas in three of the cases. In regard to 1:96CR41, which was tried before a jury, the defendant requested and was given a jury instruction on entrapment (ATTACHMENT 8). The jury did not find in the defendant's favor. No issue was presented to the appellate court relating to entrapment.

Accordingly, this complaint does not survive the prior litigation and the guilty pleas.

c. The defendant asserts that his pleas were under duress.

The best evidence in the record on the voluntariness of the pleas is the transcript of the plea hearing (ATTACHMENT 7). At the hearing, the court informed the defendants of the elements of each of the crimes (ATTACHMENT 7 at pp. 15-16). The court explained all of the rights that the defendant was waiving by entering a guilty plea (ATTACHMENT 7 at pp. 20-23). The court determined that the defendant had not been threatened, coerced or harassed to enter the plea; that he was not induced by any promise other than the plea agreement; and that the defendant was not pleading to protect anyone (ATTACHMENT 7 at p. 33).

The defendant filed a pro se motion to withdraw his pleas. In overruling this motion, the court fond that his plea was voluntary (ATTACHMENT 2, Order at p. 9).

The defendant appealed the order denying his motion to withdraw the plea in his pro se supplemental brief (ATTACHMENT 3 at p. 4). The Fourth Circuit found no merit in it.

The issue of the voluntariness of the defendant's plea has been litigated and is barred from relitigating it.

d. The defendant also complains about the effectiveness of his counsel in the district court. The defendant filed a pro se motion with the district court alleging ineffective assistance of counsel

(ATTACHMENT 2).  The district court addressed this complaint under the *Strickland* standards and found no merit (ATTACHMENT 2, Order at pp. 5-6, 10-11).

The defendant did not appeal the district court's ruling.  The defendant has not shown "cause" and "prejudice" on this defaulted claim.

IV.  The defendant alleges a violation of the Sixth Amendment in his fourth ground.

a.  He claims that he was denied an impartial jury by the court's security measures.  The defendant made this complaint to the Fourth Circuit in his pro se supplemental brief.  The appellate court found no merit in it.  Security measures adopted at trial are within the discretion of the trial judge.  See *United States v. Grandison*, 780 F.2d 425 (4th Cir. 1985) *vacated on other grounds*, 479 U.S. 1076 (1987) and *Holbrook v. Flynn*, 475 U.S. 560 (1986).

b.  The defendant claims that he had a right to confront the prosecutor as a witness against him.  This has never been raised in the district court or appellate court.  The defendant has not met the standards of "plain error" related to his failure to raise the issue in the trial court; or, the standards of showing "cause" and "prejudice" related to his failure to raise the matter with the appellate court.

c.  The defendant further alleges ineffective assistance of counsel which has already been addressed.

d.  The defendant claims that his conviction was "obtained through judicial prejudice and abuse of judicial discretion."  This complaint was raised in the district court in the Defendant's Pro Se Supplemental Memorandum In Support of Motion For Plea Of Nolo Contendere (ATTACHMENT 2).  The district court ruled adversely to the defendant and he failed to appeal the denial of his motion.  He has not shown "cause" and "prejudice" in relation to this failure to appeal the ruling.

All of the allegations contained in the fourth ground are barred by the prior litigation and the guilty pleas.

V.    In his fifth ground, the defendant alleges a variety of complaints regarding his pretrial incarceration and his sentence.

The matters related to his pretrial incarceration were handled by the district court when the defendant raised them. The defendant raised the "destablization" in his Pro Se Motion To Appeal Guilty Conviction and Application For Nolo Contendere Plea (ATTACHMENT 2 - see "Memorandum in Support"). The district court ruled adversely to the defendant and the issue was not appealed.

The complaints regarding the length of his sentence cannot be raised now. The appellate court heard his appeal of various sentencing guideline issues and upheld the district court's sentence. Barring extraordinary circumstances, an error in the application of the sentencing guidelines cannot be raised in a Section 2255 proceeding. *United States v. Pregen*, 190 F.3d 279, 283-284 (4th Cir. 1999).

VI.    In his sixth ground, the defendant alleges a violation of the Tenth Amendment claiming that the federal government did not honor "States Rights."

The defendant does not have standing to assert the rights of any of the several states in this matter.

VII.    In his seventh ground, the defendant alleges a violation of his rights under the Fourteenth Amendment by obtaining the conviction through selective prosecution and outrageous government conduct.

Applying the reasoning of *Broce (cited above)*, the Ninth Circuit has recognized that a

20

selective prosecution claim is barred because it depends on facts outside the record of the guilty plea. *United States v. Cortez*, 973 F.2d 764, 767 (9th Cir. 1992).

The district court has already ruled upon the defendant's outrageous government conduct allegations. In the court's order entered in each of the four cases on July 23, 1997, the district court ruled against the defendant (ATTACHMENT 6 at pp. 6-11).

Neither the claim of outrageous government conduct or selective prosecution survives the guilty pleas and the prior litigation.

Wherefore, for the reasons set forth herein and such other reasons as may appear to the court from the record, the United States moves the court to deny the defendant's Section 2255 motion.

Respectfully submitted,


UNITED STATES OF AMERICA

Melvin W. Kahle, Jr.
United States Attorney

By:   David E. Godwin
First Assistant United States Attorney

21

## CERTIFICATE OF SERVICE

I, David E. Godwin, First Assistant United States Attorney for the Northern District of West Virginia, do hereby certify that a copy of the foregoing RESPONSE OF THE UNITED STATES TO THE MOTION FILED BY THE DEFENDANT, FLOYD RAYMOND LOOKER, UNDER TITLE 28, UNITED STATES CODE, SECTION 2255 as placed in the United States Mail, postage prepaid, addressed to Floyd Raymond Looker, defendant pro se, Prisoner #03008-087, FCI Ashland, Post Office Box 6001, Ashland, Kentucky 41105-6001.

Dated:   February 14, 2000

David E. Godwin
First Assistant United States Attorney
320 West Pike Street, Suite 300
Clarksburg, West Virginia 26301-2710

22